DALE L. ALLEN. JR., State Bar No. 145279
dallen@aghwlaw.com
KEVIN P. ALLEN, State Bar No. 252290
kallen@aghwlaw.com
LEORA R. RAGONES, State Bar No. 215423
lragones@aghwlaw.com
ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, CA 94104
Telephone:    (415) 697-2000
Facsimile:    (415) 813-2045

Attorneys for Defendants
CITY OF SAN RAFAEL and SAN RAFAEL
POLICE DEPARTMENT

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JULIO JIMENEZ LOPEZ and YESENIA CRUZ CRUZ,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN RAFAEL; SAN RAFAEL POLICE DEPARTMENT; DAISY MAZARIEGOS; BRANDON NAIL; and DOES 1-50, inclusive<br>Defendants. | Case No. 3:23-cv-03652-VC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGEMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION AS TO THE THIRD THROUGH SIXTH (*MONELL*) CAUSES OF ACTION; MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)**<br><br>Hon. Vince Chhabria<br><br>Date:    December 12, 2024<br>Time:    10:00 a.m.<br>Ctrm:    4, 17th Floor<br><br>Trial:    None Set |

## <u>TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:</u>

NOTICE IS HEREBY GIVEN that on December 12, 2024, 2024, at 10:00 a.m., in

Courtroom 4 of the above entitled Court, located on the 17th floor of 450 Golden Gate Ave., San

Francisco, CA 94102, defendants CITY OF SAN RAFAEL and SAN RAFAEL POLICE

DEPARTMENT ("Defendants") will, and hereby do, move the Court for an order granting

summary adjudication, in their favor, and against Plaintiffs JULIO JIMENEZ LOPEZ and

YESENIA CRUZ CRUZ ("Plaintiffs") with respect to the *Monell*[1] Claims (42 U.S.C. §1983) raised in plaintiffs' Second Amended Complaint under the third, fourth, fifth and sixth causes of action.

This motion is made pursuant to Federal Rule of Civil Procedure, Rule 56, on the grounds that no genuine issue of material fact exists as to the above-mentioned claims, and Defendants are entitled to judgment as a matter of law because neither the City nor SRPD had an unconstitutional custom, policy, or practice in place; no policymaker for the City or SRPD ratified any alleged unconstitutional conduct; neither SRPD or the City acted with deliberate indifference; and because plaintiffs have failed to demonstrate causation.

## STATEMENT OF RELIEF SOUGHT

The City of San Rafael and the San Rafael Police Department seek an order granting partial summary judgment, in their favor, and against Plaintiffs, with respect to the following portions of Plaintiffs' Second Amended Complaint: the third cause of action (*Monell*, per 42 U.S.C. §1983 – Unconstitutional Custom, Practice or Policy); the fourth cause of action (*Monell*, per 42 U.S.C. §1983 – Failure to Properly Screen and Hire); the fifth cause of action (*Monell*, per 42 U.S.C. §1983 – Failure to Train, Supervise, and Discipline); and the sixth cause of action (*Monell*, per 42 U.S.C. §1983 – Ratification).

Respectfully submitted,

Dated: November 7, 2024

ALLEN, GLAESSNER,
HAZELWOOD & WERTH, LLP

By: ___/s/ Dale L Allen_____
DALE L. ALLEN, JR.
Attorneys for Defendants
CITY OF SAN RAFAEL and SAN RAFAEL
POLICE DEPARTMENT

---

[1] *Monell v. Dept. of Social Service of City of New York,* 436 U.S. 658 (1978)

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

695506.1

**ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP**
180 Montgomery Street, Suite 1200
San Francisco, California 94104

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS .................................................................................. 2

A.    SRPD Has Extensive Policies and Procedures for Its Officers That Are Developed by Lexipol and Internally in the Department .......................... 2

B.    SRPD Maintains Policies on Training, Supervision and Discipline of Law Enforcement Personnel ............................................................................. 2

1.    POST's Audit Completed Six-Months Prior to the Incident Confirmed SRPD Complied with POST Standards ............................. 4

2.    SRPD's Internal Affairs Policy ................................................................. 4

3.    In the 5 Years Prior to the Subject Incident, There Were Seven Citizen Complaints of Use of Excessive Force Out of More than 200,000 Service Calls, and Five Were Determined to be Unfounded ..... 4

C.    The Officers Involved in the Subject Incident Were Properly Trained, and Did Not Have Substantial Use of Excessive Force Complaints Prior to the Incident .................................................................................................... 5

1.    Officers Nail and Mazariegos Completed POST Certification and Additional Required Training ..................................................................... 5

2.    Officer Mazariegos and Nail's History of Complaints ............................. 6

D.    The July 27, 2022 Incident Arose Out of a Stop for Drinking Alcohol in Public ........................................................................................................ 6

E.    The Lawsuit ...................................................................................................... 8

F.    Plaintiffs' Evidence Does Not Support Their Monell Causes of Action ............ 8

III.  ARGUMENT ........................................................................................................ 8

A.    Summary Judgement Should be Granted When There is no Dispute of Material Fact and the Moving Party is Entitled to Judgement as a Matter of Law ............................................................................................................ 8

B.    To Prove Monell Claims, a Plaintiff Must Show Unconstitutional Custom Policy, or Practice or Ratification of Unconstitutional Conduct........................ 9

C.    Plaintiffs Cannot Establish the Elements of the Fifth Cause of Action Alleging Failure to Train, Supervise, and Discipline........................................ 11

D.    Plaintiffs Cannot Establish Monell Liability Based on Ratification and the Sixth Cause of Action Fails as a Matter of Law ............................................. 14

E.    No Causation .................................................................................................... 15

IV.   CONCLUSION ..................................................................................................... 16

# TABLE OF AUTHORITIES

<u>Page</u>

**U.S Supreme Court**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................................................................9

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*,
   520 U.S. 397 (1997)................................................................................................................13

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..................................................................................................................9

*City of Canton, Ohio v. Harris*,
   489 U.S. 378 (1989)................................................................................................................13

*Connick v. Thompson*,
   131 S. Ct. 1350 (2011)......................................................................................................12, 13

*Haugen v. Brosseau*,
   543 U.S. 194, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004)....................................................15, 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)..................................................................................................................9

*Monell v. Dept. of Social Service of City of New York*
   436 U.S. 658 (1978)..........................................................ii, 2, 8, 9, 10, 11, 14, 15

**Ninth Circuit Court of Appeals**

*Blankenhorn v. City of Orange*,
   485 F. 3d 463 12 (9th Cir. 2007) ..........................................................................................12

*Christie v. Iopa*,
   176 F.3d 1231 (9th Cir. 1999) ..............................................................................................14

*Davis v. City of Ellensburg*,
   869 F.2d 1230 (9th Cir. 1989) ..............................................................................................13

*Dougherty v. City of Covina*,
   654 F.3d 892 (9th Cir. 2011) ..........................................................................................11, 15

*Fuller v. City of Oakland*,
   47 F.3d 1522 (9th Cir.1995) ..................................................................................................15

*Gillette v. Delmore*,
   979 F.2d 1342 (9th Cir. 1992) ..............................................................................................10

*Haugen v. Brosseau*,
   339 F.3d 857 (9th Cir. 2003) ..........................................................................................15, 16

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

695506.1

*Lee v. City of Los Angeles,*
  250 F.3d 668 (9th Cir. 2001) ................................................................ 12, 13

*Long v. City & Cty. of Honolulu,*
  511 F.3d 901 (9th Cir. 2007) ................................................................ 13, 15

*Marsh v. County of San Diego,*
  680 F.3d 1148 (9th Cir. 2012) .................................................................... 12

*Meehan v. County of Los Angeles,*
  856 F.2d 102 (9th Cir.1988) ....................................................................... 10

*Merritt v. County of Los Angeles,*
  875 F.2d 765 (9th Cir. 1989) ................................................................ 12, 13

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.,*
  210 F.3d 1099 (9th Cir. 2000) ...................................................................... 9

*Oviatt v. Pearce,*
  954 F.2d 1470 (9th Cir. 1992) ..................................................................... 13

*Ting v. U.S.,*
  927 F.2d 1504 (9th Cir. 1991) ..................................................................... 13

*Trevino v. Gates,*
  99 F.3d 911 (9th Cir. 1996) ................................................................... 10, 14

**Federal District**

*Cf. Kanae v. Hodson,*
  294 F.Supp.2d 1179 (D. Haw. 2003) ......................................................... 15

*Long v. City & Cty. of Honolulu,*
  378 F.Supp.2d 1241 (D. Haw. 2005) ................................................... 13, 15

**Federal Statutes and Law**

42 U.S.C. §1983 .................................................................................... 2, 8, 14

F.R.C.P. 56 .......................................................................................................... 2

F.R.C.P. 56(c) ..................................................................................................... 9

F.R.C.P. 56(e) ..................................................................................................... 9

**California Statutes and Law**

California Penal Code §832.5 ..................................................................... 4, 12

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

**STATEMENT OF ISSUES TO BE DECIDED**

This motion presents the following issues to be decided:

1.    3rd Cause of Action: Are the City of San Rafael and the San Rafael Police Department entitled to judgment as a matter of law on plaintiff's claim of a *Monell* violation based on an alleged unconstitutional custom, practice;

2.    5th Cause of Action: Are the City of San Rafael and the San Rafael Police Department entitled to judgment as a matter of law on plaintiff's claim of a *Monell* violation based on an alleged failure to properly train, supervise and discipline; and

3.    6th Cause of Action; Are the City of San Rafael and the San Rafael Police Department entitled to judgment as a matter of law on plaintiff's claim of a *Monell* violation based on an alleged ratification of conduct.

## I.    **INTRODUCTION**

Even if plaintiffs can show San Rafael Police Department Officers violated plaintiff Julio Lopez's constitutional rights when he was punched in the face one time during a stop for allegedly drinking alcohol in public, plaintiffs do not have sufficient admissible evidence to show the City of San Rafael and the San Rafael Police Department can be held responsible for the violation. Specifically, plaintiffs' *Monell* causes of action fail as a matter of law because:

- Plaintiffs cannot establish a preexisting custom or practice that caused the alleged violation;

- Plaintiffs do not have evidence that officers were improperly or insufficiently trained; and

- Acceptance of an independent investigator's findings does not establish ratification of the officers' conduct.

Accordingly, the City of San Rafael and the San Rafael Police Department (collectively "SRPD") respectfully request the Court enter judgment in their favor as a matter of law on plaintiffs' third, fifth and sixth causes of action.

/ / /

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

MSJ – NTC/MPA
CASE # 3:23-CV-03652-VC

695506.1

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

## II.    STATEMENT OF FACTS

### A.    SRPD Has Extensive Policies and Procedures for Its Officers That Are Developed by Lexipol and Internally in the Department

At all times relevant to this case, SRPD used policies and procedures developed and provided by Lexipol. Lexipol is a commercial company that provides policies and procedures for numerous police departments in California. On the July 27, 2022, the date of the incident, those policies included (1) Training Policy (Policy 202); (2) Use of Force (Policy 300); (3) Recruitment and Selection (Policy 1000); (4) Evaluation of Employees (Policy 1001); (5) Standards of Conduct (Policy 320); (6) Report Preparation (Policy 322); (7) Bias Based Policing (Policy 401); and (8) Portable Audio/Video Recorders (Policy 422). In addition, SRPD also uses internal personnel rules and regulations, including: San Rafael Personnel Rules and Regulations Rule 12.3 – Causes for Disciplinary Action. (*Eberle Decl*., at ¶ 4, Exhibits A-F.)

### B.    SRPD Maintains Policies on Training, Supervision and Discipline of Law Enforcement Personnel

Since March of 2021 and through the time of the incident at issue, David Spiller was Chief of SRPD. (*Eberle* Decl., at ¶ 5.) At all relevant times, the chain of command was: officers reported to sergeants, who reported to lieutenants, who reported to captains, who reported to the Chief. (*Id*.) All members of SRPD were required to undertake extensive training both prior to and during their employment and SRPD Uses POST Standards and Requires Additional Training for its Officers. Prior to and as of July 27, 2022, SRPD was a "POST-certified" agency. (*Eberle Decl*., at ¶ 6.)

California Peace Officer Standards and Training ("POST") is a state-wide, quasi-governmental organization composed of law enforcement executives and advisors. POST sets forth standards for the basic and continued training of peace officers, and certifies local law-enforcement agencies and their officers as in compliance with those standards. In addition, POST reviews and certifies training courses developed by local law-enforcement agencies as in compliance with POST standards and expectations. POST conducts regular audits of local agencies and officers to determine compliance, and certifies those agencies and officers that are in

695506.1

compliance. As part of its certification, an agency must agree to abide by POST standards and only employ POST-certified officers. (*Eberle Decl.*, at ¶ 7.)

To receive POST certification, a police department must follow extensive training and fitness requirements for its officers and the agency. Specifically, POST certification requires: (a) successful completion of a 664-hour (six month), POST-certified police academy course, which includes 42 POST "Learning Domains," *i.e.*, topics of study, including defensive tactics, racial profiling, investigatory detentions, the laws of arrest and the use of force; (b) approval of the candidate's medical condition and psychological condition, each by a licensed physician; (c) approval of the candidate's personal history and background for fitness to be a peace officer (at which point the candidate may be sworn as a peace officer); (d) ten weeks of field training with a qualified Field Training Officer ("FTO") for newly appointed officers; and (e) biannual update training for every officer who serves in a patrol function. (*Eberle Decl.*, at ¶ 8.)

The biannual update training consists of 24 hours of continuing education, of which 12 hours are devoted to "perishable skills," *i.e.*, skills that may deteriorate over time if not refreshed, as follows: four hours of Arrest Control Techniques, a form of defensive tactics including the proper use of force; four hours of non-pursuit operation of a motor vehicle; four hours of Tactical Firearms and/or use-of-force options. POST also requires two hours of Tactical Communications. Moreover, every quarter, SRPD officers undergo Continuous Professional Training (CPT). The SRPD's Field Training Officer program is 16 weeks, exceeding POST's 10-week minimum. (*Eberle Decl.*, at ¶ 9.)

SRPD requires the above POST training standards, and also provides internal training through line up training, training bulletins, Lexipol policies, general orders, California Peace Officer Association training, and training range, defensive tactics/weaponless defense, and Taser. (*Eberle Decl.*, at ¶10.)

The City of San Rafael police department maintains a copy of all P.O.S.T. profiles of training completed by officers of the San Rafael police department. The P.O.S.T. profiles show Officer Nail and Officer Mazariegos were current on all training as certified peace officers in the State of California. (*Eberle Decl.*, at ¶ 11, Exhibits H and I.)

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

MSJ – NTC/MPA
CASE # 3:23-CV-03652-VC

695506.1

1.    POST's Audit Completed Six-Months Prior to the Incident Confirmed SRPD Complied with POST Standards

POST completed an audit of SRPD to ensure compliance with its minimum selection and training standards on January 12, 2022, just six months prior to the subject incident. That audit determined that (1) SRPD's roster of personnel was properly documented in the POST Electronic Data Interchange (EDI) System; and (2) the background files of all officers hired since the prior audit (April 13, 2021) were in compliance with established section standards. (*Eberle Decl*., at ¶ 12, Exhibit J) SRPD Requires Investigations and Documentation of Incidents Where Use of Excessive Force Is Alleged.

2.    SRPD's Internal Affairs Policy

SRPD policy requires prompt reporting and documentation of incidents where force is used (e.g. Policy 300.6). Such documentation is maintained by the Department. (*Eberle Decl*., at 13, Exhibit B.)

Moreover, SRPD adheres to California Penal Code §832.5, which requires that the Department have a procedure for investigating complaints made by the public, and that it make a written description of the procedure available to the public. An Internal Affairs investigation conducted by the Department results in one of the following findings for each allegation, which have the following meanings:

a.    Exonerated: Action complained about did occur, but was lawful, justified, and proper.

b.    Not sustained: There is insufficient information/evidence to prove or disprove the allegation.

c.    Sustained: The allegation is supported by sufficient information and/or evidence.

d.    Unfounded: The allegation is false; alleged act did not occur, employee or UCPD was not involved. (*Eberle Decl*., at ¶14.)

3.    In the 5 Years Prior to the Subject Incident, There Were Seven Citizen Complaints of Use of Excessive Force Out of More than 200,000 Service Calls, and Five Were Determined to be Unfounded

SRPD tracks citizen complaints made against Officers and Professional Staff in the

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

MSJ – NTC/MPA
CASE # 3:23-CV-03652-VC

695506.1

Department. From 2017 (inclusive) through 2021, the Department received a total of only seven (7) complaints regarding use of force, broken down as follows: two complaints – one unfounded, one formal (2017). There were two complaints against Officer Nail– both unfounded (2018); one complaint – unfounded (2019); one complaint – unfounded (2020); and one complaint - exonerated (2021). Not one was sustained. (The five complaints in the five years prior to this incident were determined to be unfounded or exonerated based on video evidence and witnesses. (*Eberle Decl.*, at ¶ 15, Exhibit K.)

**C.** **The Officers Involved in the Subject Incident Were Properly Trained, and Did Not Have Substantial Use of Excessive Force Complaints Prior to the Incident**

1.  Officers Nail and Mazariegos Completed POST Certification and Additional Required Training

Both officers involved in the subject incident were POST-certified after graduation from the police academy. When an officer completes a training course it is logged into the P.O.S.T. profile of the officer, which records all training an officer receives. (*Eberle Decl.*, at ¶ 16.) Nail had successfully completed the Field Training Program (FTO program) after he was hired, and Mazariegos was currently in her FTO program when the incident occurred. Officer Brandon Nail successfully completed 789 hours of training and Officer Daisy Mazariegos successfully completed 1,056 hours. (*Eberle Decl.*, at ¶ 17.)

Prior to joining SRPD on September 30, 2019, Ofc. Nail had two years and three months of law enforcement experience with Sausalito Police Department in Sausalito, California. Since his hire with SRPD, Ofc. Nail attended and completed training that covered topics such as (a) firearms/long rifle ; (b) legal/patrol update; (c) domestic violence update; (d) Vehicle Pursuit Policy; (e) biased based policing (fair and impartial policing); (f) first aid/CPR/AED refresher; (g) driver's training (emergency vehicle operation course – "EVOC"); (h) basic firearms; (i) arrest and control techniques; (j) elder and dependent abuse; (k) human trafficking; (l) active shooters/violent intruder; (m) interview and interrogation; (n) tactical communication; (o) search and seizure; (p) crisis intervention and de-escalation; (q) bias and racial profiling; (r) DUI detection; (s) advanced roadside impaired driver enforcement; and (t) scenario evaluator. (*Eberle*

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

695506.1

1  *Decl*., at ¶ 18.)

2        Ofc. Mazariegos began her law enforcement career with SRPD on June 1, 2020. (*Eberle*

3  *Decl*., at ¶ 19.) At the time of the incident, Ofc. Mazariegos was a "probationary employee," who

4  was subject to separation at will until she had completed and passed her FTO program. (*Eberle*

5  *Decl*., at ¶ 20.)

6        Since her hire with SRPD, Ofc. Mazariegos attended and completed training that covered

7  topics such as (a) firearms/long rifle ; (b) Gun Violence Restraining Order (GVRO) Course; (c)

8  courtroom testimony; (d) Vehicle Pursuit Policy; (e) bias and racial profiling; (f) first

9  aid/CPR/AED refresher; (g) driver's training (emergency vehicle operation course – "EVOC");

10  (h) basic firearms; (i) arrest and control techniques; (j) elder and dependent abuse; and (k) human

11  trafficking; (l) active shooters/violent intruders. (*Eberle Decl*., at ¶ 21, Exhibit I.)

12               2.   <u>Officer Mazariegos and Nail's History of Complaints</u>

13        Ofc. Nail was the subject of one (1) use of force complaint prior to the subject incident,

14  which stemmed from a May 1, 2020 incident and was later retracted by the complainant after a

15  review of the body camera video confirmed it was unfounded. (*Eberle Decl*., at ¶ 22, Exhibit L.)

16  Ofc. Mazariegos had no prior use of force related complaints during her time as a SRPD officer.

17  (*Eberle Decl*., at ¶ 23.)

18          **D.**     <u>**The July 27, 2022 Incident Arose Out of a Stop for Drinking Alcohol in Public**</u>

19        On July 27, 2022, SRPD Officer Daisy Mazariegos was on patrol when she saw multiple

20  subjects drinking in the area of Windward Way in the City of San Rafael. (*Eberle Decl*., at ¶24,

21  Exhibit O, Mazariegos's Body Worn Camera video footage, at approximately 00:00:25-

22  00:00:35). Ofc. Mazariegos stopped and contacted the three individuals, one of whom was

23  plaintiff Julio Jiminez Lopez. Ofc. Nail responded as a cover officer. (*Id*.) Several empty beer

24  bottles (or "open containers") were located on the ground near where the three Hispanic

25  individuals had been contacted. During the interaction between Ofc. Mazariegos and Lopez (both

26  of whom spoke a combination of English and Spanish), Ofc. Mazariegos asked Lopez for his

27  identification. (*Id*, at 00:00:35-00:01:10) Lopez stood up and told to sit down, and Lopez

28  complied. At 00:02:55 Mr. Lopez stood up again and Ofc. Nail told plaintiff to "sit the fuck

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

MSJ – NTC/MPA
CASE # 3:23-CV-03652-VC

695506.1

1  down." Plaintiff complied and sat down for approximately 15 to 20 seconds. Mazariego again

2  asked identification and kept telling Lopez to stay seated, but Lopez again stood up to retrieve

3  something from his pockets. Nail tried to put Lopez on the ground for delaying and interfering in

4  the investigation by standing up. (*Id*, at 00:03:15-00:03:30) Nail told Lopez "get on the ground

5  dude", and tried to put Lopez on the ground. A physical altercation ensued during the effort to

6  handcuff Lopez. Ofc. Nail tried to put Lopez on the ground to overcome the resistance. (*Id*.)

7  Plaintiff Lopez grabbed the utility vest of Ofc. Nail, near where the Taser is worn. (*Id*, at

8  00:03:22.) Ofc. Nail punched Mr. Lopez one time in the face and Mr. Lopez let go of Ofc. Nail's

9  vest. The officers gained control of both of Lopez's arms and hands and handcuffed him. (Id,

10  00:03:22-00:04:20.)

11       After the incident, Corporal Ocon, the supervisor of Ofc. Nail and Ofc. Mazariegos,

12  arrived at the scene, as required by SRPD policy 300.8. A report on Ofc. Nail's use of forced was

13  prepared by Corporal Ocon on August 23, 2022. (*Eberle Decl*., at ¶ 25, Exhibit N)

14       After Mr. Lopez was arrested, the SRPD Professional Standards Unit subsequently

15  initiated an Internal Affairs ("IA") investigation into this incident (SRPD IA2022-03) to

16  determine whether Ofc. Mazariegos' and Nail's actions were consistent with SRPD Policy.

17  (*Eberle Decl*., at ¶ 26) In September, 2022, the City Attorney for San Rafael retained an outside

18  investigator, Mr. Paul Henry (of Independent Investigative Consultants, LLC), to investigate the

19  incident. (*Eberle Decl*., at ¶ 27, Exhibits O, P, and Q, Paul Henry's Report of Daisy Mazariegos,

20  Brandon Nail, and Oscar Ocon.)

21       Regarding Ofc. Mazariegos, Mr. Henry completed his investigation on March 29, 2023

22  and determined Ofc. Mazariegos violated various polices and her status as a probationary officers

23  was ended and she was separated as an at will employee of the City of San Rafael and the San

24  Rafael police department. (*Eberle Decl*., at ¶ 28, Exhibit O, at COSR (Lopez) 000959)

25       Mr. Henry determined that Ofc. Nail violated various polices of the San Rafael police

26  department related to conduct (*Eberle Decl*., at ¶ 29, Exhibit P, at COSR (Lopez) 001051.)

27       Chief Spiller accepted the findings and terminated the employment of Ofc. Nail

28  subsequent to a June 21, 2023 Skelly hearing. (*Eberle Decl*., at ¶ 30, Exhibit R.)

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

MSJ – NTC/MPA
CASE # 3:23-CV-03652-VC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

### E.      The Lawsuit

In July 2023, plaintiffs sued Officers Nail and Mazariegos, the City of San Rafael, and the San Rafael Police Department alleging constitutional violations, Monell violations, and several state-law claims. The Second Amended Complaint (Dkt. No. 36), which is the operative complaint, was filed in January 2024.

The City of San Rafael and the San Rafael Police Department answered the following causes of action: (3) *Monell* liability under 42 U.S.C. §1983 – unconstitutional custom, policy, or practice (third cause of action); (4) *Monell* liability under 42 U.S.C. §1983 – failure to properly screen/hire (fourth cause of action); (5) *Monell* liability under 42 U.S.C. §1983 – failure to train, supervise and discipline (fifth cause of action); (6) *Monell* liability under 42 U.S.C. §1983 – ratification (sixth cause of action). The plaintiffs have stipulated to dismiss the 4th cause of action, and limit the 3rd cause of action to unconstitutional custom and practice. [Dkt. No. 65] Because the undisputed material facts show plaintiffs cannot prove their causes of action, the City of San Rafael and the San Rafael Police Department respectfully request the Court enter judgment as a matter of law in their favor.

### F.      Plaintiffs' Evidence Does Not Support Their *Monell* Causes of Action

The parties have conducted extensive discovery, and SRPD has produced thousands of pages of documents to plaintiffs. Plaintiffs deposed Chief of Police David Spiller, Lt. Eberle, Sgt. Cleland, who currently work for SRPD. Plaintiffs also deposed Oscar Ocon, the supervisor at the scene of the incident who later resigned from SRPD.

The parties also exchanged Rule 26 expert disclosures. Plaintiffs have retained Roger Clark, whose deposition was taken on October 28, 2024.

### III.   ARGUMENT

#### A.      Summary Judgement Should be Granted When There is no Dispute of Material Fact and the Moving Party is Entitled to Judgement as a Matter of Law

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

695506.1

law." F.R.C.P. 56(c). A summary judgment motion pierces the pleadings and puts the opponent to the test of affirmatively coming forward with sufficient evidence for its claims to create a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In order to meet its initial burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000).

In opposing a motion for summary judgment, the adverse party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." F.R.C.P. 56(e). In the absence of such a response, "summary judgment, if appropriate, shall be entered against the adverse party." *Id*. "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); accord *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986) (the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."). Further, "[o]nly disputes over facts that might affect the outcome of the suit. will properly preclude the entry of summary judgment [and] [f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson, supra*, 477 U.S. at 248.

    **B.**    **To Prove *Monell* Claims, a Plaintiff Must Show Unconstitutional Custom Policy, or Practice or Ratification of Unconstitutional Conduct**

Plaintiffs *Monell* causes of action allege: (1) unconstitutional customs and practices (2) failure to adequately train, supervise and discipline; and (3) ratification of the allegedly unconstitutional use of force. (SAC, at ¶¶ 65-116).

Under Ninth Circuit precedent, *Monell* liability may be established one of three ways: (1) proof that municipal employee committed the alleged constitutional violation pursuant longstanding practice or custom which constitutes the standard operating procedure of the local

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

695506.1

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

1    governmental entity; (2) proof that the individual who committed the constitutional tort was an

2    official with final policy-making authority and that the challenged conduct was thus an act of

3    official government policy; or (3) proof that an official with final policy-making authority ratified

4    a subordinate's unconstitutional decision or action and the basis for it. *Gillette v. Delmore*, 979

5    F.2d 1342, 1346-47 (9th Cir. 1992) (citations omitted). Plaintiffs do not have admissible evidence

6    to support any of their *Monell* claims, and cannot establish causation.

7        Under *Monell v. Dept. of Social Service of City of New York*, 436 U.S. 658 (1978),

8    municipalities may be held liable for an unconstitutional custom, policy, or practice. *Monell,*

9    *supra*, at 690. When alleging *Monell* liability under custom, or practice, the allegedly

10   unconstitutional custom must be so "persistent and widespread" that it constitutes a "permanent

11   and well settled city policy." *Monell, supra*, at 691. "[L]iability for improper custom may not be

12   predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient

13   duration, frequency and consistency that the conduct has become a traditional method of carrying

14   out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir.1996). "When one must resort to

15   inference, conjecture and speculation to explain events, the challenged practice is not of sufficient

16   duration, frequency and consistency to constitute an actionable policy or custom." *Id*. at 920. The

17   Ninth Circuit has even found that two incidents alone is insufficient to impose *Monell* liability.

18   *Meehan v. County of Los Angeles*, 856 F.2d 102, 107 (9th Cir.1988).

19       "Liability for an improper custom may not be predicated on isolated or sporadic incidents;

20   it must be founded upon practices of sufficient duration, frequency and consistency that the

21   conduct has become a traditional method of carrying out policy." *Trevino, supra*, at 918. In

22       The suit involves one incident, not a series of incidents by Ofc. Nail and Mazariegos of a

23   persistent custom and practice of unconstitutional behavior, nor is there evidence of incidents by

24   the City of San Rafael police department of a persistent custom of practice of unconstitutional

25   behavior. The only evidence presented by plaintiffs of custom and practice is Mr. Clark's

26   testimony that he could, in his experience, viewing the video of this incident and hearing the

27   dialogue of the officers, found manifested an inherent custom and practice of the San Rafael

28   police to mistreat suspects detained for drinking alcohol in public, and found manifested a

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

1  persistent custom and practice to ignore use of force that was contrary to the written policy of the

2  department.

3      When asked for evidence by any statistical analysis of arrests as to use of force, Mr. Clark

4  testified he did not do a statistical analysis. (*Declaration of Dale L. Allen, Jr.*, at ¶ 2, Exhibit A,

5  117:9- 118:16; 125:6-16.)

6      When asked for evidence by a statistical analysis of the use of force by Nail or complaints

7  by Nail, he testified he did not do one. (*Allen Decl.* at ¶ 2, Exhibit A, 70:22-72:2)

8      Mr. Clark offered the opinion that the department ignored the profanity used by Ofc. Nail,

9  a reflection of a persistent custom and practice allowing officers to escalate instead of

10  deescalating situations. But Mr. Clark offered no statistical analysis to support the City ignored

11  profanity use by officers because Lt. Eberle had heard profanity approximately 5 times more or

12  less in his 24 year career. (*Allen Decl.* at ¶ 3, Exhibit B, 66:13-16) Eberle transcript 66:13-16

13      Mr. Clark also testified that the profanity used by Ofc. Nail when he told Mr. Lopez to sit

14  the fuck down, was not the reason Ofc, Nail punched Mr. Lopez. (*Allen Decl.* at ¶ 2, Exhibit A,

15  137:6-138:6.)

16      Clark does not explain how the use of the profanity is "the moving force behind the

17  constitutional violation," other than in this one instance the language escalated the situation.

18  (*Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). The video evidence shows that

19  plaintiff does sit down and nearly 15 seconds of calm elapses from the use of the profanity, before

20  Ofc. Nail took action to arrest plaintiff because the stood up. Additionally, plaintiffs have no

21  evidence of any other incidents where San Rafael officers allegedly used profanity which then

22  escalated to the moving force in an unconstitutional action against a citizen.

23      Plaintiffs' third cause of action fails. The City entities respectfully request that the

24  court enter judgment in its favor, as a matter of law.

25  **C.**   **Plaintiffs Cannot Establish the Elements of the Fifth Cause of Action Alleging
26        Failure to Train, Supervise, and Discipline**

27      Plaintiffs further allege *Monell* liability under a theory of inadequate training, supervision,

28  discipline and investigation. Specifically, plaintiffs allege that SRPD inadequately trained the

11

695506.1

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

1  defendant officers as to "the Constitutional rights of arrestees, to prevent the consistent and

2  systematic use of excessive force by arresting officers, and to prevent the excessive force and

3  extra judicial punishment of potential arrestees by officers." (*SAC*, at ¶ 97). The undisputed

4  material facts show plaintiffs cannot prove these allegations.

5          The evidence shows SRPD's training program met or exceeded standards set forth by the

6  state's Commission on Police Officer Standards & Training ("POST"). Both Ofcs. Mazariegos

7  and Nail attended police academies that required well in excess of the 664-hour minimum.

8  SRPD's FTO program is 16 weeks more than the 10-weeks mandated by POST. At the time of

9  the incident, both Ofc. Mazariegos and Nail possessed the requisite POST Basic certificates and

10  were up to date on all training certifications and requirements.

11          Plaintiffs' inadequate discipline and investigation claims fail because SRPD maintained a

12  system for discipline consistent with California Penal Code §832.5. SRPD required use-of-force

13  incidents to be documented. (See SRPD Policy 300.6, *Eberle Decl*., Exhibit B, at COSR (Lopez)

14  004434). SRPD also had a policy for receiving citizen complaints and investigating the

15  allegations, and did investigate them. This is exactly what took place after the subject incident.

16  Once SRPD learned of concerns regarding the subject incident, SRPD investigated it by utilizing

17  an independent, external investigator and ultimately terminated both Ofc. Mazariegos and Nail

18  based on the outcome of the investigation.

19          "A municipality's culpability for a deprivation of rights is at its most tenuous where a

20  claim turns on a failure to train." *Connick, supra*, at 1359. To recover for a failure to train, a

21  plaintiff must show: (1) he was deprived of a constitutional right, (2) the municipality had a

22  training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons

23  with whom [its police officers] are likely to come into contact;" and (3) his constitutional injury

24  would have been avoided had the municipality properly trained those officers. *Blankenhorn,*

25  *supra*, at 484; *Lee,* 250 F.3d at 681. The inadequate training must have "actually caused" the

26  deprivation of rights. *Marsh v. County of San Diego*, 680 F.3d 1148, 1159-60 (9th Cir. 2012);

27  *Merritt, supra*, at 770.

28          Allegations of inadequate training, supervision and discipline are governed by the

MSJ – NTC/MPA
CASE # 3:23-CV-03652-VC

standards set forth in *City of Canton, supra*. See *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989); see *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992). It is not enough for a plaintiff to show that better or more training could have averted harm, especially where the deficiency did not represent a conscious choice by defendant to expose plaintiff to injury. *Ting v. U.S.*, 927 F.2d 1504, 1512 (9th Cir. 1991). A single incident of deviant behavior does not demonstrate inadequate training. *Merritt v. County of Los Angeles*, 875 F.2d 765, 769 (9th Cir. 1989). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011).

Sustaining a claim for deliberate indifference in training requires a showing of (1) continued adherence to a deficient training policy despite actual or constructive knowledge that the policy has failed to prevent tortious conduct in the past; or (2) failure to equip officers with tools to handle recurring situations. *Long, supra*, at 1186-1187 (9th Cir. 2006) (citing *Brown, supra*). In other words, deliberate indifference to a person's constitutional rights occurs when the need for more or different action, "is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers . can reasonably be said to have been deliberately indifferent to the need." *Lee v. City of Los Angeles*, 250 F.3d 668, 682 (9th Cir. 2001). "Adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [municipality] liable." *City of Canton, supra*, at 391. Post-*Brown*, the Supreme Court has emphasized that "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick, supra*, at 1360 (internal quotation and citation omitted).

There is <u>no</u> evidence of a failure to train, supervise or discipline in the suit.

The evidence of the training of the officers is detailed in the Statement of Facts (e.g., sections I(B) and C(1).

The allegation of a failure to supervise is without evidentiary support. There is no evidence to support the officers were not supervised. Plaintiffs produced no evidence of past

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

695506.1

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

1    incidents of unconstitutional behavior to suggest lack of supervision of Officer Nail or

2    Mazariegos, or other officers in the San Rafael police department. Again Mr. Clark's evidence is

3    his speculation that what he saw on the video is reflective of a lack of supervision because of one

4    incident he has reviewed.

5         As for the allegation the City of San Rafael police department fails to discipline on

6    allegations of misconduct under the department policies, Mr. Clark could not provide any

7    evidence to support the allegation. The only incident was this incident. And the officers were

8    fired.

9         **D.    Plaintiffs Cannot Establish *Monell* Liability Based on Ratification and the**

10            **Sixth Cause of Action Fails as a Matter of Law**

11        Plaintiffs allege final policymaker ratification as a basis for *Monell* (*SAC*, at ¶ 107-116).

12   They allege that a "final policymaker knew of and specifically approved of [Defendant officers']

13   acts[,]" "knew that Plaintiff…never presented a risk of harm to an officer or anyone else[,}" and

14   approved the allegedly unconstitutional acts committed by the Defendant officers (described in

15   Paragraph 112 of the SAC) "as the officers remained on duty until the public became aware of

16   their conduct, at which point they placed them on paid leave." (*SAC*, at ¶¶ 110-113).

17        A municipality can sometimes be held liable under section 1983 for the conduct of a non-

18   policymaking official if a municipal policymaker ratifies that conduct. Although Ninth Circuit

19   case law on the ratification doctrine is somewhat unclear, a fundamental principle of section 1983

20   municipal liability is that a city is only liable if its conduct was the cause in fact and proximate

21   cause of the constitutional violation that the plaintiff suffered. *See, e.g., Trevino v. Gates*, 99 F.3d

22   911, 918 (9th Cir. 1996). Thus, a policymaker's approval of a subordinate's continuing

23   constitutional violation can make a municipality liable for the subordinate's violation. In that

24   circumstance, the policymaker's ratification has in some sense "subjected, or cause[d] to be

25   subjected," the plaintiff to the continuing constitutional harm. 42 U.S.C. §1983; see *Christie v.*

26   *Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999); see also *id*. at 1240 (holding that city could be held

27   liable where jury could conclude policymaker "affirmatively approved of [subordinate's] alleged

28   ongoing constitutional violations" after learning of these violations); *Fuller v. City of Oakland*, 47

14

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

1    F.3d 1522, 1526 (9th Cir.1995). But a municipality cannot be held liable merely because one of

2    its policymakers has condoned or approved of a city employee's completed, irreversible conduct;

3    the after-the-fact approval cannot be either a cause in fact or proximate cause of the violation

4    suffered by the plaintiff. *Cf. Kanae v. Hodson*, 294 F.Supp.2d 1179, 1191 (D. Haw. 2003)

5        The undisputed material facts show, however, that SRPD hired an outside investigator,

6    Paul Henry, with no connections to the City, to conduct the investigation.

7        Mr. Henry reached the conclusion Ofc. Nail violated policies of the department, and he

8    was terminated as a result. Ofc. Mazariegos' probationary hiring was terminated, and Corporal

9    Ocon was disciplined for failing to file his report timely. These actions are the complete opposite

10    of "ratifying" the alleged unconstitutional conduct. Accordingly, plaintiffs' sixth cause of action

11    false as a matter of law, and SRPD respectfully requests the Court enter judgment in their favor.

12        **E.    No Causation**

13        Finally, *Monell* liability also requires the purported government practice be "the moving

14    force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th

15    Cir. 2011). The SAC fails to demonstrate causation.

16        Assuming, *arguendo*, excessive force was used against Plaintiffs, there is no causal

17    relationship with the Department's customs, policies, and practices. There is no evidence any

18    alleged inadequacy in training, supervision or discipline was the moving force behind any

19    excessive force.

20        Lack of causation also afflicts the ratification theory. The SAC alleges ratification via

21    post-incident failure to discipline. This cannot constitute causation of Plaintiffs' alleged

22    constitutional injuries. That's because causation is temporally impossible. *Haugen v. Brosseau*,

23    339 F.3d 857, 875 (9th Cir. 2003), *re'vd on other grounds*, 543 U.S. 194, 125 S.Ct. 596, 160

24    L.Ed.2d 583 (2004) ("[plaintiff] contends that the city and the police department are at fault

25    because they failed to discipline Brosseau after the shooting. *Haugen* cannot, of course, argue that

26    the municipality's later action (or inaction) caused the earlier shooting."); *Long v. City & Cty. of

27    Honolulu*, 378 F.Supp.2d 1241, 1248 (D. Haw. 2005), aff'd, 511 F.3d 901 (9th Cir. 2007) ("Even

28    if the after-the-fact internal investigation here was somehow a "coverup" (and there is no such

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

1  evidence), it would not have prevented the shooting of Long.") (citing *Haugen*).

2       Here, Mr. Henry determined that the allegation of excessive use of force was unfounded.

3  (*Eberl*e Decl., at ¶ 35, Exhibit Q, at COSR (Lopez) 001051) There is no evidence Ofc. Nail had

4  any history of past misconduct, especially in allegations of excessive force to put the City on

5  notice of a problematic officer who needed retraining, discipline or separation from the

6  department to prevent the alleged excessive force violation of policy that occurred. And there is

7  no evidence that Mr. Henry, the outside investigator retained by the City Attorney, participated in

8  a coverup to policy violations. His finding that the use of force was in policy would not have

9  prevented Ofc. Nail's use of force in the instant case and there is no evidence that Chief Spiller,

10  in accepting the finding, was participating in a coverup of the use of force by Ofc. Nail. At the

11  conclusion of the investigation, Mr. Henry's report, was published to the report was published to

12  the public on the San Rafael Police department website. (*Eberle Decl.*, at ¶ 31).

## IV.    <u>CONCLUSION</u>

14       For those reasons, Defendants respectfully request their motion for summary judgement

15  be granted.

16

17                          Respectfully submitted,

18  Dated: November 7, 2024          ALLEN, GLAESSNER,
                                   HAZELWOOD & WERTH, LLP

19

20                        By:   */s/ Dale L. Allen, Jr.*
                                DALE L. ALLEN. JR.

21                                  KEVIN P. ALLEN
                                LEORA R. RAGONES

22                                  Attorneys for Defendants
                                CITY OF SAN RAFAEL and SAN RAFAEL

23                                  POLICE DEPARTMENT

24

25

26

27

28

695506.1