ANTHONY L. LABEL (SBN 205920)
THEO J. EMISON (SBN 209183)
**THE VEEN FIRM LLP**
20 Haight Street
San Francisco, CA  94102
Tel.: +1 415 673 4800
Fax: +1 415 771 5845
al.team@veenfirm.com
t.emison@veenfirm.com

**LAW OFFICES OF DALE K. GALIPO**
DALE K. GALIPO (SBN 144074)
dalekgalipo@yahoo.com
BENJAMIN S. LEVINE (SBN 342060)
blevine@galipolaw.com
21800 Burbank Blvd, Suite 310
Woodland Hills, CA 91367
Telephone (818) 347-3333
Facsimile (818) 347-4118

Attorneys for Plaintiffs JULIO JIMENEZ LOPEZ and YESENIA CRUZ CRUZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| JULIO JIMENEZ LOPEZ and YESENIA CRUZ CRUZ, | CASE NO. 3:23-CV-03652-VC |
| Plaintiffs, | *Hon. Vince Chhabria* |
| v. | **PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION AS TO THE THIRD THROUGH SIXTH (*MONELL*) CAUSES OF ACTION** |
| CITY OF SAN RAFAEL; SAN RAFAEL POLICE DEPARTMENT; DAISY MAZARIEGOS; BRANDON NAIL; and DOES 1-50, inclusive, | |
| Defendants. | *[Filed concurrently with Declaration of Benjamin S. Levine and Exhibits thereto; Declaration of Roger A. Clark]* |
| | Date: December 12, 2024
Time: 10:00 a.m.
Ctrm: 4, 17th Floor |

1

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .......................................................................................... iii

STATEMENT OF ISSUES TO BE DECIDED.................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .....................................................1

   I.   INTRODUCTION .......................................................................................1

       A.  Note on Scope of Motion ..................................................................2

   II.  STATEMENT OF FACTS ..........................................................................2

       A.  Officers Encounter and Use Excessive Force Against Plaintiff Julio Lopez ..............2

       B.  Officers Make Light of Mr. Lopez's Injuries and Prepare False Reports ..................4

       C.  Chief of Police Adopts Internal Affairs Finding of No Excessive Force but Terminates Officers Based on Separate Policy Violations ..........................................5

       D.  Opinions and Testimony of Persons Most Knowledgeable and Experts ....................7

   III. LEGAL STANDARD...................................................................................8

       A.  Summary Judgment .........................................................................8

       B.  Municipal Liability Under 42 U.S.C. § 1983 ..................................8

   IV. ARGUMENT ..............................................................................................9

       A.  Summary Judgment Must Be Denied as to Plaintiffs' Ratification Claim .................9

       B.  Triable Issues of Fact Preclude Summary Judgment as to Plaintiffs' Policy, Custom, and Practice Claim .......................................................................13

       C.  Triable Issues of Fact Preclude Summary Judgment as to Plaintiffs' Failure to Train Claim ...............................................................................................17

   V.  CONCLUSION.............................................................................................19

1

# <u>TABLE OF AUTHORITIES</u>

2

### CASES

3

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ...................................................................................................9

4

*Blair v. City of Pomona,*
    223 F.3d 1074 (9th Cir. 2000).............................................................................18, 19

5

6

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ...................................................................................................8

7

*City of Canton v. Harris,*
    489 U.S. 378 (1989) .................................................................................................20

8

*Day v. GEICO Casualty Co.,*
    No. 21-cv-02103-BLF, 2024 WL 251408 (N.D. Cal. Jan. 23, 2024) ......................12

9

*Federal Trade Commission v. Directv, Inc.,*
    No. 15-cv-01129-HSG, 2016 WL 5339797 (N.D. Cal. Sep. 23, 2016) ...................12

10

11

*Fortson v. City of Los Angeles,*
    628 F. Supp. 3d 976 (C.D. Cal. 2022)...............................................................11, 14

12

*Gravelet-Blondin v. Shelton,*
    728 F.3d 1086 (9th Cir. 2013)..................................................................................10

13

*Hammond v. Cnty. of Madera,*
    859 F.2d 797 (9th Cir. 1988)....................................................................................10

14

*Henry v. County of Shasta,*
    132 F.3d 512 (9th Cir. 1997)..............................................................................18, 19

15

16

*Hopkins v. Andaya,*
    958 F.2d 881 (9th Cir. 1992).....................................................................................9

17

*Huerta v. Cnty. of Tulare,*
    2024 WL 871729 (E.D. Cal. Feb. 28, 2024) ..........................................................16

18

*Kirkpatrick v. Cnty. of Washoe,*
    843 F.3d 784 (9th Cir. 2016)....................................................................................20

19

*L.W. v. Grubbs,*
    92 F.3d 894 (9th Cir. 1996)......................................................................................10

20

21

*Lake Nacimiento Ranch Co. v. San Luis Obispo Cnty.,*
    841 F.2d 872 (9th Cir. 1987).....................................................................................8

22

*Larez v. City of Los Angeles,*
    946 F.2d 630 (9th Cir. 1991)....................................................................................15

23

*Loggervale v. County of Alameda,*
    2024 WL 4234878 (9th Cir. Sept. 19, 2024)......................................................11, 14

24

*Long v. City of Los Angeles,*
    442 F.3d 1178 (9th Cir. 2006)....................................................................................9

25

26

*Lytle v. Carl,*
    382 F.3d 978 (9th Cir. 2004)................................................................................9, 10

27

*Navarro v. Block,*
    72 F.3d 712 (9th Cir. 1995)................................................................................18, 19

28

*Nissan Fire & Marine Ins. Co, Ltd. v. Fritz Cos., Inc.,*
    210 F.3d 1099 (9th Cir. 2000)..........................................................................passim

*Nottingham v. Allen*,
   2023 WL 7130293 (D. Or. Oct. 30, 2023) ................................................................12

*Peck v. Cnty. of Orange*,
   501 F. Supp. 3d 852 (C.D. Cal. 2020)..........................................................11, 14

*Price v. Sery*,
   513 F.3d 962 (9th Cir. 2008)............................................................................9

*Rice v. Morehouse*,
   989 F.3d 1112 (9th Cir. 2021)........................................................................16

*Scott v. Smith*,
   109 F.4th 1215 (9th Cir. 2024)......................................................................16

*Silva v. San Pablo Police Department*,
   805 F. App'x 482 (9th Cir. 2020)..........................................................14, 15

*Skelly v. State Personnel Board*,
   15 Cal. 3d 194 (1975)....................................................................................12

*Smith v. City of Hemet*,
   394 F.3d 689 (9th Cir. 2005)........................................................................16

*Transwest Capital, Inc. v. Cashless Concepts, Inc.*,
   2012 WL 1455236 (E.D. Cal. Apr. 26, 2012) ............................................12

*Ulrich v. City & Cnty. of San Francisco*,
   308 F.3d 968 (9th Cir. 2002)..........................................................................9

*Valenzuela v. City of Anaheim*,
   2019 WL 2949035 (C.D. Cal. Feb. 12, 2019) ............................................18

*Wallis v. Spencer*,
   202 F.3d 1126 (9th Cir. 2000)................................................................18, 19

### RULES

Federal Rules of Civil Procedure, Rule 56 ................................................................8

1

## STATEMENT OF ISSUES TO BE DECIDED

2
Plaintiffs accept the statement of issues presented in Defendants' Motion. [Dkt. 67 at 6.[1]]

3

4

## MEMORANDUM OF POINTS AND AUTHORITIES

5

## I.    INTRODUCTION

6
On July 27, 2022, San Rafael Police Department ("SRPD") Officer Daisy Mazariegos

7
encountered Plaintiff Julio Jimenez Lopez and two friends in a parking lot in San Rafael, with

8
some beer bottles nearby, and her colleague, SRPD Officer Brandon Nail, arrived soon thereafter.

9
What began as an investigation of a potential civil infraction escalated rapidly due to the officers'

10
conduct and culminated in the use of unreasonable force against Mr. Lopez, including with him

11
being taken to the ground while his arms were restrained and Mr. Nail punching him in the face,

12
causing significant injuries. The officers immediately joked about and made light of the incident,

13
and Mr. Nail made clear to his own supervisor that he expected no meaningful discipline to come

14
to him. The SRPD Chief of Police eventually became aware of the incident and ordered an

15
investigation. An outside investigator was hired and determined that although the officers violated

16
certain SRPD policies, their use of force against Mr. Lopez was justified under the circumstances

17
and did not violate policy. The Chief adopted these determinations in full, including regarding the

18
propriety of the use of force, but fired the officers for the other policy violations.

19
The City of San Rafael and the SRPD (collectively, the "City") are not entitled to summary

20
judgment on Plaintiffs' claims for municipal liability. The City has failed to meet its initial

21
summary judgment burden with respect to Plaintiffs' ratification claim and, even if it had met this

22
burden, Plaintiffs' evidence shows that the Chief of Police, as final policymaker for the City

23
regarding SRPD administration, ratified the officers' conduct and the reasons for it. Plaintiffs'

24
evidence also is sufficient to enable a reasonable jury to conclude that the constitutional violations

25
Mr. Lopez suffered were caused by unwritten policies, customs, or practices of intentionally

26
escalating encounters with members of the public, including through the use of profanity in

27
_____

28
[1] Except where noted, in this brief, cited page numbers of documents previously filed on the Court's docket refer to the ECF pagination, not to the document's own pagination.

1  violation of written SRPD policy, thereby increasing the likelihood of injury to subjects despite

2  the City's recognition of this risk, and more broadly of using inappropriate and excessive force.

3  Finally, a reasonable jury could find that the City failed to provide necessary training to its

4  officers, causing the constitutional violations Mr. Lopez endured, based on the officers' improper

5  belief in their entitlement to use dangerous and inappropriate tactics to attempt to gain compliance

6  from members of the public. Accordingly, and as explained further below, the City's motion

7  should be denied in its entirety.

8  **A. Note on Scope of Motion**

9  In accordance with the Court's structuring of discovery in this case due to the pendency of

10  related criminal cases [*see* Dkt. 52, 59], the City's motion assumes (for purposes of the motion)

11  that the violations of Mr. Lopez's constitutional rights occurred and seeks judgment only as to

12  Plaintiffs' municipal liability claims—*i.e.*, whether the City caused the constitutional violations.

13  (City's Mot. for Summ. J. ("Mot.") [Dkt. 67] at 6.) This brief does the same. Should the City

14  unexpectedly change course, or should its motion be construed as seeking to adjudicate the merits

15  of Plaintiffs' underlying constitutional claims, Plaintiffs would respectfully object and request

16  leave to submit a supplemental declaration pursuant to Federal Rule of Civil Procedure 56(d)

17  requesting to defer adjudication of the motion until after the defendant officers have been deposed

18  and additional briefing regarding the underlying constitutional claims has been submitted.

19  Plaintiffs do not anticipate this and make this note only out of an abundance of caution.

20  **II.    STATEMENT OF FACTS**

21  **A. Officers Encounter and Use Excessive Force Against Plaintiff Julio Lopez**

22  On July 27, 2022, Defendant Daisy Mazariegos, then an officer for the SRPD, encountered

23  Plaintiff Julio Jimenez Lopez with two friends in a parking lot in the canal district of San Rafael

24  with some beer bottles. (City Notice of Errata ("City Errata") Ex. M [Dkt. 69-12] at 00:25-32.)

25  Ms. Mazariegos approached and asked the men to sit down, and Mr. Lopez immediately complied

26  and directed his friends to do the same. (*Id.* at 00:34-51.) Ms. Mazariegos questioned Mr. Lopez

27  about what the three friends were doing; Mr. Lopez explained, and he and Ms. Mazariegos

28  engaged in a calm and civil conversation. (*Id.* at 00:59-02:44.) Around this time, then-Officer

1   Brandon Nail also arrived at the parking lot and stood near Ms. Mazariegos. (Declaration of

2   Benjamin S. Levine ("Levine Decl.") Ex. A at 00:29-01:04.) Ms. Mazariegos then requested that

3   the men provide ID. (City Errata Ex. M at 02:44-48.)

4        In response to Ms. Mazariegos's request, Mr. Lopez stood up to retrieve his wallet from

5   the pocket of his jeans. (*Id.* at 02:48-50.) Ms. Mazariegos immediately directed him to sit back

6   down. (*Id.* at 02:50-52.) When Mr. Lopez began explaining why had to stand to provide his ID,

7   Mr. Nail loudly interjected, "Hey, sit the fuck down!" (*Id.* at 02:52-56; Levine Decl. Ex. A at

8   01:12-16.) Mr. Lopez calmly responded that Mr. Nail did not need to speak to him in that manner,

9   and Mr. Nail immediately responded, "Then you're going in handcuffs," and stepped toward Mr.

10  Lopez, who was seated. (City Errata Ex. M at 02:56-57; Levine Decl. Ex. A at 01:16-19.) Ms.

11  Mazariegos repeated that she had told Mr. Lopez to sit down and Mr. Lopez calmly stated, "I

12  know. I know." (City Errata Ex. M at 02:57-03:00.) Mr. Nail continued to aggressively confront

13  Mr. Lopez, asking, "You know what?" (*Id.* at 03:00-01; Levine Decl. Ex. A at 01:20-22.) As Mr.

14  Lopez attempted to clarify what Mr. Nail was asking, Ms. Mazariegos resumed asking Mr. Lopez

15  for his ID. (City Errata Ex. M at 03:01-07.) Mr. Lopez again attempted to explain how he had to

16  stand to obtain his ID and thereby comply. (*Id.* at 03:07-14.)

17       At this time, both Mr. Nail and Ms. Mazariegos approached and grabbed Mr. Lopez, and

18  Mr. Nail knocked Mr. Lopez forward, to the ground, while Mr. Lopez's arms were restrained by

19  the officers, preventing him from blocking his fall. (*Id.* at 03:14-19; Levine Decl. Ex. A at 01:34-

20  41.) Mr. Nail immediately punched Mr. Lopez in the head and continued restraining him, without

21  issuing any commands or explaining himself. (City Errata Ex. M at 03:19-24; Levine Decl. Ex. A

22  at 01:41-44.) Mr. Lopez fell into a partially seated position, with his back leaning against a parked

23  vehicle, and with one hand on the ground to brace himself while holding his wallet, and with his

24  other arm restrained by Ms. Mazariegos, and Mr. Nail punched Mr. Lopez in the face. (City Errata

25  Ex. M at 03:24-32; Levine Decl. Ex. A at 01:44-48.) The officers then moved Mr. Lopez into a

26  prone position, pulled his hands behind his back, and handcuffed him. (City Errata Ex. M at

27  03:32-04:11; Levine Decl. Ex. A at 01:48-02:24.) While Mr. Lopez was prone and on the ground,

28  Ms. Mazariegos repeated to Mr. Lopez, "I told you to fuckin' sit down." (Levine Decl. Ex. A at

1  02:20-24.)

2      **B.  Officers Make Light of Mr. Lopez's Injuries and Prepare False Reports**

3      After Mr. Lopez was placed in the back of a police vehicle, the officers on scene joked and

4  made light of the force to which he had been subjected. After Mr. Nail griped that he was

5  "[f]uckin' covered in [Mr. Lopez's] blood now," he pointed to the vehicle where Mr. Lopez was

6  seated and told another officer who had arrived at the scene, "His face is blown out. He had a bad

7  day." (Levine Decl. Ex. A at 04:54-58, 06:33-38.) Moments later, when another officer arrived,

8  saw Mr. Lopez's blood on Mr. Nail's uniform, and said, "Aw shit, no, not you!," Mr. Nail

9  responded, "It's not me," to which the other officer responded, "Oh, good. Well, sorry about your

10  uniform!" (*Id.* at 07:03-11.) A few minutes later, after paramedics arrived and Mr. Nail advised

11  them that Mr. Lopez "got punched in the face," the paramedics suggested that they wipe the blood

12  off of Mr. Lopez's face. (*Id.* at 09:44-51; City Errata Ex. M at 11:17-40, 13:35-47.) Ms.

13  Mazariegos responded, "Yeah, let's do that," then laughed out loud. (City Errata Ex. M at 13:47-

14  51.)

15      Then-Corporal Oscar Ocon, who was the acting Sergeant and officer-in-charge, arrived at

16  the scene. (Levine Decl. Ex. B at 11:4-14, 14:13-15:4.) He began interviewing Mr. Nail and Ms.

17  Mazariegos, turning off his body-worn camera each time and thereby preventing these

18  conversations about the use of force and arrest from being recorded. (City Errata Ex. Q [Dkt. 69-

19  16] at 29-31, 46-47.) At other times while on scene, Mr. Ocon repeatedly reminded subordinate

20  officers that they were being recorded on his body-worn camera, particularly as they made light of

21  the incident. At one point, Mr. Ocon approached Mr. Nail and Ms. Mazariegos while the two were

22  together, while Ms. Mazariegos was laughing, and stated, "I'm on right now . . . by the way," and

23  Ms. Mazariegos stopped laughing. (*Id.* at 29-31; Levine Decl. Ex. C at 18:52-58.) Less than a

24  minute later, when Mr. Ocon began to walk away and asked if either officer needed anything, Mr.

25  Nail responded, smiling, "Thanks, Sarge," mockingly referencing Mr. Ocon's supervisory

26  authority, and Mr. Nail and Ms. Mazariegos laughed. (Levine Decl. Ex. C at 19:25-31.) When Mr.

27  Ocon repeated his question, Mr. Nail, still smiling, used one hand to quickly slap himself twice on

28  the opposite wrist, in an evident expression of confidence that Mr. Nail would not face discipline

for his use of force against Mr. Lopez. (*Id.* at 19:30-33.) Mr. Ocon responded, "You're giving me great experience with the use of forces, dude." (*Id.* at 19:33-36.) Soon after, when Mr. Ocon advised another officer that Mr. Lopez needed to be taken to the hospital to be medically cleared for booking, Mr. Nail interjected, "Yeah he does," while laughing. (*Id.* at 20:50-21:02.) Mr. Ocon stated, "I'm still on, just to remind you," shortly before advising officers, "I'm going off-camera." (*Id.* at 21:03-08, 21:33-37.)

Later during their shift, Mr. Nail and Ms. Mazariegos prepared police reports regarding the use of force and arrest, which falsely stated that Mr. Lopez had attempted to put Mr. Nail in a headlock and punched Mr. Nail. (Levine Decl. Ex. D; Levine Decl. Ex. E; Levine Decl. Ex. J at 42:10-43:2, 96:22-98:16; City Errata Ex. P at 54.) Mr. Ocon, as their supervisor, reviewed and approved these reports, denoting that no improper force was used. (Levine Decl. Ex. D; Levine Decl. Ex. E.) Mr. Ocon later prepared his own, supervisory report, in which he recommended no additional training, policy review, or investigation of the incident. (City Errata Ex. N [Dkt. 69-13].)

### C. Chief of Police Adopts Internal Affairs Finding of No Excessive Force but Terminates Officers Based on Separate Policy Violations

Mr. Ocon's immediate supervisors disagreed and recommended further review. (*Id.*) The incident was brought to the attention of SRPD Chief of Police David Spiller, who ordered an internal investigation of the incident upon reviewing the reports and video evidence. (Levine Decl. Ex. F at 19:2-25.) The City hired an outside consultant, Paul Henry, to conduct that investigation. (*Id.* at 21:3-8.) Mr. Henry reviewed available evidence, interviewed the officers, and produced findings and recommendations regarding whether the officers had violated various SRPD policies. (City Errata Ex. O [Dkt. 69-14]; City Errata Ex. P [Dkt. 69-15].) Among other factual findings, Mr. Henry determined that Mr. Nail's conduct toward Mr. Lopez prior to the use of force "did not appear to be for the purpose of gaining information or gaining voluntary compliance, but instead appeared to be intended to challenge Mr. Lopez"; that it was Mr. Lopez who attempted to de-escalate the situation, rather than either of the officers; that Mr. Nail's conduct "caused this situation to escalate"; and that Mr. Nail's treatment of Mr. Lopez "was a clear precursor to the

1  subsequent physical struggle." (City Errata Ex. P at 50, 66-67.)

2      Based on these and other findings, Mr. Henry determined that Mr. Nail violated SRPD

3  policies regarding considering alternate tactics and employing de-escalation techniques, regarding

4  courteous and respectful treatment of members of the public, and regarding bringing discredit to

5  the SRPD. (*Id.* at 93.) Mr. Henry likewise determined that Ms. Mazariegos violated SRPD policies

6  regarding considering alternate tactics and employing de-escalation techniques, regarding

7  conducting a thorough investigation into the incident leading to the arrest, and regarding bringing

8  discredit to the SRPD. (City Errata Ex. O at 99.) Despite Mr. Henry's determinations that the

9  officers inappropriately escalated the situation with Mr. Lopez, leading to their use of force against

10  him, Mr. Henry nevertheless concluded that the officers' use of force against Mr. Lopez was

11  appropriate and justified under the circumstances due to alleged resistance by Mr. Lopez, and was

12  within policy. (City Errata Ex. P at 59, 93; City Errata Ex. O at 62, 99.) Specifically, Mr. Henry

13  determined that the alleged violations of the SRPD's use of force policy were "Unfounded,"

14  defined to mean that his "investigation revealed conclusively that the alleged act did not occur."

15  (City Errata Ex. P at 22, 59; City Errata Ex. O at 22, 62.)[2]

16      Chief Spiller reviewed Mr. Henry's findings regarding the officers' alleged policy

17  violations, including the determination that the force used by the officers was appropriate, and

18  adopted those findings in full. (Levine Decl. Ex. F at 24:15-25:1, 28:20-29:23, 31:24-32:7, 42:3-

19  11, 56:23-57:9, 60:14-19; Declaration of Scott Eberle ("Eberle Decl.") [Dkt. 67-4] ¶ 30.) Based on

20  his determinations that the officers violated SRPD policies other than the use-of-force policy,

21  Chief Spiller decided to terminate Mr. Nail's employment as a police officer and to release Ms.

22  Mazariegos from her position as a probationary police officer.[3] (Levine Decl. Ex. F at 30:4-31:8,

23  _____

24  [2] In this context, and given that Mr. Henry did recognize that force was used against Mr. Lopez,
   the term "the alleged act" necessarily refers to the use of *excessive* force. Mr. Henry's finding thus

25  pertains to the propriety or justifiability of the force used, not to whether the force itself occurred,

26  despite the phrasing used.

27  [3] Due to procedural protections afforded to police officers under California law, Chief Spiller's
   decision to terminate Mr. Nail's employment was subject only to an administrative hearing under

28  *Skelly v. State Personnel Board*, 15 Cal. 3d 194 (1975). (Levine Decl. Ex. G.) No such hearing

1  Ex. G; Eberle Decl. ¶ 30.) Each officer's employment with the SRPD was terminated. (Levine

2  Decl. Ex. F at 30:21-31:8; Eberle Decl. ¶ 30.)

3       **D.  Opinions and Testimony of Persons Most Knowledgeable and Experts**

4       During discovery, pursuant to Federal Rule of Civil Procedure 30(b)(6), the City

5  designated Lieutenant Scott Eberle as person most knowledgeable regarding many of SRPD's

6  policies. (Levine Decl. Ex. H at 9:22-25, 11:12-12:17, 21:23-23:11, 28:5-29:7; Levine Decl. Ex.

7  I.) Lt. Eberle testified that written SRPD policy prohibits officers from using profanity toward

8  members of the public without exception, and that this prohibition is based on the SRPD's

9  recognition that such use of profanity can unnecessarily escalate situations and increase tensions,

10 thereby increasing the risk of injury to members of the public. (Levine Decl. Ex. H at 37:10-39:5,

11 43:23-44:25, 60:2-23.) Nevertheless, Lt. Eberle further testified that, despite this written policy, he

12 had repeatedly personally observed SRPD officers use profanity toward members of the public to

13 try to gain compliance, he believed this was effective, and he had never reported this and was

14 unaware of it ever being reported, despite his understanding of the above risks. (*Id.* at 65:1-66:24.)

15 The City's police practices expert, Thomas Chaplin, agreed that the use of profanity during this

16 incident violated SRPD policy. (Levine Decl. Ex. J at 32:10-15.)

17      Plaintiffs retained a police practices expert, Roger Clark, who opined that the officers'

18 conduct was inappropriate and that Mr. Nail inappropriately escalated the situation with Mr.

19 Lopez, including through his use of profanity, causing the officers' subsequent use of force against

20 Mr. Lopez. (Declaration of Roger A. Clark ("Clark Decl.") ¶ 10.) Mr. Clark further opined that,

21 based on his extensive law enforcement experience and experience reviewing the practices of

22 numerous police departments as an expert, the officers' jocular conduct and attitudes immediately

23 after the incident demonstrate a culture and custom within the SRPD of indifference to or

24 endorsement of the use of inappropriate and unnecessary force by SRPD officers. (*Id.* ¶¶ 1-8, 11-

25 12.) Mr. Clark also opined that the officers' incorrect beliefs regarding the propriety of

26 intentionally escalating encounters to attempt to gain compliance, including through the use of

27 _____

28 was required for Ms. Mazariegos, who was on probationary employment as a new hire and thus
was not eligible for such procedures. (Levine Decl. Ex. F at 30:23-31:8.)

1  profanity, demonstrates a custom and practice within the SRPD of doing so, despite the increased

2  likelihood of harm to members of the public, and evinces a failure of training. (*Id.* ¶¶ 13-14.) Mr.

3  Clark also opined that based on Chief Spiller's endorsement of the officers' use of force against

4  Mr. Lopez and given his own extensive law enforcement experience, Chief Spiller's endorsement

5  constituted ratification of the use of unreasonable force and further demonstrates that such force is

6  condoned within the SRPD. (*Id.* ¶ 15.)

7  **III.    LEGAL STANDARD**

8        **A.  Summary Judgment**

9        A party is entitled to summary judgment only if it "shows that there is no genuine dispute

10  as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

11  56(a). A "moving party without the ultimate burden of persuasion at trial [ ] may carry its initial

12  burden of production by either . . . . produc[ing] evidence negating an essential element of the

13  nonmoving party's case, or, after suitable discovery, . . . show[ing] that the nonmoving party does

14  not have enough evidence of an essential element of its claim or defense to carry its ultimate

15  burden of persuasion at trial." *Nissan Fire & Marine Ins. Co, Ltd. v. Fritz Cos., Inc.*, 210 F.3d

16  1099, 1106 (9th Cir. 2000). "If a moving party fails to carry its initial burden of production, the

17  nonmoving party has no obligation to produce anything." *Id.* at 1102-03.

18        If a moving party satisfies this initial burden, the burden shifts to the nonmoving party to

19  show a genuine dispute of material fact exists as to an essential element of its case on which it will

20  bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court

21  must view the evidence and draw all reasonable inferences in the light most favorable to the

22  nonmovant. *Lake Naciemiento Ranch Co. v. San Luis Obispo Cnty.*, 841 F.2d 872, 875 (9th Cir.

23  1987). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate

24  inferences from the facts are jury functions, not those of a judge . . . ." *Anderson v. Liberty Lobby,*

25  *Inc.*, 477 U.S. 242, 255 (1986). Even entirely circumstantial evidence is sufficient to create a

26  triable issue of fact. *Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir. 1992).

27        **B.  Municipal Liability Under 42 U.S.C. § 1983**

28        A municipality may be liable under 42 U.S.C. § 1983 for constitutional violations

committed by its officials in multiple ways. Among these, "[a] municipality may be held liable for a constitutional violation if a final policymaker ratifies. . . . a subordinate's decision and the basis for it." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004) (citation and internal quotation marks omitted). A plaintiff may also show that "the constitutional tort was the result of a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity.'" *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (quoting *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002)). Finally for purposes of the instant motion, "[f]ailure to train an employee who has caused a constitutional violation can be the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of the person with whom the employee comes into contact." *Long v. City of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006).

## IV.  **ARGUMENT**

### A.  **Summary Judgment Must Be Denied as to Plaintiffs' Ratification Claim**

#### 1.  Defendants Have Not Met Their Initial Summary Judgment Burden

"[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102. However, as to Plaintiffs' Ratification claim, the argument presented in the City's motion consists of: (1) an assertion that official ratification of use of force after the fact can never give rise to *Monell* liability, (2) a statement that the City hired an outside investigator to conduct the internal affairs investigation, and (3) an explanation that Mr. Nail's employment was terminated because he "violated policies of the department"—without identifying those policies or stating whether these violations pertain to Mr. Nail's unconstitutional conduct, including his use of excessive force—and that Ms. Mazariegos and Mr. Ocon also faced discipline. (Mot. at 19-20.)

However, the City's assertion that "a municipality cannot be held liable merely because one of its policymakers has condoned or approved of a city employee's completed, irreversible conduct," (Mot. at 20), is incorrect. The Ninth Circuit and district courts within it have repeatedly allowed *Monell* claims alleging ratification to proceed even where those claims were based on the *post hoc* approval of a discrete, completed constitutional violation. *See, e.g.*, *Gravelet-Blondin v.*

*Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013) (remanding for further consideration of ratification claim based on approval of officer's use of taser against subject); *Lytle v. Carl*, 382 F.3d 978, 987-88 (9th Cir. 2004) (holding evidence of assistant school superintendent's approval of retaliatory conduct, including after conduct had occurred, was sufficient to uphold plaintiff's jury verdict); *Hammond v. Cnty. of Madera*, 859 F.2d 797, 802 (9th Cir. 1988) ("The Board [of Supervisors] even approved an improper right-of-way deed several years after it incorporated the road into the County system. The Board thereby ratified the misconduct which gives rise to the County's [§ 1983] liability."), *abrogated on other grounds as recognized in L.W. v. Grubbs*, 92 F.3d 894, 897-98 (9th Cir. 1996); *Loggervale v. County of Alameda*, 2024 WL 4234878, at *3 (9th Cir. Sept. 19, 2024) (affirming jury verdict for plaintiffs on ratification claim where sheriff reviewed incident involving alleged wrongful detention, determined deputies' conduct was lawful, and determined no further action would be taken); *Fortson v. City of Los Angeles*, 628 F. Supp. 3d 976, 993 (C.D. Cal. 2022); *Peck v. Cnty. of Orange*, 501 F. Supp. 3d 852, 870-71 (C.D. Cal. 2020).[4] Thus, that the former officers' unconstitutional conduct here was ratified after the date of the incident is no bar to Plaintiffs' claims and cannot justify a grant of summary judgment. Indeed, to hold otherwise would likely mean that *Monell* liability based on ratification could never exist in cases alleging excessive force; it is hard to conceive of a scenario wherein an official with final policymaking authority could possibly approve of a particular use of force against an individual beforehand or while the use of force is still ongoing, as the City incorrectly contends is required.

The remainder of the City's argument regarding the ratification claim neither "negat[es] an essential element" of that claim nor shows that Plaintiffs lack "enough evidence of an essential element of [their] claim . . . to carry [their] ultimate burden of persuasion at trial," *Nissan Fire*, 210 F.3d at 1106, because it does not address whether the actual alleged unconstitutional conduct by the defendant officers was approved of by an official with final policymaking authority. Although the City's motion states that Paul Henry determined that Mr. Nail "violated policies" and that Nail was terminated as a result, it omits all relevant details, *i.e.*, that: (1) the policies Nail

---

[4] Notably, many of these cases were decided after *Christie v. Iopa*, 176 F.3d 1231 (9th Cir. 1999), upon which the City relies, showing that *Christie* did not establish the rule the City advocates for.

1   was found to have violated did not include the SRPD's use-of-force policy, which Henry expressly

2   found Nail *did not* violate because, in Henry's view, Nail's use of force was justified due to Mr.

3   Lopez's alleged resistance; (2) David Spiller, as Chief of Police for the SRPD, fully adopted all of

4   Mr. Henry's findings, including his determination that the use of force was justified; and (3) Chief

5   Spiller recommended Nail's termination (subject only to procedures required under *Skelly v. State*

6   *Personnel Board*, 15 Cal. 3d 194 (1975)) and Mazariegos's based on the separate policies he

7   concluded these officers did violate, notwithstanding his express approval of their use of force.

8   Because the City's vague and conclusory explanation regarding ratification does not substantively

9   address Plaintiffs' claim or show that the pertinent evidence produced in discovery cannot suffice

10  to carry Plaintiffs' burden at trial, the City has not satisfied its initial burden and summary

11  judgment must be denied on this basis alone. *See Nissan Fire*, 210 F.3d at 1106-07 (denying

12  summary judgment due to movant's failure to meet initial burden); *Day v. GEICO Casualty Co.*,

13  No. 21-cv-02103-BLF, 2024 WL 251408, at *6-7 (N.D. Cal. Jan. 23, 2024) (same); *Nottingham v.*

14  *Allen*, 2023 WL 7130293, at *5 (D. Or. Oct. 30, 2023) (same); *Federal Trade Commission v.*

15  *Directv, Inc.*, No. 15-cv-01129-HSG, 2016 WL 5339797, at *3 (N.D. Cal. Sep. 23, 2016) (denying

16  summary judgment where contents of movant's evidence was not disputed but inferences to be

17  drawn from it was, such that movant failed to meet summary judgment burden); *Transwest*

18  *Capital, Inc. v. Cashless Concepts, Inc.*, 2012 WL 1455236, at *1 (E.D. Cal. Apr. 26, 2012)

19  (denying summary judgment due to movant's failure to meet initial burden).

20              2.   Triable Issues of Fact Preclude Summary Judgment

21          Because the City has not satisfied its summary judgment burden, Plaintiffs "ha[ve] no

22  obligation to produce anything" to support their Ratification claim, and the Court need not decide

23  whether Plaintiffs' evidence creates a triable issue of fact. *Nissan Fire*, 210 F.3d at 1102-03. But

24  even if this were not the case, Plaintiffs have sufficient evidence to enable a reasonable jury to

25  conclude that the individual defendants' unconstitutional actions were ratified by a City official

26  with final policymaking authority, Chief Spiller.

27          It is undisputed that upon learning of the officers' use of force against Mr. Lopez, Chief

28  Spiller ordered a review of the incident, and Paul Henry was hired to conduct that review. Mr.

1   Henry reviewed incident records, conducted interviews and, based on his investigation, evaluated

2   the disciplinary charges that had been issued against the officers. Although Mr. Henry found that

3   the officers had violated multiple SRPD policies, including policies requiring officers to be

4   courteous and respectful toward members of the public and to not bring discredit to the SRPD, he

5   also concluded that they did *not* violate SRPD's use of force policy, and reached that conclusion

6   based on his specific determination that the force each officer used was justified and appropriate

7   under the circumstances.

8         Mr. Henry's reports were submitted to Chief Spiller for his review. Upon reviewing the

9   report, Chief Spiller adopted Mr. Henry's findings and conclusions in full, including regarding the

10  propriety of the force used against Mr. Lopez. Based on the violations of separate policies that

11  were sustained, Chief Spiller determined to terminate the officers' employment with the SRPD.

12  However, in a letter to Mr. Nail explaining the basis for his termination, although Chief Spiller

13  reiterated that he deemed Mr. Nail's conduct in the leadup to the use of force to be improper and

14  unprofessional, he did not criticize the use of force against Mr. Lopez and instead indicated he

15  believed it was necessary under the circumstances. (Levine Decl. Ex. G.)

16        Based on his review of the evidence in this case, Plaintiffs' police practices expert, Roger

17  Clark, has opined that Chief Spiller—in concluding that the force used was appropriate based on

18  Mr. Henry's review of the incident and his own review—ratified the officers' use of force. (Clark

19  Decl. ¶ 15.) And in adopting Mr. Henry's determination that the use of force was justified due to

20  the circumstances at the time, Chief Spiller ratified not only the use of force but also the reasons

21  for it, a conclusion further supported by prior court decisions. *See, e.g.*, *Loggervale*, 2024 WL

22  4234878, at *3 (affirming plaintiff's verdict on ratification claim where sheriff reviewed and

23  approved internal affairs investigation determination that complaint of excessive force was

24  unfounded, meaning no excessive force occurred); *Fortson*, 628 F. Supp. 3d at 993; *Peck*, 501 F.

25  Supp. 3d at 870-71.[5] Accordingly, summary judgment must be denied as to this claim.

26

27  [5] The City has not suggested that Chief Spiller lacked final policymaking authority with regard to

28  determinations of officers' compliance with SRPD policy, imposition of discipline upon officers

1

**B.  Triable Issues of Fact Preclude Summary Judgment as to Plaintiffs' Policy,**

2

**Custom, and Practice Claim**

3      Chief Spiller's ratification of the officers' use of force against Mr. Lopez is, in turn,

4   evidence of a pre-existing policy, custom, or practice at the SRPD that caused the constitutional

5   violations.[6] *Silva v. San Pablo Police Department*, 805 F. App'x 482, 485 (9th Cir. 2020) (citing

6   *Larez v. City of Los Angeles*, 946 F.2d 630, 647 (9th Cir. 1991)). In *Silva*, the Ninth Circuit held

7   that a police chief's *post hoc* determination that a challenged use of force was within policy based

8   on a review of the incident, together with a defense expert's opinion to the same effect, were

9   sufficient to allow the plaintiff's *Monell* claim based on a custom, practice, or policy to proceed to

10  trial. *Id.*; *see also Larez*, 946 F.2d at 647 ("The jury properly could find such policy or custom [of

11  use of excessive force] from the failure of [the police chief] to take any remedial steps after the

12  violations.") (collecting cases). Here, the City's retained expert, Mr. Chaplin, concurred in Chief

13  Spiller's determination that the force the officers used was not excessive in violation of

14

15   —————————————

16  for violations of policy, or other matters of SRPD administration. *See* Mot. at 19-20. This is

    despite the City's clear acknowledgment that Chief Spiller is the pertinent City official with regard

17  to Plaintiffs' ratification claim. *Id.* at 6 (arguing Chief Spiller's "[a]cceptance of an independent

    investigator's findings does not establish ratification of the officers' conduct"). Any argument that

18  Chief Spiller lacked final policymaking authority is therefore waived. *See, e.g.*, *United States v.*

    *Anderson*, 472 F.3d 662, 668 (9th Cir. 2006); *Architectureart, LLC v. City of San Diego*, 2016 WL

19  1077124, at *3 n.3 (S.D. Cal. Mar. 18, 2016); *Somers v. Digital Realty Trust, Inc.*, 119 F. Supp. 3d

    1088, 1106 (N.D. Cal. 2015), *rev'd on other grounds*, 886 F.3d 1300; *Dytch v. Yoon*, No. C 10-

20  02915-MEJ, 2011 WL 839421, at *3 (N.D. Cal. Mar. 7, 2011). In any event, Chief Spiller did

    possess such authority. *See* San Rafael City Charter, Art. VIII § 6 (providing that police chief shall

21  direct department, "shall have all the powers conferred on sheriffs by the laws of the state," and

    shall have his "orders . . . promptly executed by the police officers, peace officers or watchmen in

22  the city"), available at https://library.municode.com/ca/san_rafael/codes/code_of_ordinances?

23  nodeId=CHTR_SAN_RAFAEL_ARTVIIIEXADDE_S6CHPO; (Levine Decl. Ex. F at 10:23-

    11:1, 11:24-12:12 (police chief makes ultimate decision to agree or disagree with

24  recommendations and findings regarding potential policy violations), 30:4-8 (decision whether to

    impose discipline upon officers is responsibility of chief); Ex. J at 53:21-54:2 (City's expert

25  opining that police "chief is the ultimate decision maker with regards to … administrative

    personnel and investigations), 54:23-55:7 (chief empowered to make final decision regarding

26  policy violations)).

27  [6] Although Plaintiffs no longer allege that a written policy caused the violations of Mr. Lopez's

    constitutional rights, they maintain this claim in all other respects, *i.e.*, they allege that an

28  unwritten departmental policy, custom, or practice caused these violations. [Dkt. 68.]

1    department policy. (Levine Decl. Ex. K at 6-7.) Mr. Clark has also opined that Chief Spiller's

2    approval of the use of force against Mr. Lopez indicates that the use of unreasonable force such as

3    was used in this incident is accepted and not controversial within the SRPD. (Clark Decl. ¶ 15.)

4            Additional evidence further supports Plaintiffs' claim that an SRPD policy, custom, or

5    practice caused the constitutional violations Mr. Lopez experienced. The SRPD maintains a

6    written policy that prohibits officers from using profanity while on duty or in uniform without

7    exception and provides that use of profanity is a cause for discipline. (City Errata Ex. C [Dkt. 69-

8    3] at 7, § 320.5.9(g); Levine Decl. Ex. H at 60:2-6.) SRPD Lieutenant Scott Eberle, as person most

9    knowledgeable for the City regarding many SRPD policies, testified that a key reason for this

10   written policy is to avoid unnecessarily escalating situations and increasing tensions when

11   interacting with members of the public, and to thereby reduce or avoid avoidable injuries to

12   civilians that can result from confrontations and heightened tensions. (Levine Decl. Ex. H at 60:9-

13   23.) In other words, the written policy recognizes that an officer's use of profanity toward a

14   member of the public increases the risk that that the officer will ultimately use force against and

15   injure that person. (*See id.*) This rationale for the written policy is in line with extensive Fourth

16   Amendment case law requiring officers to consider alternative options before resorting to the use

17   of force, including through de-escalation. *See, e.g.*, *Scott v. Smith*, 109 F.4th 1215, 1225 (9th Cir.

18   2024) (less intrusive alternatives to use of force to be considered by officers under Fourth

19   Amendment include "verbal de-escalation strategies") (citing *Rice v. Morehouse*, 989 F.3d 1112,

20   1124 (9th Cir. 2021)); *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (one factor to be

21   considered in determining reasonableness of use of force is availability of alternatives to use of

22   force); Ninth Cir. Model Jury Instr. 9.25(9) (same); *Huerta v. Cnty. of Tulare*, 2024 WL 871729,

23   at *10 (E.D. Cal. Feb. 28, 2024) (insufficiency of deputies' attempts to deescalate before using

24   force supported determination that use of force was unreasonable under Fourth Amendment); (*see*

25   *also* Levine Decl. Ex. J at 31:11-17 (opining, as defense police expert, that it is standard police

26   training that officers should attempt to de-escalate encounters when they can safely do so)).

27           Yet, despite the SRPD's understanding of this risk, there is sufficient evidence to allow a

28   reasonable jury to conclude that SRPD has an unwritten policy, custom, or practice pursuant to

which officers use profanity toward members of the public, including in attempts to gain compliance, in violation of the written policy, and that the written policy is not enforced. In deposition, despite acknowledging that no exception to the written policy exists for circumstances where officers are attempting to gain compliance, Lt. Eberle made a point to "clarify [ ] based on [his] past experiences" that he had repeatedly observed SRPD officers use profanity to "strike the point into suspects" who were noncompliant and thereby gain compliance from them. (Levine Decl. Ex. H at 65:1-10.) And despite acknowledging that each of these uses of profanity he observed constituted policy violations, Lt. Eberle could not recall having reported them and was not aware of any discipline having been imposed. (*Id.* at 65:14-66:21.) Lt. Eberle, as person most knowledgeable for the City, also could not explain why any SRPD officer should feel he or she is not immune from the written profanity policy given the prevalence of these violations and despite being unaware of any instances of SRPD officers' use of profanity having been reported. (*Id.* at 67:11-71:3; *see id.* at 71:18 (justifying officers' use of profanity on ground that profanity "is pretty common in today's day and age").)

Officers involved in this incident echoed these points. Mr. Nail, who was a Field Training Officer ("FTO"), initially explained that he "believed it was necessary to 'escalate' the situation" with Mr. Lopez through intentional use of profanity to try to gain compliance. (City Errata Ex. P at 62; Levine Decl. Ex. J at 51:23-25.) In an interview with Mr. Henry, Mr. Nail reiterated that his use of profanity was intended as a de-escalatory tactic. (City Errata Ex. P at 62-63; Levine Decl. Ex. L at 24:18-25:20, 26:7-28:2.) Mr. Ocon—a Corporal and an Acting Sergeant on the date of the incident, and also an FTO—likewise testified that in his experience at the department, it was not unusual for officers to direct profanity toward members of the public. (Levine Decl. Ex. B at 52:17-22.) Mr. Ocon further stated in his internal affairs interview that that he believed Mr. Nail's use of "that jargon," referring to the profanity, constituted an attempt to de-escalate. (City Errata Ex. P at 61; Levine Decl. Ex. M at 66:21-67:8, 67:15-19.)

Based on his review of the evidence in this case, Mr. Clark opined that the SRPD accepts and condones the use of profanity by officers toward members of the public in violation of its own written policy. (Clark Decl. ¶ 14.) Mr. Clark also opined that Mr. Nail's language toward Mr.

1    Lopez directly escalated the situation, leading to Mr. Nail's and Ms. Mazariegos's decision to use

2    force against Mr. Lopez. (*Id.* ¶ 10.) Mr. Clark further opined that Mr. Nail's and Mr. Ocon's belief

3    in the propriety of intentionally escalating encounters with members of the public to attempt to

4    deescalate them evinces a departmental practice of doing so. (*Id.* ¶ 13.)

5            Given this evidence, a reasonable jury could infer that at the time of the incident, the

6    SRPD maintained an unwritten policy, custom, or practice of using profanity toward members of

7    the public—despite the existence of a written ban on profanity intended to reduce confrontation

8    and avoid preventable injury—and/or of otherwise intentionally escalating encounters with

9    members of the public, thereby increasing the risk of harm to individuals with whom officers

10   engage. Courts including the Ninth Circuit have previously held that evidence of a similar nature

11   was sufficient to create a triable issue of fact as to the existence of an improper custom or practice.

12   *See Blair v. City of Pomona*, 223 F.3d 1074, 1080 (9th Cir. 2000) (testimony about "a code of

13   silence" among police officers sufficient to create a triable issue of fact); *Wallis v. Spencer*, 202

14   F.3d 1126, 1142 (9th Cir. 2000) (custom inferred from police conduct); *Henry v. County of

15   Shasta*, 132 F.3d 512, 518 (9th Cir. 1997) (same); *Navarro v. Block*, 72 F.3d 712, 715 (9th Cir.

16   1995) (911 dispatcher's testimony that it was practice of Sheriff's Department not to classify

17   domestic violence calls as emergencies sufficient to create a triable issue of fact); *Valenzuela v.

18   City of Anaheim*, 2019 WL 2949035, at *10 (C.D. Cal. Feb. 12, 2019) (department's authorization

19   of use of restraint hold despite knowledge that hold risked serious injury or death was sufficient to

20   create triable issue of fact). And under the circumstances of this case, a jury could find that these

21   unwritten policies, customs, or practices caused Mr. Nail to intentionally escalate the situation

22   with Mr. Lopez, including through his use of profanity and other aggressive conduct toward Mr.

23   Lopez, resulting in the officers' unnecessary and excessive use of force. (*See* City Errata Ex. P at

24   50 (disputing Mr. Nail's asserted belief that his statement "sit the fuck down" had no negative

25   consequences on the outcome of the incident, and noting, "in fact, it appears to the Investigator

26   that this statement from Officer Nail was a clear precursor to the subsequent physical struggle").)

27           Additional evidence supports the existence of a custom or practice within the SRPD of

28   using excessive or unnecessary force, and of disregarding the welfare of members of the public in

using force. Rather than expressing any concern for a visibly bleeding Mr. Lopez's well-being

after he had just been unreasonably beaten and injured by the individual defendants, several

officers on the scene joked about the incident and the use of force against Mr. Lopez, and Mr. Nail

made clear to his supervisor, Mr. Ocon, that he expected at most a slap on the wrist for his

conduct. *See supra* Section II.B. In his internal affairs interview, Mr. Nail stated that he would not

do anything differently if he had the opportunity to handle the encounter with Mr. Lopez again.

(City Errata Ex. P at 49; Levine Decl. Ex. L at 79:24-80:1.) Based on the foregoing, Plaintiffs'

expert, Mr. Clark, opined that in his extensive law enforcement experience and having reviewed

the practices of many departments, the conduct and attitudes demonstrated by the officers here—

including in front of and by a supervisor and FTOs—do not exist absent an understanding and

practice within a department of tolerating, condoning, and/or endorsing the use of inappropriate

and unnecessary force against members of the public. (Clark Decl. ¶ 12.) Mr. Ocon's repeated

emphasis on avoiding creating video evidence of poor conduct by the officers as a supervisor,

including by deliberately turning off his camera before speaking to the individual officers

(creating a permissible inference that he sought to cover for them should their use of force

ultimately appear unjustified), also supports the existence of such a departmental custom or

practice. Together, this evidence is sufficient to create a triable issue of fact as to the existence of a

custom or practice of using and supporting the use of unreasonable force. *See Blair*, 223 F.3d at

1080; *Wallis*, 202 F.3d at 1142; *Henry*, 132 F.3d at 518; *Navarro*, 72 F.3d at 715. Summary

judgment should thus be denied as to this claim.

### C.  Triable Issues of Fact Preclude Summary Judgment as to Plaintiffs' Failure to Train Claim

Triable issues of fact also exist as to Plaintiffs' failure-to-train claim. As noted, Mr. Nail

and Mr. Ocon each expressed their belief that it was appropriate to intentionally escalate

encounters with members of the public who were deemed noncompliant in order to attempt to

deescalate and gain compliance. Mr. Henry, Chief Spiller, and Mr. Chaplin were each critical of

this approach. (City Errata Ex. P at 63, 66-67; Levine Decl. Ex. F at 37:7-38:3, 41:5-12; Levine

Decl. Ex. G; Levine Decl. Ex. J at 37:1-11.) Mr. Clark opined that such a practice is wrong and

contrary to proper police practices, as escalating a situation with an individual increases the threat

of harm to those involved and increases the likelihood that force will be used, rather than

decreasing it. (Clark Decl. ¶¶ 10, 13; *see also* City Errata Ex. P at 67 (explaining that "Officer Nail

telling Mr. Lopez to 'sit the fuck down' caused this situation to become more contentious" and

that Mr. Nail's "actions caused this situations to escalate").) Mr. Clark further opined that Mr.

Nail's and Mr. Ocon's claimed belief in the propriety of intentionally escalating encounters with

members of the public in order to attempt to deescalate them demonstrates a failure by the SRPD

to adequately train its officers on de-escalation and, in particular, on the impropriety of this

purported tactic. (Clark Decl. ¶ 13.)

Given the well-established principle of de-escalation as a standard police practice (*see,*

*e.g.*, *id.* at ¶¶ 10, 13; City Errata Ex. B [Dkt. 69-2] at 5 (in section of written SRPD policy titled

"ALTERNATIVE TACTICS – DE-ESCALATION," describing de-escalation as "a fundamental

principle of how we conduct police work" and setting out guidelines for de-escalation tactics), the

consequences of the City's failure to train its officers on the dangerousness of this approach and

its incompatibility with accepted de-escalation practices—as shown by this case—were obvious.

*See City of Canton v. Harris*, 489 U.S. 378, 390 (1989) (explaining that unconstitutional conduct

may suffice to prove municipal liability for failure to train where the consequences of failing to

provide training that would prevent the constitutional violation are obvious); *Kirkpatrick v. Cnty.*

*of Washoe*, 843 F.3d 784, 796-97 (9th Cir. 2016) (denying summary judgment based on failure to

train social workers where need to train was obvious). Accordingly, summary judgment should be

denied as to this claim.


/ / /

/ / /

/ / /

1    V.      **CONCLUSION**

2           For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants'

3    Motion in its entirety.

4

5    DATED:  November 21, 2024          By:    */s/ Dale K. Galipo*

6                                              Dale K. Galipo (SBN 144074)
                                               *dalekgalipo@yahoo.com*
7                                              Benjamin S. Levine (SBN 342060)
                                               *blevine@galipolaw.com*
8                                              **LAW OFFICES OF DALE K. GALIPO**
                                               Anthony Label (SBN 205920)
9                                              *a.label@veenfirm.com*
                                               Theo Emison (SBN 209183)
10                                             *t.emison@veenfirm.com*
11                                             **THE VEEN FIRM LLP**
                                               Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28