# Exhibit G



# SAN RAFAEL POLICE DEPARTMENT

1375 Fifth Avenue • San Rafael, CA 94901

David C. Spiller, Police Chief

Voice (415) 485-3000     www.srpd.org     Fax (415) 485-3043

**TO:** Brandon Nail, Police Officer
**FROM:** D.C. Spiller, Police Chief
**DATE:** May 11, 2023
**SUBJECT:** Notice of Intent to Terminate

This notice is to inform you that I am recommending that the City of San Rafael ("City") terminate your employment as a Police Officer. This Notice of Intent to Terminate Employment is being issued in accordance with the following:

1. Article 7.2 Termination of Employment set forth in the Memorandum of Understanding between the City and San Rafael Police Association July 1, 2021- June 30, 2024 ("MOU") (**Exhibit 1**.),
2. Section 320.5 (Causes For Discipline) set forth in the City's Police Department ("SRPD") Policy Manual (**Exhibit 2**.), and
3. Rule 12 (Disciplinary Action) of the City's Personnel Rules & Regulations. (**Exhibit 3**.)

In accordance with Rule 12.4 of the City's Personnel Rules and Regulations, this notice provides a statement of the specific grounds and particular facts upon which the proposed disciplinary action is based, lists and attaches the materials that I relied upon in making my decision, and provides information about your right to respond before the recommended disciplinary action is implemented.

### I. EFFECTIVE DATE OF PROPOSED TERMINATION

The effective date of your proposed termination is pending the pre-disciplinary *Skelly* meeting pursuant to the Pre-Disciplinary Procedure outlined in Rule 12.4(b) of the City's Personnel Rules and Regulations. If my recommendation remains unchanged following completion of the pre-disciplinary review in this matter, then your termination will be effective immediately following the completion of the pre-disciplinary process and the issuance of the written final notice of your termination.

### II. GROUNDS/VIOLATIONS FOR PROPOSED TERMINATION

You are being issued this Notice of Intent to Terminate based upon your engagement in prohibited conduct pursuant to Article 7.3.1 of the MOU, 320.5 (Causes for Discipline) of the SRPD Policy Manual, and Section 12.3 (Causes for Disciplinary Action) of the City's

Personnel Rules and Regulations. This notice is specifically based on the following violations of City policy but need not be based upon a finding that you have violated each and every one of the provisions, or committed each and every action set forth herein. Rather, your violation of any one of the following policies, individually or collectively, would result in my rendering of this disciplinary action in the manner set forth below:

- Negligence of Duty (*See* MOU 7.3.1(b), City Personnel Policy and Regulations 12.3(a), and SRPD Manual 320.5.7 (a).)

- Inability, unwillingness, refusal, or failure to perform work as assigned, required, or directed (*See* MOU 7.3.1(f) and City Personnel Policy and Regulations 12.3(e).)

- Unacceptable behavior toward the general public of fellow employees or officers of the city (*See* MOU 7.3.1(i) and City Personnel Policy and Regulations 12.3(h).)

- Violations of any of the provisions of these working rules and regulations or departmental rules and regulations (*See* MOU 7.3.1(m) and City Personnel Policy and Regulations 12.3(l).)

- Failure to perform to an acceptable level of work quality and quantity (*See* MOU 7.3.1(q).)

- Other acts inimical to the public service (*See* MOU 7.3.1(s) and City Personnel Policy and Regulations 12.3(q).)

- Violation of, or ordering or instructing a subordinate to violate any policy, procedure, rule, order, directive, requirement or failure to follow instructions contained in department or City manuals. (*See* SRPD Manual 320.5.1 (a).)

- Unsatisfactory work performance including but not limited to failure, incompetence, inefficiency, or delay in performing and/or carrying out proper orders, work assignments, or the instructions of supervisors without a reasonable and bona fide excuse. (*See* SRPD Manual 320.5.7(b).)

- Disparaging remarks or conduct concerning duly constituted authority to the extent that such conduct disrupts the efficiency of this department or subverts the good order, efficiency and discipline of this department or that would tend to discredit any of its members. (See SRPD Manual 320.5.8 (e).)

- Any act on-- or off-duty that brings discredit to this department. (*See* SRPD Manual 320.5.8 (i).)

- Discourteous, disrespectful or discriminatory treatment of any member of the public or any member of this department or the City. (*See* SRPD Manual 320.5.9(f).)

- Use of obscene, indecent, profane or derogatory language while on duty or in uniform. (*See* SRPD Manual 320.5.9 (g).)

- Any other on or off duty conduct which any member knows or reasonably should know is unbecoming a member of this department, is contrary to good order, efficiency or morale, or tends to reflect unfavorably upon this department or its members. (*See* SRPD Manual 320.5.9 (m).)

### III.   FACTUAL BASIS IN SUPPORT OF THE WRITTEN REPRIMAND

You have been a police officer for five (5) years. On September 30, 2019, you were hired as a police officer with the SRPD. As a police officer, you must patrol assigned areas, investigate crimes/accidents/deaths/etc., provide information and direction to the public, have knowledge of community-oriented policing and problem-solving, and establish and maintain cooperative relationships with the public and fellow employees. (**Exhibit 4**.)

You are also a Field Training Officer for the SRPD, which includes the following additional responsibilities. As a Field Training Officer you are expected to exemplify the standards of the SRPD, especially in the areas of appearance, attitude, work habits and adherence to the Department mission, policies and values. Additionally, as a Field Training Officer you are expected to demonstrate the highest principles of the law enforcement profession, to support of the department's goals and objectives and adhere to the performance standards of the department

    **A.**    **On July 27, 2022, you violated multiple City and SRPD policies, resulting in the unnecessary escalation at a scene you were dispatched to as a cover officer.**

On July 27, 2022, you responded to a scene to assist Officer Daisy Mazariegos as a cover officer. When you arrived, Officer Mazariegos had been speaking to three subjects, including and primarily with Julio Jimenez Lopez, for several minutes and requested that they sit and provide their identification. Shortly after your arrival, Mr. Lopez stood up to remove his identification from his pockets and Officer Mazariegos again directed him to sit down. When Mr. Lopez did not comply with Officer Mazariegos's direction you intervened and told Mr. Lopez to "sit the fuck down." You later explained you thought this language was necessary to temporarily escalate the situation to avoid having to "go hands on" with Mr. Lopez, resulting in de-escalation of the situation. However, this tactic was ineffective and did not calm the situation, and only escalated it. (**Exhibit 5**.)

Mr. Lopez took offense to your language and calmly told you that you did not have to talk to him in that manner. In response, you told Mr. Lopez that he was going in handcuffs. You began to step toward Mr. Lopez and Officer Mazariegos told him, "Well, I told you to sit down." Mr. Lopez responded, "I know, I know." You then responded to Mr. Lopez in a challenging manner asking him, "You know what?" There was no reason

for you to respond to Mr. Lopez at all, let alone in this confrontational and challenging manner. Mr. Lopez, apparently attempting to deescalate the situation, replied in an even softer voice, "yes, yes." Officer Mazariegos continued to ask Mr. Lopez for his identification. Mr. Lopez stood again and continued to try to explain that he needed to stand up to retrieve his wallet from his pocket. (**Exhibit 5**.)

To be clear, Mr. Lopez gave no indication that he may try to flee the area or assault you or Officer Mazariegos. Although he was standing up instead of sitting, he continuously tried to explain why he needed to stand up. You did not provide Mr. Lopez the same courtesy of an explanation. Instead of communicating with Mr. Lopez about why Officer Mazariegos wanted him to sit down, you and Officer Mazariegos approached Mr. Lopez and grabbed him in an attempt to put him into handcuffs. Mr. Lopez immediately began to pull his arms away from you. At no point while you were approaching Mr. Lopez or trying to place him in handcuffs did you notify Mr. Lopez that he was being placed under arrest. Instead, you tripped Mr. Lopez which caused him to fall onto the pavement. Still, you did not attempt to communicate with Mr. Lopez that he was under arrest or explain to him why you needed his compliance. Mr. Lopez grabbed onto the upper left portion of your outer vest carrier with his right hand and in response you punched Mr. Lopez in the nose, injuring Mr. Lopez and causing him to bleed profusely. You then used your body weight to overcome Mr. Lopez, shove his face toward the pavement, and place him under arrest. (**Exhibit 5**.)

Officer Mazariegos is a new police officer and in her probationary period. However, you are a seasoned police officer with more than five (5) years' experience. You are also a Field Training Officer for the department. You were more than capable of providing Officer Mazariegos with appropriate and adequate assistance. Instead of providing Officer Mazariegos with assistance, you escalated the situation and created further issues with the subjects, specifically Mr. Lopez. At no point during your involvement in this incident did you attempt to develop a rapport with Mr. Lopez or try to gain his voluntary compliance with the directives that you and Officer Mazariegos were giving. Throughout your encounter with Mr. Lopez, you approached him in a confrontational and challenging manner which further escalated the situation and resulted in you using force against Mr. Lopez. Your conduct toward Mr. Lopez was discourteous and disrespectful. Even more concerning is that you defended your conduct during your interview in the internal affairs investigation and asserted that if confronted with the same situation you would not do anything differently.[1] (**Exhibit 5**.)

---

[1] The below quote is from your interview with the internal affairs investigator:

    *Paul Henry:*   *Is there anything you would do differently today if you could do it over?*

    *Brandon Nail: No.*

(**Exhibit 6**.)

**B.    Your conduct on July 27, 2022 resulted in widespread community outrage toward the City and SRPD.**

On August 26, 2022, the Marin County District's Attorney's Office dismissed the criminal case against Mr. Lopez after reviewing the footage of your conduct captured on your and Officer Mazariegos's body worn cameras. The District Attorney's Office also released the footage, which then became a public record. (**Exhibits 7-8**.) On September 1, 2022, after reviewing the footage from the body worn cameras, ABC 7 ran the first story regarding the July 27, 2022 incident. The footage from the body worn cameras was aired on the news and included on the online news story. (**Exhibit 9**.) The following day the SRPD began receiving calls from local and national news outlets and community members demanding answers regarding your conduct. The City also received many public requests for all footage from the incident. As you know, the City has a legal obligation to provide such footage to the public upon request. Eventually, news stories about your conduct were published locally and across the country, including but not limited to the following articles:

- https://www.ktvu.com/news/san-rafael-police-officer-on-leave-after-bloody-takedown-of-man-with-beer-can (**Exhibit 10**.)

- https://www.cbsnews.com/sanfrancisco/news/san-rafael-police-arrest-violent-viral-video/ (**Exhibit 11**.)

- https://sfist.com/2022/09/08/another-scandal-for-san-rafael-police-this-time-for-beating-and-bloodying-someone-over-an-open-container/ (**Exhibit 12**.)

- https://pacificsun.com/san-rafael-police-officers-under-investigation/ (**Exhibit 13**.)

- https://www.telemundoareadelabahia.com/noticias/local/agresion-de-la-policia-hacia-un-hispano-causa-indignacion-en-san-rafael/2253888/ (**Exhibit 14**.)

- https://www.youtube.com/watch?v=HrWgzcCm17k (**Exhibit 15**.)

- https://abc7chicago.com/police-brutality-cases-san-rafael-ca-department/12189953/ ((**Exhibit 16**.)

- https://www.sfchronicle.com/bayarea/article/police-brutality-17471394.php (**Exhibit 17**.)

- https://www.kron4.com/news/bay-area/video-violent-arrest-under-investigation-in-san-rafael/ (**Exhibit 18**.)

- https://www.marinij.com/2023/01/30/san-rafael-hit-with-claim-over-bloody-police-arrest/ (**Exhibit 19**.)

- https://www.mercurynews.com/2022/10/03/san-rafael-police-reports-detail-bloody-arrest-in-canal/ (**Exhibit 20**.)
- https://patch.com/california/sanrafael/2-san-rafael-cops-placed-leave-amid-ongoing-investigation-report (**Exhibit 21**.)
- https://www.sportskeeda.com/pop-culture/watch-bodycam-footage-shows-san-rafael-police-officers-beating-man-beer-can (**Exhibit 22**.)
- https://pleasantonweekly.com/news/2022/09/11/da-investigating-violent-arrest-by-san-rafael-police-chief-spiller-concerned-by-incident (**Exhibit 23**.)
- https://www.independent.co.uk/news/world/americas/crime/san-rafael-police-california-video-b2161069.html (**Exhibit 24**.)

Almost immediately, the community began to communicate their outrage regarding your conduct. Over the following month, the SRPD received at least 85 angry voice messages regarding the incident. The community was so offended by your conduct that violent threats were made against various SRPD employees who responded to the calls, the Chief was accused of covering up your actions, and the SRPD was labeled as corrupt. Employees feared for the safety of themselves and their families as callers continued to call the SRPD regarding the anger they felt about your conduct and took it out on your colleagues who were not involved. As a result, employee morale has also been damaged due to your conduct.

On September 6, 2022, community members attended the City Council Meeting, filling the chamber beyond capacity, in order to provide public comment regarding your conduct. Individuals were given two (2) minutes to speak during the public comment period, which lasted for four (4) hours at this meeting. The community overwhelming expressed their anger, shame, sadness, and loss of trust in the SRPD as a result of your conduct. Since the September 6, 2022 meeting, the Council has continued to receive negative public comments concerning the incident and the impact it has had on the community during City Council meetings. (**Exhibit 25**.)

Also in September 2022, there were two formal protests in response to the July 27, 2022 incident, and a third protest on March 31, 2023. To be clear, your actions sparked outrage amongst the community that the City has never seen in recent history. Indeed, this is the first time in the City's history that there have been any protests regarding the actions of a specific member of the police department. Protestors marched from the Canal, where the incident occurred, to City Hall to demand action and give speeches about how they no longer felt safe. The community has clearly communicated its disappointment and distrust in the SRPD. As a result of the community's ongoing response to your conduct, Mr. Lopez recently came forward to give an interview to ABC 7 News regarding the incident, its impact on him, and his plans to sue the SRPD as a result of your actions. (**Exhibit 26**.)

Still, you have defended your actions and stated that you would do the same thing again if confronted with the same situation. This illustrates a disappointing lack of reflection about how your behavior has negatively impacted the community, SRPD, and the City of San Rafael.

///

### C. Conclusion.

In *Skelly v. State Personnel Board* (1975) 15 Cal. 3d 194, California Supreme Court stated: "In considering whether such abuse [regarding the severity of public employee penalty] occurred in the context of public employee discipline, we note that the overriding consideration in these cases is the extent to which the employee's conduct resulted in, or if repeated, is likely to result in harm to the public service .... Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence." (*Id.* at pp. 218-219.)

On July 27, 2022, you were requested to cover Officer Mazariegos. However, you failed to appropriately provide her cover and escalated the situation in a manner contrary to SRPD policy. Your communications with Mr. Lopez were not only discourteous and disrespectful, but violated policy against using profanity. You have said that you thought by escalating the situation, the situation would deescalate. This is contrary to training you have received and was not a reasonable approach. Your actions escalated the situation, which ultimately created a dangerous situation where you were involved in a physical altercation with Mr. Lopez, injuring him and causing him to bleed profusely.

Your failure to employ de-escalation techniques, coupled with your discourteous and disrespectful treatment of Mr. Lopez, precipitated the physical confrontation with Mr. Lopez. Such conduct is unbecoming of a member of the SRPD and directly led to bringing discredit to the department and notable negative impacts to the organization and its members. Your conduct was recorded on your body worn camera, which created a public record of the incident. The body worn camera footage was subsequently released to the public pursuant to a California Public Records Request. A local news outlet quickly aired the footage on local television and included the footage on their webpage. The footage continued to be shared and media attention to your conduct grew. As a result, the San Rafael community began to communicate their anger and distrust toward the SRPD though telephone calls, attendance at City Council Meetings, and at least three protests. Your colleagues have been left to respond to media and community members comments and have directly had to endure the anger felt and communicated regarding your actions.

Returning you to duty would compromise your safety as well as other officers in the department. Your lack of self-reflection and willingness to learn from your mistakes leaves me with little choice other than to terminate your employment. Therefore, based on the above facts, you are being issued this Notice of Intent to Terminate for various violations of City and SRPD rules, regulations, and policy; negligence of duty;

CONFIDENTIAL                          COSR (Lopez) 000317

unacceptable behavior toward the general public, fellow employees, and officers of the City; and other acts inimical to the public service as outlined above.

## IV. RIGHT TO RESPOND

Before the imposition of discipline, you have the right to respond to the Notice of Intent to Terminate either in person (i.e., *Skelly* meeting) or in writing, or both, **within seven (7) working days from the date you receive this Notice of Intent to Terminate**. Your response will be considered before any final decision on the proposed discipline is made.

If you choose to respond in writing, you must submit your written response to me by no later than 5:00 p.m. on Monday, May 22nd, in person or by email at **661@srpd.org**. If you choose to respond in person, you must advise me by contacting me at (415) 485-3470 or email at **661@srpd.org** no later than 5:00 p.m. on Monday, May 22nd to schedule a time for a *Skelly* meeting. Although the *Skelly* meeting is not designed to be a formal evidentiary hearing, legal counsel or another individual of your choice may represent you.

**Your failure to provide a written response or request a *Skelly* meeting within the specified period required above will constitute a waiver of your right to respond and the proposed discipline will become effective as outlined in this Notice of Intent to Terminate.**

Sincerely,

*/s/ D.C. Spiller*
D.C. Spiller
Police Chief


C:   Marissa Sanchez, Interim Human Resources Director
     Personnel File

_____        MAY 11 2023_____
Signature of Employee                  Date and Time Received

___Roy LEON_____          _____
Served By (print name)                 Signature of Server

4870-4395-0431 v3

The following attached documents were relied on in making this recommendation:

1. Memorandum of Understanding between the City and San Rafael Police Association July 1, 2021- June 30, 2024: Article 7.2 Termination of Employment
2. SRPD Policy Manual: Section 320.5 (Causes For Discipline)
3. City's Personnel Rules & Regulation: Rule 12 (Disciplinary Action)
4. Job Description: Police Officer
5. Internal Affairs Investigation Report Regarding Officer Nail's July 27, 2022 Conduct
6. Transcript of Internal Affairs Investigator's Interview with Nail
7. Officer Nail's Body Worn Camera Footage (July 27, 2022)
8. Officer Mazariegos's Body Worn Camera Footage (July 27, 2022)
9. Link to ABC 7 News Story: EXCLUSIVE: San Rafael police officers under investigation after bloody takedown
10. Link to Fox 2 KTVU News Story: San Rafael police officers on leave after bloody takedown of man with beer can
11. Link to CBS Bay Area News Story: DA probing violent arrest of San Rafael day laborer caught on viral video
12. Link to SFiST News Story: Another Scandal for San Rafael Police, This Time for Beating and Bloodying Someone Over an Open Container
13. Link to Pacific Sun News Story: San Rafael police officers under fire and investigation for use of force
14. Link to Telemundo Area De La Bahia News Story: Agresión de la policía hacia un hispano causa indignación en San Rafael
15. Link to ABC 7 Youtube: North Bay police excessive force investigation still ongoing after 7 months; I-Team looks into why
16. Link to ABC 7 Chicago News Story: California police officers under investigation after bloody takedown
17. Link to San Francisco Chronicle News Story: Video of police beating reignites outrage in Bay Area's most segregated neighborhood
18. Link to KRON4 News Story: VIDEO: Violent arrest under investigation in San Rafael
19. Link to Marin Independent Journal News Story: San Rafael hit with claim over bloody police arrest
20. Link to The Mercury News News Story: San Rafael police reports detail bloody arrest that provoked days of protests
21. Link to Patch News Story: 2 San Rafael Cops Placed On Leave Amid Ongoing Investigation: Report
22. Link to Sports Keeda (SK Pop) News Story: WATCH: Bodycam footage shows San Rafael police officers beating man with beer can
23. Link to Pleasanton Weekly News Story: DA investigating violent arrest by San Rafael police; Chief Spiller 'concerned' by incident
24. Link to Independent News Story: Police officers put on leave after brutal beating and arrest of gardener who was drinking a beer

25. Recording of September 6, 2022 City Council Meeting: https://www.cityofsanrafael.org/meetings/city-council-september-6-2022-tuesday/#/tab-video
26. Link to ABC 7 News Story: EXCLUSIVE: Gardener reveals identity, speaks out on clash with San Rafael police over beer