# EXHIBIT H

**JULIO JIMENEZ LOPEZ and YESENIA CRUZ vs CITY OF SAN RAFAEL, ET AL.**
Scott Eberle - Vol. 1 on 08/16/2024

1              UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3

4   JULIO JIMENEZ LOPEZ and YESENIA  )
    CRUZ,                            )
5                                    )
            Plaintiffs,        )
6                        ) Case No. 3:23-cv-03652-VC
       vs.               )
7                        ) Volume I
    CITY OF SAN RAFAEL; SAN RAFAEL  )
8   POLICE DEPARTMENT; DAISY        )
    MAZARIEGOS; BRANDON NAIL; and   )
9   DOES 1-50, inclusive,           )
                        ) Pages 1 to 97
10           Defendants.        )
    _____)

11

12

13

14

15   REMOTE VIDEOCONFERENCED DEPOSITION OF PMK SAN RAFAEL POLICE

16           DEPARTMENT, SCOTT EBERLE

17             San Rafael, California

18             Friday, August 16, 2024

19

20

21

22  Reported by:
    ELIZABETH BORRELLI, CSR No. 7844, CCRR, CLR
23  JOB NO. 85935

24

25

**JULIO JIMENEZ LOPEZ and YESENIA CRUZ vs CITY OF SAN RAFAEL, ET AL.**
**Scott Eberle - Vol. 1 on 08/16/2024**

1

2

3

4

5

6

7

8       Remote Videoconferenced Deposition of PMK

9   SAN RAFAEL POLICE DEPARTMENT, SCOTT EBERLE,

10  Volume I, taken on behalf of the Plaintiffs, at

11  San Rafael, California, commencing at

12  10:09 a.m., Friday, August 16, 2024, before

13  Elizabeth Borrelli, a Certified Shorthand

14  Reporter in the State of California, License

15  No. 7844.

16                    * * *

17

18

19

20

21

22

23

24

25

**JULIO JIMENEZ LOPEZ and YESENIA CRUZ vs CITY OF SAN RAFAEL, ET AL.**
Scott Eberle - Vol. 1 on 08/16/2024

Page 9

1   parties to this case and whatever relevance they may

2   have as to who is who, I don't believe pertains to

3   this case, which we could obviously meet and confer

4   about later if you feel that there is some reason

5   you need to know the names of those officers.

6          So I know I just -- I just literally

7   produced them, you probably only received them

8   within the last 10 minutes.  I've offered to allow

9   you to take a break and look at it to see if you, in

10  fact, need some time to review it.  And obviously,

11  if you want to use them, I have no objection to your

12  using them as a document in this as an exhibit and

13  as part of your examination.

14          So that's the record I would like to make

15  and the documents are in your possession.

16          MR. LEVINE:  Thank you, Dale.

17  BY MR. LEVINE:

18      Q.  All right.  Lieutenant, is there any

19  reason why you cannot give your best testimony

20  today?

21      A.  No.

22      Q.  Do you understand that you have been

23  designated by the City of San Rafael as the person

24  most knowledgeable regarding a set of issues?

25      A.  Yes.

**JULIO JIMENEZ LOPEZ and YESENIA CRUZ vs CITY OF SAN RAFAEL, ET AL.**
**Scott Eberle - Vol. 1 on 08/16/2024**

1  for those policies that you have up there?

2      Q.   Well --

3      A.   Summarize it more than that?

4      Q.   I'll just -- I'll just stop for one moment

5  here.

6          This is the -- the second page of the same

7  document we were just looking at.  And do you see

8  where at approximately lines 8 through 10 it lists

9  your name, as well as Robert Cleland's name on my

10  screen here?

11      A.   Yes.

12      Q.   Okay.  And so is it your understanding

13  that you have been, at least so far, designated as

14  one of two persons most knowledgeable in this case

15  for --

16      A.   Yes, absolutely.

17      Q.   -- the City of San Rafael?

18      A.   Yes.

19      Q.   Okay.  And then do you see at the very

20  bottom of this page starting at lines 24 where it

21  says, "The depositions will be of the persons most

22  knowledgeable at the City attorney and SRPD," which

23  I will represent stands for the Rafael -- San Rafael

24  Police Department, "concerning the following subject

25  matters."

**JULIO JIMENEZ LOPEZ and YESENIA CRUZ vs CITY OF SAN RAFAEL, ET AL.**
Scott Eberle - Vol. 1 on 08/16/2024

Page 12

1          And then it continues on to that list I

2    showed -- showed you earlier on the next page?

3        A.  Yes, yes.

4        Q.  All right.  So with that in mind, I was

5    just wondering if you would be able to generally

6    provide what your understanding is as to the scope

7    of your designation as person most knowledgeable for

8    the City?  I don't want to ask you questions that

9    are outside of your purview.  I understand that

10   another person most knowledgeable has been

11   designated as well.  I'm just trying to suss out a

12   little bit which questions I should save for

13   Sergeant Cleland.

14       A.  Yes.  Okay, yeah, I apologize.  The

15   written policies would be I would be the one person

16   most knowledgeable for regarding professionalism,

17   regarding fear and anger management.

18       Q.  Would it be helpful for me to share

19   that -- my screen with --

20       A.  I have it now.

21       Q.  Okay.

22       A.  This is -- I looked at the first page.  I

23   apologize.

24       Q.  No, that's all right.

25       A.  I'm just looking.  But I am prepared to

Page 21

1         And the same goes to regarding fear and

2   anger and management, regarding officer training,

3   the same.  I've done my best to, you know, research

4   fear and anger management a little bit and I'll try

5   to answer that as best I can.

6         Professionalism, ethics, that one is

7   narrowed down a little bit more to policy three,

8   standards and conduct --

9         MR. ALLEN:  Scott, can I -- can I

10  interrupt you a second.  What Ben is trying to do is

11  do it by numerical.  So you're --

12        THE WITNESS:  Okay.

13        MR. ALLEN:  -- jumping ahead and reading

14  it, so why don't we let Ben do it by question and

15  answer and then you could --

16        THE WITNESS:  Yeah.

17        MR. ALLEN:  -- unless he wants to let you

18  go seriatim, which is fine by me as well in a

19  narrative, but I would identify each category as

20  you're going down through it by the number.

21        THE WITNESS:  Okay.

22  BY MR. LEVINE:

23     Q.  How about this.  Let's go category by

24  category and if there is a particular category that

25  you believe you are not designated as person most

**JULIO JIMENEZ LOPEZ and YESENIA CRUZ vs CITY OF SAN RAFAEL, ET AL.**
Scott Eberle - Vol. 1 on 08/16/2024

Page 22

1   knowledgeable regarding any aspect of the category,

2   could you please let me know?  And I'll start but

3   I'm just wondering if that approach works for you,

4   Lieutenant?

5        A.  Yes.

6        Q.  All right.  So beginning with number 2

7   here, that includes the phrase "regarding

8   communication with members of the public."

9            Would you please identify for me whether

10   you believe you have not been designated as person

11   most knowledgeable regarding any aspect of this

12   category?

13        A.  Yeah, I apologize.  Yeah, I -- I did not

14   do a lot of research on that.  I am the PIO so I

15   think that I would be able to be, you know,

16   designated as the person that could answer those

17   questions.

18        Q.  Could you -- and just for the record, what

19   does PIO stand for?

20        A.  Public information officer.

21        Q.  Okay.  All right.  And then how about

22   number 3, which includes the phrase "PR and angry

23   management"?

24        A.  Yes, that would be me.

25        Q.  How about number 4, which includes the

**JULIO JIMENEZ LOPEZ and YESENIA CRUZ vs CITY OF SAN RAFAEL, ET AL.**
Scott Eberle - Vol. 1 on 08/16/2024

Page 23

1    phrase "Professionalism and ethics"?

2        A.   Yes, that would be me.

3        Q.   And number 5, which includes the phrase

4    "community policing"?

5        A.   Yes, that would be me.

6        Q.   Number 6, which includes the phrase "laws

7    of arrest"?

8        A.   Yes, that would be me.

9        Q.   Number 7, which includes the phrase

10   "investigative report writing"?

11       A.   Yes, that would be me.

12       Q.   Number 8, which includes the phrase "use

13   of force"?

14       A.   No, that's not me.

15       Q.   Okay.  Thank you.  One moment.

16           Number 9, which includes the phrase

17   "patrol techniques"?

18       A.   That is not me.

19       Q.   Number 10, which includes the phrase

20   "arrest and control techniques"?

21       A.   That is not me.

22       Q.   Number 11, which includes the phrase

23   "control holds"?

24       A.   That is not me.

25       Q.   Number 12, which includes the phrase

**JULIO JIMENEZ LOPEZ and YESENIA CRUZ vs CITY OF SAN RAFAEL, ET AL.**
Scott Eberle - Vol. 1 on 08/16/2024

Page 28

1  again just so everyone has it as a reference.  One

2  moment.

3        Are you able to see my screen?

4    A.  Yes.

5    Q.  And I think one of the categories that you

6  had expressed uncertainty about before was number 17

7  on this list, which includes the phrase

8  "administrative/internal/personnel review."

9        Do you see --

10    A.  I am the PMK for that.

11    Q.  Okay.  Thank you.

12        And then another one was number 20 at the

13  bottom of this page, which includes the phrase

14  "changes made to City policies, customs, training,

15  or practices."

16    A.  I am the PMK for that.

17    Q.  Okay.  Thank you.

18        And then moving on to the next page, I

19  think there was some off-the-record discussion that

20  we had regarding categories number 22 and 23.  But

21  are you able to offer any clarification at this time

22  as to what your understanding is regarding whether

23  or not you've been designated as person most

24  knowledgeable regarding --

25    A.  Yes.

**JULIO JIMENEZ LOPEZ and YESENIA CRUZ vs CITY OF SAN RAFAEL, ET AL.**
Scott Eberle - Vol. 1 on 08/16/2024

Page 29

1    Q.   -- either of these categories?

2    A.  Yes.

3         (Reporter requests clarification.)

4         MR. LEVINE:  Regarding either of these

5    categories.

6         THE WITNESS:  Yes.  For both 22 and 23 I

7    am the PMK.

8    BY MR. LEVINE:

9    Q.  Thank you.

10    A.  You're welcome.

11    Q.   Other than those categories that we've

12    just gone over since we came back on the record a

13    couple of minutes ago, are there any other

14    clarifications you feel it's important to offer

15    regarding any of the other items we previously

16    discussed and regarding the scope of your

17    designation as person most knowledgeable as you

18    understand it?

19    A.  I don't think so.

20    Q.  All right.  Thank you.

21        And I'll just note for the record that I

22    can introduce, just to clarify things, that Notice

23    of Deposition as Exhibit No. 1.

24        (Whereupon Exhibit 1 was marked for

25        identification.)

**JULIO JIMENEZ LOPEZ and YESENIA CRUZ vs CITY OF SAN RAFAEL, ET AL.**
**Scott Eberle - Vol. 1 on 08/16/2024**

Page 37

1      Q.   What policies govern communication with

2   members of the public by police officers at the San

3   Rafael Police Department?

4      A.   Well, there are -- there are many in

5   regards to written and verbal communication.  If you

6   had a policy specific that you were looking at, I'd

7   be happy to verify that for you, but I do not know

8   the exact number policy.

9      Q.   That's all right.

10         Is there any policy of the San Rafael

11   Police Department that addresses using swear words

12   at members of the public by police officers?

13      A.   Yes.

14      Q.   Do you happen to know which policy that

15   is?

16      A.   Yes, that is in -- I mean, I could refresh

17   my memory real quick.  It's in the standards and

18   conduct policy section.  I -- I believe it's in the

19   300s.

20      Q.   Do you know if any use of swear words by a

21   police officer while on duty is a violation of that

22   policy?

23      A.   There is some language that it is -- it --

24   we shall stay away from and -- and refrain from

25   using swear words.

**JULIO JIMENEZ LOPEZ and YESENIA CRUZ vs CITY OF SAN RAFAEL, ET AL.**
Scott Eberle - Vol. 1 on 08/16/2024

Page 38

1      Q.  Do you know if there's any distinction

2   made between officers -- within that policy between

3   officers using swear words towards members of the

4   public as opposed to, for example, in conversation

5   between themselves and other officers?

6      A.  There are -- there is language about

7   internal probably harassment.  There's also some

8   City policies about harassment internally.  But

9   there is specific the mention of obscene language

10   shall not be used in pub- -- for public

11   communication.

12      Q.  And in your understanding of the policy,

13   are swear words considered to qualify as obscene

14   language?

15      A.  Yes, they can be.

16      Q.  And I apologize for my language here, but

17   is the word "fuck," F-U-C-K, considered obscene

18   language within the meaning of that policy?

19      A.  I would agree with that statement.

20      Q.  Do you know if there is any San Rafael

21   Police Department policy that authorizes officers to

22   use swear words directed at members of the public

23   under certain circumstances?

24      A.  No, I'm not aware of any such policy.

25      Q.  So is it your understanding that under san

**JULIO JIMENEZ LOPEZ and YESENIA CRUZ vs CITY OF SAN RAFAEL, ET AL.**
**Scott Eberle - Vol. 1 on 08/16/2024**

Page 39

1    Rafael Police Department policy, there -- it is a

2    violation of policy under any circumstance for an

3    officer to ever use a swear word directed at a

4    member of the public?

5        A.  Yes, sir.

6        Q.  Do you know if that rule is addressed in

7    any training that is provided to San Rafael Police

8    Department officers?

9        A.  Yes.  That is mentioned in training, yes.

10        Q.  Do you know if the fact that you just

11    mentioned, that there are absolutely no

12    circumstances of any kind when officers are allowed

13    under policy to direct swear words at members of the

14    public, if that broad nature of the policy is

15    communicated to officers in their training?

16        A.  Would you mind if I just refreshed my

17    memory and took a look at policy 320.5.9 conduct

18    really quick?

19        Q.  I don't.  And, in fact, I can share it on

20    my screen if you'll give me a moment.

21        Can you see my screen?

22        A.  Yes.  Let me -- that's perfect.  Thank

23    you.  Just trying to (indiscernible) causes for

24    discipline...

25        (Reporter requests clarification.)

1   way.  I think you testified that there is a general

2   rule against swearing at members of the public by

3   police officers.  Is that generally correct?

4       A.   Correct.

5       Q.   What I'm asking is, if you know, are

6   officers trained that there are any exceptions to

7   that that might apply based on whether the person

8   they are addressing is suspected of a crime or being

9   detained or under arrest?

10      A.   No, I do not know of any training that

11  would cover that.

12      Q.   Okay.  And how about any exceptions that

13  might apply to that general rule when force is being

14  used by the officer against the individual that

15  they're addressing?

16      A.   I don't know if I'm going to be the best

17  person, that might be Sergeant Cleland, to talk more

18  specific about the training aspect of it.  So sorry,

19  that is -- that's my answer.

20      Q.   Are you -- well, how about the policy,

21  then?

22      A.   Yeah.

23      Q.   Are you aware of any policy exceptions to

24  the general policy against swearing at members of

25  the public that might apply in the context of using

**JULIO JIMENEZ LOPEZ and YESENIA CRUZ vs CITY OF SAN RAFAEL, ET AL.**
Scott Eberle - Vol. 1 on 08/16/2024

Page 44

1  force against that individual?

2      A.  I am not aware of any policy exceptions.

3      Q.   In your understanding of the policy, does

4  the policy against swearing still apply in

5  circumstances where an officer is attempting to gain

6  a suspect's compliance?

7      A.  Yes.  Is -- in terms of policy, correct,

8  yes.

9      Q.   And so just to clarify, I think you have

10  not identified any exceptions to this general rule

11  against swearing at members of the public.  Has

12  that -- is that your understanding of your testimony

13  so far today?

14      A.  Yes.

15      Q.   All right.  And so based on the absence of

16  any exceptions that you have been able to identify,

17  is it your understanding that any use of profanity

18  or obscenity or swear words by a police officer or

19  members of the public would be a violation of San

20  Rafael Police Department policy?

21      A.  Yes, sir.

22      Q.   And that would include circumstances when

23  an officer is an attempting to gain compliance from

24  an individual?

25      A.  Yes, sir.

**JULIO JIMENEZ LOPEZ and YESENIA CRUZ vs CITY OF SAN RAFAEL, ET AL.**
**Scott Eberle - Vol. 1 on 08/16/2024**

Page 60

1    A.  Yes.

2    Q.  And I think you mentioned that you are not

3  aware of any exceptions to the policy against

4  officers using profanity toward members of the

5  public.

6    A.  Yes.

7    Q.  Is that --

8    A.  Sorry, yes.

9    Q.  In your understanding, is one of the

10  reasons for that policy to avoid unnecessary

11  escalations with members of the public?

12    A.  Yes.

13    Q.  In other words, is it your understanding

14  that that policy recognizes that officers using

15  profanity toward members of the public has a

16  potential to escalate situations and increase

17  tensions unnecessarily?

18    A.  Yes.

19    Q.  And is one of the reasons for the

20  department's interest in avoiding unnecessary

21  escalations with members of the public to reduce or

22  avoid avoidable injuries to members of the public?

23    A.  Yes.

24    Q.  We spoke a bit before about the -- this

25  policy in general, but do you know what, if

**JULIO JIMENEZ LOPEZ and YESENIA CRUZ vs CITY OF SAN RAFAEL, ET AL.**
Scott Eberle - Vol. 1 on 08/16/2024

Page 65

1      Q.  All right.  And is it your understanding

2   that intentional escalation through speech of a

3   situation in order to gain voluntary compliance from

4   a subject would be contrary to department policies

5   regarding de-escalation?

6      A.  Yes, but let me clarify as based on my

7   past experiences.  I have seen the use of

8   obscenities and profanities while not condone --

9   strike the point into suspects and them being able

10  to calm down.  So while it is not in policy, and I'm

11  not condoning it for the record, I have seen

12  officers on the street use profanity and has -- and

13  it has resulted in subjects becoming compliant.

14     Q.  So those examples that you have seen where

15  that has occurred, did those constitute violations

16  of San Rafael policy?

17     A.  It sounds like it, yes.

18     Q.  Are you aware of whether any discipline

19  was imposed on those officers to for any normally

20  policy in any of those situations that you have

21  observed?

22     A.  I am not.

23     Q.  Are you aware of any additional -- of

24  whether any additional training or retraining was

25  provided to those officers based on those policy

**JULIO JIMENEZ LOPEZ and YESENIA CRUZ vs CITY OF SAN RAFAEL, ET AL.**
Scott Eberle - Vol. 1 on 08/16/2024

Page 66

1    violations that you've just identified?

2        A.  I am not.

3        Q.  Are you aware of any -- of whether any

4    kind of admonishment or other kind of reprimand of

5    any kind was issued or imposed on any of those

6    officers for those policy violations that you've

7    just identified?

8        A.  I am not.

9        Q.  Do you have an estimation of approximately

10   how many occasions you've witnessed that type of

11   circumstance you've just described occur?

12       A.  I don't.

13       Q.  Do you -- are you able to say whether it's

14   more or less than five?

15       A.  It's more or less than five for sure.

16   Either way, I don't know.  I apologize.  I'm sorry.

17       Q.  Okay.  Did you ever report any of those

18   situations to a supervisor given that you testified

19   today that you understand them to constitute a

20   policy violation?

21       A.  I don't recall.

22       Q.  Do you have any idea why you would not

23   have reported those to a supervisor?

24       A.  No.

25       Q.  Do you believe that officers in the San

**JULIO JIMENEZ LOPEZ and YESENIA CRUZ vs CITY OF SAN RAFAEL, ET AL.**
Scott Eberle - Vol. 1 on 08/16/2024

Page 67

1  Rafael Police Department have an understanding that

2  they are entitled to violate the policy against

3  using profanity without consequence in light of

4  those examples you've referred to?

5      A.  If I'm understanding, is there -- is there

6  something out there that -- that let's officers

7  swear in certain circumstances -- certain

8  circumstances, excuse me, no, I am not.  That

9  officers are immune from the policy, if that's your

10  question, no.

11      Q.  Right.  Well, it sounds like there is a

12  written policy prohibiting the use of profanity that

13  we've already talked about, correct?

14      A.  Yes.

15      Q.  And it also sounds like there have been it

16  sounds like multiple circumstances that you have

17  personally observed where it was used in an effort

18  to gain compliance from a subject then that you --

19  or that you've observed as well.  Is that correct

20  also?

21      A.  Correct.

22      Q.  So I guess what I'm wondering is, is it

23  your impression, based on those experience, that

24  notwithstanding the policy against using profanity,

25  that officers of the San Rafael Police Department

**JULIO JIMENEZ LOPEZ and YESENIA CRUZ vs CITY OF SAN RAFAEL, ET AL.**
Scott Eberle - Vol. 1 on 08/16/2024

Page 68

1  believe that it is permissible to use profanity

2  towards members of the public in order to gain

3  compliance based on the examples that you've

4  witnessed?

5      A.  No.  And like I just answered before,

6  officers should not feel that they are immune to the

7  policy.

8      Q.  If you cannot recall having reported any

9  of those instances personally, why do you believe

10  that officers should not feel that they are immune

11  from the policy?

12      A.  Because the policy is in place to --

13  policies and procedures of rules that have been

14  vetted by lawyers and our chief of police and those

15  are the rules that we need to adhere to.  And that

16  is very much understood in the profession of

17  policing.  That's -- we need to adhere to our

18  policies.

19      Q.  But you cannot recall whether you have

20  reported violations of those policies in any of

21  those instances that you've observed, correct?

22      A.  Over my 24 years of, you know, service,

23  no, I can't.  I can tell you that I have been behind

24  a desk, you know, for the past, you know -- long

25  time.  It's been a while since I've been out on the

**JULIO JIMENEZ LOPEZ and YESENIA CRUZ vs CITY OF SAN RAFAEL, ET AL.**
Scott Eberle - Vol. 1 on 08/16/2024

Page 69

1  street.  So that is, again, probably the result of

2  my old age and my recollection of when and the

3  specific circumstances out on the street.

4      Q.   Are you aware of any other officers

5  besides yourself reporting those kinds of instances

6  of other officers using bad language in an effort to

7  gain compliance from suspect -- from individuals?

8  Excuse me.

9      A.   Was your question other officers failing

10  to report other officers using the language or just

11  in general, other officers using foul language?

12  Because I can tell you, in my 24 years, I've --

13  officers have used bad language, yes.

14      Q.   I was wondering whether you are aware of

15  whether any officers from your department have

16  reported the use --

17      A.   Oh.

18      Q.   -- of profane language by their

19  colleagues?

20      A.   I do not know.

21      Q.   You've testified that officers from the

22  San Rafael Police Department are expected to

23  understand that they are not immune from or to the

24  department's policies, correct?

25      A.   Correct.

**JULIO JIMENEZ LOPEZ and YESENIA CRUZ vs CITY OF SAN RAFAEL, ET AL.**
Scott Eberle - Vol. 1 on 08/16/2024

Page 70

1       Q.   Given that you've testified that you are

2    not aware of any instances in which use of profane

3    language has been reported, use the profane language

4    by officers has been reported, how is it that

5    officers from the San Rafael Police Department are

6    made aware of or trained that they are not immune

7    from the -- this particular policy against using

8    profanity?

9       A.   That as great question, Mr. Levine.  And

10   we subscribe to Lexipol.  And allow me for a second.

11   We have what's called daily training bulletins that

12   come out monthly and that every policy in our book

13   needs to be acknowledged.  So every officer that

14   hits the street not only needs to acknowledge it, it

15   is tracked by me, I can tell you people are in

16   compliance, and then there are daily training

17   bulletins that come out, 15 a month.  I can't say

18   that, you know, every one is focused on that because

19   it does encompass the entire policy manual, but

20   there have been circumstances where the daily

21   training bulletins covers the use of language.

22       Q.   As someone who has witnessed multiple San

23   Rafael Police Department officers using profanity to

24   gain compliance from individuals in violation of the

25   department policy, are you aware of whether any of

**JULIO JIMENEZ LOPEZ and YESENIA CRUZ vs CITY OF SAN RAFAEL, ET AL.**
Scott Eberle - Vol. 1 on 08/16/2024

Page 71

1   those officers were ever disciplined in any manner

2   for that?

3       A.   No, I am not, not that I can recall.

4       Q.   You've testified that there is a policy on

5   avoiding profanity and that there is some formal

6   training that is provided to officers on avoiding

7   profanity and that you have on multiple occasions

8   witnessed officers use profanity apparently in

9   violation of that policy and in violation of that

10  training.

11          Is that generally correct so far, what I

12  just said?

13      A.   Yeah, I don't want to -- I want to make

14  sure that we're clear and it's not -- you're not

15  quantifying it because I don't know.  I mean, it's

16  around five, maybe a little more, a little less, but

17  yes, I have seen, heard officers use profanity.

18  It's pretty common in today's day and age.  It's all

19  over the TV, media, and everything.  So I have seen

20  it and, yes, it is a violation of policy.  And if

21  people were in trouble, I do not know.

22      Q.   As a lieutenant -- as a lieutenant leader

23  within the San Rafael Police Department with many

24  years of experience there, do you recognize that

25  there can sometimes be tension or differences