DALE L. ALLEN. JR., State Bar No. 145279
dallen@aghwlaw.com
KEVIN P. ALLEN, State Bar No. 252290
kallen@aghwlaw.com
LEORA R. RAGONES, State Bar No. 215423
lragones@aghwlaw.com
ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, CA 94104
Telephone:    (415) 697-2000
Facsimile:    (415) 813-2045

Attorneys for Defendants
CITY OF SAN RAFAEL and SAN RAFAEL
POLICE DEPARTMENT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JULIO JIMENEZ LOPEZ and YESENIA CRUZ CRUZ,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN RAFAEL; SAN RAFAEL POLICE DEPARTMENT; DAISY MAZARIEGOS; BRANDON NAIL; and DOES 1-50, inclusive<br>Defendants. | Case No. 3:23-cv-03652-VC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION AS TO THE THIRD THROUGH SIXTH (*MONELL*) CAUSES OF ACTIONS (F.R.C.P. 56)**<br><br>Hon. Vince Chhabria<br><br>Date:    December 12, 2024<br>Time:    10:00 a.m.<br>Ctrm:    4, 17th Floor<br><br>Trial:   None Set |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1
II. EVIDENTIARY OBJECTIONS TO PLAINTIFF'S EVIDENCE................................. 1
III. UNDISPUTED FACTS ..................................................................................................... 2
IV. LEGAL ARGUMENT ...................................................................................................... 5
    A.    Sixth Cause of Action: No Ratification ............................................................... 5
        1.    City Mets its Burden of Proof ................................................................. 5
        2.    There are No Triable Issues of Fact to Find Ratification......................... 9
    B.    Third Cause of Action: No Triable issues of fact as to Unwritten Policy, Custom and Practice of Unconstitutional Acts of the City or S.R.P.D.............. 11
    C.    Fifth Cause of Action: No Triable Issues of Fact the City or SRPD Failed to Train Officers ................................................................................................ 12
IV. CONCLUSION ................................................................................................................ 13

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

# TABLE OF AUTHORITIES

Page

**U.S. Supreme Court**

*City of St. Louis v. Praprotnik*
 485 U.S. 112 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) .................................................................. 8

*Monell v. Dept. of Social Service of City of New York*
 436 U.S. 658 (1978) ............................................................................................... 6, 7, 8, 9, 10

**Ninth Circuit Court of Appeals**

*Christie v. Iopa*
 176 F.3d 1231 (9th Cir. 1999) ............................................................................................. 6, 8

*Fuller v. City of Oakland*
 47 F.3d 1522 (9th Cir.1995) ..................................................................................................... 6

*Gillette v. Delmore*
 979 F.2d 1342, 1348 (9th Cir. 1992) .................................................................................... 8, 9

*Loggervale v. County of Alameda*
 2024 WL 4234878, (2024) ........................................................................................................ 7

*Trevino v. Gates*
 99 F.3d 911 (9th Cir. 1996) ...................................................................................................... 6

**Federal District Courts**

*Blair v. City of Pomona*
 223 F.3d 1074 (2000) ............................................................................................................. 11

*Cf. Kanae v. Hodson*
 294 F.Supp.2d 1179, 1191 (D. Haw. 2003) .............................................................................. 6

*Fortson v. City of Los Angeles*
 628 F. Supp 3d 946 (2022) .................................................................................................. 9, 10

*Gravelet-Blondin v. Shelton*
 728 F.3d 1086 (2013) ............................................................................................................ 6, 7

*Hammond v. County of Madera*
 859 F.2d 797 (1988) .................................................................................................................. 7

*Long v. County of Los Angeles*
 442 F.3d 2006 ............................................................................................................................ 6

*Lytel v. Carl*
 382 F.3d. 978 (2004) .............................................................................................................. 6, 7

# TABLE OF AUTHORITIES

<u>Page</u>

*Peck v. County of Orange*
    501 F. Supp. 3d 852 (2020) ............................................................................................. 10, 11

*Price v. Sery*
    513 F. 3d 962, 966 (2008) ................................................................................................... 6, 7

*Wallis v. Spencer*
    202 F.3d 1126 (2009) ............................................................................................................ 11

**Federal Statutes and Law**

42 U.S.C. § 1983 ............................................................................................................................ 6

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

## I. INTRODUCTION

The incident-related use-of-force lasts 30 seconds (*City Notice of Errata* ("City Errata) as to Ex. M [DKT. 69-12], at 3:14-3:44 on the runtime). Plaintiffs' interpretation of the video is an argument concerning Fourth Amendment lawfulness of the involved officers' use of force – not whether the City of San Rafael had customs or practices for Fourth Amendment excessive force. The latter issue is the subject of the instant motion.

## II. EVIDENTIARY OBJECTIONS TO PLAINTIFF'S EVIDENCE

Under Local Rule 7-3(c), "[a]ny evidentiary and procedural objections to the opposition must be contained within the reply brief or memorandum." Defendants make the following objections to the Opposition and/or its supporting materials.

| Objected-to Material | Basis for Objection |
|---|---|
| The conduct and attitudes of the officers reaction to the events at issue do not exist absent either a tacit or explicit understanding and practices within that department of tolerating and condoning, or even endorsing, the use of inappropriate and unnecessary force against members of the public. (Dkt. No. 73-15, Declaration of Roger Clark, at ¶ 12) | FRE 702 (improper expert opinion) Rule 702 of the Federal Rules of Evidence tasks a district judge with 'ensuring that an expert's testimony both rests on a reliable foundation and or data that is relevant to the task at hand.' " Mr. Clark's foundation is his experience to interpret a video of one incident and then draw a conclusion the SRPD tolerates, condones and endorses behavior without a supporting data or related incidents of SRPD. The testimony is speculation. |
| Through a combination of training and apparent tacit understandings about de-escalation practices, Officer Nail and Corporal Ocon incorrectly believed that it is an appropriate police tactic to intentionally | FRE 702 (improper expert opinion) Rule 702 of the Federal Rules of Evidence tasks a district judge with 'ensuring that an expert's testimony both rests on a reliable foundation and or data that is relevant |

| | |
|---|---|
| escalate a situation with an individual, through profanity,(in violation of SRPD policy) in an attempt to de-escalate the situation thereby avoid use of force. This indicates a failure of the SRPD to properly train officers on de-escalation.<br>(Dkt. No. 73-15 Declaration of Roger Clark, at ¶ 13) | to the task at hand.' " Mr. Clark's foundation is his experience to interpret a video of one incident and then draw a conclusion the SRPD tolerates, condones and endorses behavior without a supporting data or related incidents of SRPD. The testimony is speculation. |
| SRPD accepts and condones profanity, tacitly or otherwise by its officers toward the public as an inappropriate police practice.<br>(Dkt. No. 73-15, Declaration of Roger Clark, at ¶ 14) | FRE 702 (improper expert opinion) Rule 702 of the Federal Rules of Evidence tasks a district judge with 'ensuring that an expert's testimony both rests on a reliable foundation and or data that is relevant to the task at hand.' " Mr. Clark's foundation is his experience to interpret a video of one incident and then draw a conclusion the SRPD tolerates, condones and endorses behavior without a supporting data or related incidents of SRPD. The testimony is speculation. |

### III.   UNDISPUTED FACTS

Defendants seek summary judgment relief amidst a sea of undisputed facts.

It is undisputed Chief Spiller testified he considered the community reaction to the incident, and wanted to ensure objectivity and made a determination after conversations with the city attorney to use an outside investigator. It is undisputed that Chief Spiller consented to the City Attorney's retention of outside investigator Mr. Paul Henry. It is also undisputed Mr. Henry had never been employed in any capacity by the City before he was retained here to investigate whether policy violations had occurred in the detention and arrest of Mr. Lopez.  It is further

undisputed that Mr. Henry had the credentials to investigate whether policy violations occurred in Mr. Lopez's detention and arrest.

It is undisputed the two defendant officers' incident-related video was a key piece of evidence -- but not the only evidence -- in finding numerous San Rafael Police Department ("SRPD") policy violations in the subject incident and terminating the incident-involved officers' employment. It is also undisputed by the parties' retained experts that Mr. Henry did a comprehensive review of the case before making his determinations on policy violations or, in the case of Officer Nail, his determination that Nail's incident-related use of force was unfounded. Mr. Henry detailed his investigation and reasoning in his comprehensive report totaling 93 pages (Dkt 69-15.)

Chief Spiller approved of the findings of Mr. Henry. He approved them as to both the policy violations concerning Mr. Lopez's detention and the officers' incident-related conduct. Chief Spiller also approved Henry's conclusion that Ofc. Nail did not violate policy on his discrete use of force. As Chief Spiller testified:

> " Q. Would it be fair to say given your background, experience, and expertise in law enforcement you had certain impressions yourself about the incident even before you reached out to Mr. Henry?
> " A. Yes
> " Q. But you want it just to make sure for transparency purposes and objectivity, you want it to have an independent individual also look at it; If you were thinking?
> " A. Yes.
> "Q. And eventually, did Mr. Henry type of a report with his findings and recommendations?
> A. Yes, he did.
> Q. And that was sent to you?
> A. It was, yes.
> Q. Did you essentially agree with is findings and recommendations?
> A. Based on my review of his investigation, I found it to be thorough and detailed, and I found it to be reflective of the information and facts presented, and I concurred with his findings- or yeah determinations of the potential policy violations.

(*Spiller Testimony*, at 24:6-25:1, attached as Ex. "C" to Declaration of Dale L. Allen, Jr.). Spiller further testified:

> Q. From your perspective did you feel it was appropriate for Officer Nail to punch Mr. Lopez in the face?
> A. Based on my review of the independent investigation, Mr. Henry's work, and my

3

MSJ - REPLY
CASE # 3:23-CV-03652-VC

review of the video, it was determined that the punch or the strike or the distraction blow where Nail struck Mr. Lopez in the nose was not out of policy and was appropriate based on the circumstances presented, including Officer Nails state of mind.

(*Spiller Testimony*, at 42: 3-11, attached as Ex. "D" to Declaration of Dale L. Allen, Jr.). Spiller further testified:

> Q. Generally, just so I can understand the training and policy of your department, when is it appropriated to punch another person forcefully in the face based on your training or policy?
> A. So as you described it, it would be described or included in department training as a distraction blow. If an officer is trying to gain control of a suspect who is actively resisting or struggling to get a suspect or subject into handcuffs, and they are grabbing at the officer, or, you know forcefully pulling their hand and wrists away, in certain cases a distraction blow will result in an officers ability to gain control and compliance of the individual.
> As an example, a suspect is grabbing at an officer's belt or some piece of equipment, a distraction blow might often take the suspect's hands or distract the suspect to where they remove their hands or their intention to whatever they were focused on.
> So in a case like that, a distraction blow my be successful in terms of an officer gaining compliance or gain control of the suspect.
> Q. An in terms of distraction blows, are the officers trained to punch someone in the nose?
> A. Strike to the nose could be effective, and yes- I review our defensive tactics staff, arrest and control staff. I review their outlines and the content of their training material, and that's in some cases acceptable and appropriate based on the circumstances that an officer is confronted with.

(*Spiller testimony*, at 43:4-44:6 attached as Ex. "E" to Declaration of Dale L. Allen, Jr.)..

It is undisputed the training was approved by P.O.S.T.

It is undisputed Chief Spiller was SRPD's policymaker at the time of the incident. It is also undisputed Spiller reviewed the entirety of the investigation report and supporting documentation conducted by the investigator Mr. Paul Henry. It is further undisputed that the investigation report and supporting documentation were provided to in discovery, and that plaintiffs expert received and reviewed them.

There is no evidence Chief Spiller ignored evidence contrary to the investigation. Plaintiff's expert Mr. Roger Clark failed to identify a single piece of evidence from the Henry investigation Chief Spiller ignored facts before accepting Henry's finding that Nail's use-of-force was within policy.

Mr. Clark was retained by the Marin County District attorney's office and reviewed the material provided by the district attorney's office and prepared an opinion for the criminal

prosecution of Officer Nail. (*Clark testimony*, at 149: 2:17:4-44:6 attached as Ex. "F" to Declaration of Dale L. Allen, Jr.). The district attorney's file was produced in discovery to the plaintiffs. (Declaration of Dale L. Allen, Jr. Paragraph 3). The file included still frames showing Mr. Lopez grabbing the vest of Officer Nail. (*See bates stamp 3882-3923, a true and correct copy of the frames # 3882-3923 of Mazariegos video*) attached as Ex. "G" to Declaration of Dale L. Allen, Jr.). Mr. Clark did not see the grab of the vest of Officer Nail in preparing his opinion on use of force. (*Clark Deposition,* at 152:3-153:6), attached as Ex. "H" to Declaration of Dale L. Allen, Jr.)

It is undisputed profanity was used in the detention of Mr. Lopez, once by Ofc. Nail and by Officer Mazariegos. It is undisputed they violated policy on using profanity because it was part of the escalation of the incident. It is undisputed profanity had been heard by Lt. Eberle on more or less than five occasions in his 24 years with SRPD.

Mr. Clark goes so far as to contradict himself on the linkage of the profanity and escalation to the use of force. In his deposition he was asked:

Q. Do you believe that he reason for Officer Nail punching Mr. Lopez in the face derived from him saying sit the fuck down.

A. I already answered, I said no. I don't believe that.

(*Clark Deposition,* at 137:6-138:6, attached as Ex. "A" to Declaration of Dale L. Allen, Jr.)

## IV. **LEGAL ARGUMENT**

Plaintiff's Opposition argues that the City has not met its burden of showing there is no genuine issue of material fact on the sixth cause of action (ratification) and that triable issues of material fact exist as to the third, fifth, and sixth causes of action.[1] Plaintiff's arguments are unpersuasive, and Defendants' motion should be granted.

### A.    **Sixth Cause of Action: No Ratification**

#### 1.    City Mets its Burden of Proof

The City met its burden of proof to show undisputed facts the City did not ratify an

---

[1] The fourth cause of action has been dismissed.

unlawful act. Plaintiff's arguments are without merit.

Plaintiff argues that the City asserts an official ratification of use of force after the fact can never give rise to *Monell* liability. Not so. He misstates argument presented in the moving papers. Defendants' moving papers argued, in pertinent part:

> a municipality can sometimes be held liable under section 1983 for the conduct of a non-making official, (in this case arguably Mr. Henry, if a municipal policymaker, and if Chief Spiller, ratifies that conduct.) A fundamental principle of section 1983 municipal liability is that a city is only liable if its conduct was the cause in fact and proximate cause of the constitutional violation that the plaintiff suffered. *See, e.g.*, *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Thus, a policymaker's approval of a subordinate's continuing constitutional violation can make a municipality liable for the subordinate's violation. In that circumstance, the policymaker's ratification has in some sense "subjected, or cause[d] to be subjected," the plaintiff to the continuing constitutional harm. 42 U.S.C. § 1983; *see Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999); *see also id.* at 1240 (holding that city could be held liable where jury could conclude policymaker "affirmatively approved of [subordinate's] alleged ongoing constitutional violations" after learning of these violations); *Fuller v. City of Oakland*, 47 F.3d 1522, 1526 (9th Cir.1995). But a municipality cannot be held liable merely because one of its policymakers has condoned or approved of a city employee's completed, irreversible conduct; the after-the-fact approval cannot be either a cause in fact or proximate cause of the violation suffered by the plaintiff. *Cf. Kanae v. Hodson*, 294 F.Supp.2d 1179, 1191 (D. Haw. 2003)

(Dkt. No. 67, at 19:17-20:4)

Plaintiffs' ratification argument revolves around a series of cases. These cases are inapposite, for the reasons stated below.

*Gravelet-Blondin v. Shelton*, 728 F.3d 1086 (2013) concerned an outdated taser policy. The Chief's ratification of the finding the use of the taser was proper was not in accordance with law. In *Lytel v. Carl*, 382 F.3d. 978 (2004), for its part, involved substantial evidence produced in trial that an assistant school superintendent approved repeated acts of retaliation against the plaintiff despite numerous complaints of the retaliation, in not one, but two employment suits by plaintiff. *Price v. Sery*, 513 F. 3d 962, 966 (2008), a police shooting case, there was evidence no police officer had ever been successfully disciplined for shooting unarmed citizens, and plaintiff's expert provided a report that of the 30 police shootings over 20 years, at least 15 were not based on probable cause. The appellate court overturned the District Court's dismissal of the *Monell* claim on custom and practice, finding a disputed fact to the failure to investigate and discipline. In *Long v. County of Los Angeles*, 442 F.3d 2006, an ill man was jailed and despite the jail given notice of the ill health on admission, and failed numerous times to properly care for the inmate.

18 days after admission the inmate died. The court found a disputed fact existed on a failure to train cause of action under *Monell*. In *Hammond v. County of Madera*, 859 F.2d 797 (1988) a County Board of Supervisors was put on notice in 1969 that certain roadways could not be built on Native American land in the county. In 1985 a different Board of Supervisors approved road building on the Native American land obtained by a county road commissioner through improper quit claim deeds. The County Board of Supervisors were found to have ratified post hoc, unconstitutional acts in approving the construction of roads based on notice to the Board in 1969 the county could not build on the land. In *Loggervale v. County of Alameda*, 2024 WL 4234878, (2024), a jury verdict was returned on a Fourth Amendment claim. The court upheld the *Monell* finding, based on the subordinate internal investigator noting the actions of the officers were lawful (upon conclusion of an investigation of the incident). The Sheriff then signed off on the finding of unfounded and noted he was briefed on the matter. The court held that a jury could reasonably infer from those facts that by signing approved on the investigation the sheriff approved of the investigators decision and basis for it.

None of these cases support a triable issue of fact in this case. They either involve examples of policy, custom or practice that is unlawful (*Gravelet-Blondin*), prior notice (*Lytel*, *Price*, and *Hammond*), a jury verdict and evidence the policy maker endorsed a finding that false arrest, excessive force investigation was lawful (not just unfounded) (*Loggervale*), or failure to train (*Long*).

There is no claim that written policy was unconstitutional as a justification for the use of force (*Gravelet-Blondin*). There is no evidence of notice to policy makers of unconstitutional customs or practices in the department because Mr. Clark did not bring any evidence the SRPD had a history of returning unfounded findings when use of force was investigated. Mr. Clark did not so much as offer an opinion the SRPD or Officers Nail and Mazariegos had a history of complaints of use of force. (Lytel, Price, Hammond). Mr. Clark speculates the actions of the officers indicate a lack of training, but plaintiffs did not dispute the moving papers show the officers met the training standards of the Peace Officers Standards and Training Commission (P.O.S.T.) as evidenced in Exhibits "H" and "I" to Lt. Scott Eberle's declaration, paragraph 11.

A municipality can be liable for an isolated constitutional violation if the final policymaker "ratified" a subordinate's actions. *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)). To establish *Monell* liability on a ratification theory, a plaintiff must provide evidence that an official policymaker made a deliberate choice from among various alternatives to follow a particular course of action and that the policymaker approved a subordinate's decision and the basis for it. *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992).

In *Gillette* the city manager acquiesced in a subordinate's recommendation plaintiff be terminated in an employment action. *Gillette* upheld dismissal of a *Monell* ratification claim. Gillette arose from the fact that, at most:

> the City Manager did not overrule a discretionary decision by the Fire Chief and did not object to the retention of counsel to represent the City in an arbitration proceeding pursuant to a collective bargaining agreement. The Fire Chief did not cast his decision to discipline Gillette in the form of a policy statement, and the City Manager's testimony that he did not object to hiring counsel for Gillette's arbitration is at least equally consistent with a general policy of routinely hiring lawyers to defend the City in all litigation or labor grievance proceedings. There is no evidence that the City Manager made a deliberate choice to endorse the Fire Chief's decision and the basis for it.

*Gillette*, *supra*, at 1348. The evidence here is Chief Spiller acquiesced in approving the report of Mr. Henry. Chief Spiller then moved to and terminated the employment of the Officers based on those recommendations. There is no evidence that Chief Spiller's acquiescence to Mr. Henry's finding -- that the use of force by the officers was in policy -- was expressly or implicitly made as a policy statement.

Chief Spiller testified he approved the hiring of Mr. Henry so the public could see the efforts of the SRPD to be transparent and objective. He testified he reviewed the entirety of the investigation, including the video, and evidence presented by Mr. Henry there was resistance by Mr. Lopez. The video did not show a chokehold applied by Mr. Lopez to Officer Nail as reported, but the video showed Mr. Lopez grabbing the vest of Officer Nail near where Officer Nail had weapons. Chief Spiller noted that officers are trained to use strikes or punches when under threat to gain control, and Plaintiff's expert did not dispute opine to the contrary on the training to use distraction blows or strikes to the face. Chief Spiller did no more and no less that

the city manager in *Gillette* with Mr. Henry's recommendations. It must be emphasized, again, that Chief Spiller adopted the recommendations that policy violations occurred in the conduct of the officers before the use of force by profanity, and failure to use de-escalation methods as trained. The characterization that Chief Spiller was adopting as a policy an unlawful use of force -- and thus ratification of an unlawful use of force -- is unfounded in law.

Plaintiff is essentially asking this court adopt a new legal precedent and ignore *Gillette*. <u>Plaintiff's proposal is that</u> anytime a plaintiff expert disputes a policy maker's decision to adopt a recommendation that did not find an officer violated policy (irrespective of internal or external review) establishes ratification. Under this rubric no investigation could ever be accepted by the policy maker if the investigation happened to find an officer did not violate policy, regardless of the thoroughness of the investigation, the evidence presented or who conducted the investigation. Never mind if it is the F.B.I., the Federal D.O.J. in a civil rights investigation, the State of California D.O.J. (which is now charged by law to investigate all police officer shootings resulting in a death), a local district attorney investigation, or an independent investigator. If any cleared the officers of their acts under policy and a policy maker accepts the recommendation, Plaintiff are saying this constitutes ratification as a matter of law in all instances, thereby subjecting the policy maker and entity to trial without a review by the court to determine legal viability.

### 2.   <u>There are No Triable Issues of Fact to Find Ratification</u>

In addition to the arguments above, Plaintiffs cite to a district court ruling, *Fortson v. City of Los Angeles*, 628 F. Supp 3d 946 (2022). *Fortson* involved a Black Lives Matter protest where the allegation of Fourth Amendment rights of unlawful arrest and use of force included a First Amendment retaliation claim. The *Monell* claim that attached was that the policy maker, Chief Moore made affirmative statements that he endorsed and approved the unconstitutional conduct of individual officers. The District Court denied summary judgment on *Monell*, finding:

> "Chief Moore's statements tend to show that [he] endorsed or approved the unconstitutional conduct of individual officers. He considered what else the officers could have done, and decided that what they did was the best course of conduct under the circumstances. This is sufficient evidence to create a genuine dispute of material fact on *Monell* liability."

*Fortson*, *supra*, at 993. (internal quotations and citations omitted). There is no evidence Chief Spiller ever affirmatively endorsed the actions of Officer Nail. The reverse is true. It undisputed Chief Spiller was concerned about the incident and determined it necessary and the most transparent, to involve an outside investigator in determining if evidence warranted a finding of force outside of policy.

Plaintiffs also propose that another district court case, *Peck v. County of Orange*, 501 F. Supp. 3d 852 (2020), supports their argument ratification occurred here. In *Peck,* plaintiff's husband was shot and killed by the police. The Court determined there was a triable issue of fact to the use of lethal force. A number of factual disputes came to light in the investigation including, decedent was not armed at the time of the shooting, as alleged by the officers to justify force; the officer claimed decedent was facing them when he raised his gun and pointed at them leading to them firing, but the entry wounds were to the back of decedent; and contradictory witness testimony and findings in the autopsy doctor's report. Plaintiff argued the County of Orange ratified the officers conduct by exonerating them despite the investigation being fatally flawed and significant irreconcilable differences between Defendants statement and the physical evidence. After reviewing the underlying principles governing ratification claims -- including that "[f]ailure to discipline employees, without more, is insufficient to establish ratification. Ratification ... generally requires more than acquiescence" -- the Peck Court addressed a split amongst District Courts within the Ninth Circuit. *Peck*, supra, at 871 (internal quotations citations omitted).

> Lower courts in the Ninth Circuit appear to be divided on whether an internal police investigation that concludes a shooting by its officers was lawful and within the municipality's policies is alone sufficient to support a theory of ratification for the purposes of Monell liability. Some judges have found such circumstances create a question of fact regarding ratification that should be resolved by a jury while others "have concluded that such an investigation and conclusion will not constitute ratification on their own absent evidence of something more, such as a 'sham investigation or conduct so outrageous that a reasonable administrator should have known that he or she should do something about it.

*Peck*, *supra*, at 871(internal quotations citations omitted). The Peck Court then concluded that under either standard, because the plaintiff had "submitted expert testimony that one of the few possible explanations for the investigation – in which the County relied solely on the statements

of involved deputies – was "directions from command authorities on what will or will not be examined" and because "an individual was killed in his own home, it is very possible the County's decisionmakers were in fact aware that a constitutional violation likely occurred." *Peck*, *supra*, at 871.

Chief Spiller accepted a recommendation based on a thorough investigation including review of the video statements of Mr. Lopez and his companions. There is no evidence Mr. Henry conducted a sham investigation.

**B.     Third Cause of Action: No Triable issues of fact as to Unwritten Policy, Custom and Practice of Unconstitutional Acts of the City or S.R.P.D.**

Plaintiff repeats his argument that Chief Spiller's acceptance of the recommendation of policy violations constitutes ratification because Mr. Clark disagrees. Plaintiff also appears to argue that profanity and failing to deescalate was a common practice in the department, which is a "moving force" behind Officer Nail and Mazariegos falsely detaining, arresting and using force against Mr. Lopez. The only evidence presented to an unwritten policy, custom or practice is founded on Mr. Clark's supposition that because profanity and escalation of a detention to use of force occurred here as depicted in the video, it was a custom and practice in the department.

Plaintiffs cite to *Blair v. City of Pomona* 223 F.3d 1074 (2000) in support. The case involved a whistleblower and subsequent harassment over months, where plaintiff and a witness repeatedly brought complaints to the command staff and Chief. The claim asserted a code of silence emanated throughout the department and that allowed the harassment to continue, thus a custom and practice as a "moving force" to the retaliatory harassment. There is no such history of using profanity to escalate confrontations to justify the use of out of policy, or unlawful force, against suspects.

Plaintiffs next cite to *Wallis v. Spencer*, 202 F.3d 1126 (2009) in support of an unconstitutional custom or practice. The allegation there was that the police and child protective services had longstanding customs and practices that led to the seizing of children from their parents without lawful court orders. Such facts have no relevance to this motion.

*Valenzuela v. City of Anaheim*, not reported, was to an unlawful policy on carotid

restraints allowed in non-deadly force cases, contrary to case authority at the time the policy was in effect. This amounted to "deliberate indifference" as a triable issue of fact.  Here, Mr. Clark had no criticism of the S.R.P.D policy on use of force in the arrest, but that the use of force as unwarranted.

Mr. Clark relies on one incident by two S.R.P.D. officers to support his opinion the City and S.R.P.D. had unconstitutional customs and practices.  He did not provide any evidence of prior incidents, complaints, or witnesses to support the opinion.  He only provided his experience from being in law enforcement to support he could divine the signs that the S.R.P.D. tacitly approved and endorsed unconstitutional acts of profanity and escalation of contacts with the public to allow unconstitutional acts of use of force against the public from one incident on video.  As noted there is no other offer of proof.  No other video of incidents, reports of incidents, complaints of incidents, examples of incidents Mr. Clark could offer, but for his speculation.  He did not present so much as news reports or suit filings -- let alone verdicts -- to raise an inference of that S.R.P.D that had a custom and practice to allow profanity and escalatory contacts leading to use of force.  The best he had was an officer disciplined for failing to properly report on the incident, Corporal Ocon, who testified sometimes officers escalate to deescalate, and Lt. Eberle hearing profanity over his career.  The opinion of Mr. Clark is speculation and should be disregarded.  Even if some scintilla of weight is afforded the opinion on the custom and practice, the profanity directed at Mr. Lopez by Officer Nail, was not related to the punch in the face.  The profanity nor the failure to deescalate can reasonably be attributed to be a "moving force" to establish a custom or practice in the absence of substantive proof of prior acts.

**C.  Fifth Cause of Action: No Triable Issues of Fact the City or SRPD Failed to Train Officers**

It is undisputed the SRPD met all requirement of P.O.S.T.  There is no evidence the officers involved had not met all training requirement of P.O.S.T. and the SRPD. The fact they were found in violation of policies and training on profanity, report writing, conduct with the public and de-escalation practices, and disciplined accordingly is exactly what any law enforcement agency is expected to do.  The argument of plaintiffs is again Mr. Clark's speculation that

because they failed their training, they were not trained properly. If that were the standard, every officer who is disciplined for policy violation establishes non rebuttable evidence of an entity's failure to train against police misconduct in spite of records to the contrary.

## IV. CONCLUSION

For the reasons set forth the City and S.R.P.D.'s motion for summary judgment should be granted.

Respectfully submitted,

Dated: November 29, 2024

ALLEN, GLAESSNER,
HAZELWOOD & WERTH, LLP

By: */s/ Dale L. Allen, Jr.*
  DALE L. ALLEN. JR.
  KEVIN P. ALLEN
  LEORA R. RAGONES
  Attorneys for Defendants
  CITY OF SAN RAFAEL and SAN RAFAEL