**EXHIBIT "D"**

**JULIO JIMENEZ LOPEZ, ET AL. vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

```
1                    UNITED STATES DISTRICT COURT

2                 NORTHERN DISTRICT OF CALIFORNIA

3

4   JULIO JIMENEZ LOPEZ and YESENIA CRUZ, )
                                          )
5                 Plaintiffs,             )
                                          )
6                 vs.                     )Case No.
                                          )3:23-CV-03652-VC
7   CITY OF SAN RAFAEL; SAN RAFAEL POLICE )
    DEPARTMENT; DAISY MAZARIEGOS; BRANDON )
8   NAIL; and DOES 1-50, inclusive,       )
                                          )
9                 Defendants.             )
    _____)

10

11

12

13

14        REMOTE VIDEOCONFERENCE DEPOSITION OF

15                     DAVID SPILLER

16              FRIDAY, AUGUST 15, 2024

17

18

19

20

21

22

23   Reported Stenographically By:

24   Jinna Grace Kim, CSR No. 14151

25   Job No.:  85934
```

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 2

1                    UNITED STATES DISTRICT COURT

2                    NORTHERN DISTRICT OF CALIFORNIA

3

4    JULIO JIMENEZ LOPEZ and YESENIA CRUZ, )
                                           )
5                   Plaintiffs,            )
                                           )
6                   vs.                    )Case No.
                                           )3:23-CV-03652-VC
7    CITY OF SAN RAFAEL; SAN RAFAEL POLICE )
     DEPARTMENT; DAISY MAZARIEGOS; BRANDON )
8    NAIL; and DOES 1-50, inclusive,       )
                                           )
9                   Defendants.            )
     _____)

10

11

12

13

14          The remote videoconference deposition of DAVID

15   SPILLER, taken on behalf of the Plaintiffs, beginning at 9:59

16   a.m., and ending at 12:12 p.m., on Friday, August 15, 2024,

17   before Jinna Grace Kim, Certified Stenographic Shorthand

18   Reporter No. 14151.

19

20

21

22

23

24

25

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 3

```
 1    APPEARANCES OF COUNSEL:

 2
      For the Plaintiffs:
 3
              LAW OFFICES OF DALE K. GALIPO
 4            BY:  DALE K. GALIPO, ESQ.
              BY:  BENJAMIN S. LEVINE, ESQ.
 5            21800 Burbank Boulevard, Suite 310
              Woodland Hills, California 91367
 6            Tel:  818-347-3333
              Fax:  818-347-4118
 7            E-mail:  dalekgalipo@yahoo.com
              E-mail:  blevine@galipolaw.com
 8

 9    For the Defendants:

10            ALLEN GLAESSNER HAZELWOOD WERTH
              BY:  DALE L. ALLEN, ESQ.
11            180 Montgomery Street, Suite 1200
              San Francisco, California 94104
12            Tel:  415-697-2000
              E-mail:  dallen@aghwlaw.com
13

14            BERRY WILKINSON LAW GROUP
              BY:  ALISON BERRY WILKINSON, ESQ.
15            165 North Redwood Drive, Suite 206
              San Rafael, California 94903
16            Tel:  415-259-6638
              E-mail:  alison@berrywilkinson.com
17

18            MESSING ADAM & JASMINE LLP
              BY:  DAVID L. KRUCKENBERG, ESQ.
19            2150 River Plaza Drive, Suite 130
              Sacramento, California 95833
20            Tel:  916-551-3337
              E-mail:  david@majlabor.com
21

22

23

24

25
```

**JULIO JIMENEZ LOPEZ, ET AL. vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

| | | **Page 4** |
|---|---|---|
| 1 | INDEX | |
| 2 | WITNESS: | PAGE |
| 3 | DAVID SPILLER | |
| 4 | BY: MR. GALIPO | 5 |
| 5 | | |
| 6 | EXHIBITS | |
| 7 | MARKED FOR IDENTIFICATION | PAGE |
| 8 | Exhibit 1          Notice of Intent to | 32 |
| 9 | Terminate | |
| | Exhibit 2          Side-by-Side Video | 61 |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

```
1                          CALIFORNIA

2                   FRIDAY, AUGUST 15, 2024

3                          9:59 A.M.

4                        DAVID SPILLER,

5    called as a witness on behalf of the Plaintiffs, having been

6    first duly sworn remotely via videoconference, was examined

7    and testified as follows:

8                          EXAMINATION

9    BY MR. GALIPO:

10        Q.   Can you please state your full name and spell it for

11   the record.

12        A.   My name is Dave Spiller, S-p-i-l-l-e-r.

13        Q.   Are you able to hear me so far?

14        A.   Yes, I am.  Thank you.

15        Q.   You're welcome.  If you have any trouble hearing me

16   at any time, let me know and I'll try to speak louder or more

17   clearly.

18             Okay?

19        A.   Great.

20        Q.   I'll try to ask you pretty understandable questions,

21   but if for any reason you don't understand my question, just

22   let me know and I'll try to ask it in a better way?

23             Okay?

24        A.   Okay.

25        Q.   As I stated off the record, if you need to take a
```

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024

Page 6

1    break at any time before my breaks, just let me know and

2    we'll take a break when you request.

3         A.   Very good.

4         Q.   Okay.  I think we're going to be fine with this

5    because you seem to speak very clearly which is a great thing

6    for the court reporter.  But once in a while we get some

7    people that speak faster than they realize, and it's

8    difficult for the court reporter to keep up with them.

9              So try to speak slowly if you can.  And also, we'll

10   try not to overlap because it's very common that you know

11   what I'm asking before I'm done, and I interrupt you

12   mid-sentence, and then it's difficult for the court reporter

13   to take both of us down.  So maybe if we take a pause, short

14   pause in between, that would be great for the record.

15             Is that understood?

16        A.   Yes, it is.  Thank you.

17        Q.   You're welcome.  So before we get into a little bit

18   about the incident and your review of it, I just want to

19   learn a little about your background starting with your

20   educational background.

21             Can you tell me a little bit about that, please.

22        A.   Absolutely.  So I received my Associates's Degree at

23   a community college De Anza College in Cupertino.  I received

24   my Bachelor's Art Degree at University of San Francisco in

25   Organizational Behavior.  And then I received my graduate

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024

1   degree from Saint Mary's College in Public Sector Leadership.

2   In addition to that formal education, I also am a graduate of

3   California POST Command College as well as the Senior

4   Management Institute for Policing affiliated with the Kennedy

5   School in Boston.

6       Q.    Thank you for that.  And when did you first go to

7   the police academy?

8       A.    I went to the police academy in 1988.

9       Q.    And you're currently the chief of police?

10      A.    I am the Police Chief for the City of San Rafael.

11      Q.    How long have you held that position?

12      A.    Since March of 2021, about three and a half years.

13      Q.    Can you -- and try to do it without talking too

14  fast, but can you take us a little bit through your journey

15  from first becoming a police officer up to your current

16  position as police chief.

17      A.    Sure.  So after graduating from the police academy

18  in San Diego, I worked the streets of San Diego as a police

19  officer for the City of San Diego.  I left San Diego Police

20  Department in 1991 where I lateraled to the Mountain View

21  Police Department.

22          I was a police officer in Mountain View from 1991 to

23  2002.  During that time I worked various special assignments.

24  I was promoted to the position of agent which is similar to a

25  police corporal.  Shortly thereafter, I was promoted to

Page 8

1   police sergeant where I was a patrol sergeant, a small unit

2   supervisor, and I also managed special events for the

3   organization.

4           During my time at Mountain View I was also the

5   president.  I was also the president -- I was on the Board of

6   the Police Officer Association for several years, and I

7   left -- at the time I left I was the sitting president of

8   Mountain View Police Officer Association.  In 2022 when I

9   left, I left Mountain View as a sergeant taking a

10  lieutenant's job in the City of Pleasanton.  After one year

11  as a lieutenant in Pleasanton I was promoted to the position

12  of police captain which is the number two position in that

13  organization.

14          There's two police captains that both direct --

15  directly report to the chief.  Each of the captains are

16  division commanders.  So for approximately nine years I

17  bounced back and forth from the patrol division to the

18  support division as a captain.  And in May of 2011 I was

19  appointed as police chief for the city of Pleasanton.

20          In November of 2019 I retired from the City of

21  Pleasanton, took a short break, five or six months.  Came out

22  of retirement to be the interim chief of the City of Menlow

23  Park.  That was an eight-month assignment.  I left Menlow

24  Park to assume command of the San Rafael Police Department

25  start here in March of 2021.

Page 9

1    Q.    Thank you so much for that.  And during your tenure

2    even before you became police chief in your current position,

3    I take you were involved at times in supervising other police

4    officers?

5    A.    Yes.

6    Q.    And were you also involved at times in your career

7    with regards to training other police officers?

8    A.    Yes, I was.

9    Q.    And did that include training, for example, in

10   tactics?

11   A.    Yes.

12   Q.    And use of force?

13   A.    Yes.  To -- not -- I wasn't a use of force or

14   defensive tactics instructor, but I was a department

15   instructor or on less-lethal impact devices.

16   Q.    And over your career as a law enforcement officer

17   and current police chief, have you been called upon to review

18   certain force incidents to give your input as whether you

19   believe they were in policy or out of policy, for example?

20   A.    Yes.

21   Q.    And when in your career did you start reviewing use

22   of force incidents in that way?

23   A.    Probably around the mid 90's when I was promoted to

24   the subordinate supervisor position of police agent.  I was a

25   field supervisor on a patrol team, and the supervisor or the

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024

Page 10

1   sergeant's absence I would be responsible for reviewing force

2   applications and preparing summaries for command staff.

3          That also took place during my role as a police

4   sergeant.  And as a lieutenant I then became a reviewer of

5   those incidents in the City of Pleasanton, and then as the

6   division commander of the City of Pleasanton, I reviewed all

7   of the uses of force while I was assigned to the Patrol

8   Division.

9   **Q.   And in that position when you would review the uses**

10  **of force, would you come to some determinations or**

11  **recommendations, for example, as to whether you thought the**

12  **force used was in policy or out of policy?**

13  A.   Yes.

14  **Q.   And who would you submit your findings or**

15  **recommendations to?**

16  A.   That would depend on my role.  As an example, as a

17  unit supervisor or a supervisor I would provide the review

18  and finding, if you will, to my supervisor who was a

19  lieutenant.  As a lieutenant I would provide my review to a

20  captain.  As the captain of the patrol division at that time,

21  I would provide the summary and the overall review to the

22  police chief.

23  **Q.   And would the police chief at the time make the**

24  **ultimate decision as to whether he agrees or not with the**

25  **recommendation and findings?**

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 11

1      A.   That's typical, yes.

2      Q.   And then after Pleasanton, is that when you had the

3   interim position at Menlow Park?

4      A.   Yes.  That's correct.

5      Q.   And during your tenure there were you involved at

6   all in reviewing use of force incidents?

7      A.   Yes.

8      Q.   And what was your involvement at Menlow Park?

9      A.   As the interim police chief or the acting agency

10  head, I would review the entire use of force incident and

11  ensure that it was reviewed up the chain from the unit

12  supervisor to the commander of the division.  And it was a

13  different command structure.  And then after the commander

14  reviewed it, I would review it.

15     Q.   And would you then be in the position so that the

16  commander or some of your people under your supervision would

17  make recommendations and findings, and then you would review

18  it and see if you agreed or disagreed with those?

19     A.   Yes.

20     Q.   And if there was discipline or potential discipline

21  involved in any of the incidents, were you involved in either

22  those recommendations or that decision?

23     A.   Yes.

24     Q.   And how would you be involved as the interim police

25  chief?

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 12

1      You had the final say at that point?

2      A.   Yes.  So in review of a force incident, I would

3   ensure that everybody in the chain had reviewed and made

4   their findings that it was within policy or outside of

5   policy.  If it was outside of policy, a deeper investigation

6   would take place, and then that finished investigation would

7   come to me for the imposition of discipline.

8      Q.   And then when you started in your current position

9   as police chief, I take it you have also been involved in

10  reviewing as they come up the chain of command force

11  incidents?

12     A.   Yes, that's correct.

13     Q.   And at some point did you review the incident

14  involving police officer Brandon Nail?

15     A.   Yes.

16     Q.   And I take it there are different categories of

17  reportable uses of force in your department?

18     A.   Yes.

19     Q.   And if you know, for example, is a take-down

20  considered a reportable use of force?

21     A.   Yes, it is.

22     Q.   And then punches to the face or other parts of the

23  body would also be reportable uses of force?

24     A.   Yes, absolutely.

25     Q.   And if there is a reportable use of force, can you

**JULIO JIMENEZ LOPEZ, ET AL. vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 13

1    just give me an outline of the general protocol as to what

2    would normally happen in terms of documentation reporting, et

3    cetera?

4        A.    If there is an application of force, the officer is

5    directed to have their supervisor respond to the scene.

6    Supervisor in many cases would be monitoring the radio

7    frequency and have a sense of what's going on and would

8    likely be on the way or would respond to the scene

9    regardless.

10            After the application of force, the supervisor for

11   the assigned shift is responsible to do a scene appraisal,

12   talk to any relevant witnesses to obtain a statement from the

13   officers, to obtain a statement from the individual who the

14   force was used, upon who the force was used.

15            And then they would produce a review of the

16   application of force in a document that the organization

17   uses.  It's a use of force analysis report.  That then when

18   completed by the supervisor with all the relevant details

19   would be forwarded to the lieutenant, that supervisor's

20   lieutenant.  The lieutenant would then review the

21   supervisor's work, review the content of the report, and make

22   a determination based on the report and any additional review

23   of body camera video or any other evidence that was available

24   would make a determination that the supervisor performed

25   their responsibilities appropriately and that the details

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 14

1    within the documented use of force are within policy or

2    outside of policy.

3            The lieutenant would then provide that -- whether

4    they concur our not with the supervisor's review and then

5    provide that to the division commander which is the captain.

6    The captain essentially does the exact same thing that the

7    lieutenant did, review all the details of the entire

8    narrative, all the details from the report, and then again

9    concur or not concur.  And then if the captain concurs, it

10   would be then forwarded to the office of the police chief.

11           If at any time during those reviews, the

12   supervisor's initial investigation and review, the

13   lieutenant's review or the division commander's review, if

14   there were ever any concern about it being outside of policy,

15   it would stop, and it would initiate an internal

16   investigation.

17       Q.   Thank you.  That's very helpful.

18           In the case of Officer Nail and Mr. Lopez, do you

19   know if the officers themselves were required to write

20   reports regarding their encounter with Mr. Lopez?

21       A.   Yes.  The officers would be required to write a

22   police report based on the details of the incident.

23       Q.   And short of an Internal Affairs investigation,

24   would there be occasions where you would have one of your

25   investigators or detectives interview the involved officer if

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024

Page 15

1   there were some unanswered questions, or would that only take

2   place in certain circumstances?

3       A.   Well, that -- so the supervisor on-scene would

4   obtain that basic information on what had occurred and what

5   the officer's basically statement was, what their frame of

6   mind was, what occurred.  And then the supervisor couples

7   that with the rest of their observations and investigation.

8       Q.   And I forgot to ask you this at the beginning, but

9   did you review some documents regarding this matter in

10  preparation for the deposition just to refresh your

11  recollection?

12      A.   Some documents.  I did not review the police report

13  or the use of force report.

14      Q.   If in answering any of my questions, you need to

15  look at any of the documents you have handy to refresh your

16  recollection, it's okay.  Just let me know and let us know

17  what you're looking at.

18           And I may also during the course of the deposition

19  put up a few documents that I could share the screen, and

20  we can talk about it.  But this is not a memory test for you,

21  and if you need to look at something, it's fine.

22           Just let us know.  Okay?

23      A.   Appreciate it.

24      Q.   Yes.  Now, do you know or recall who the supervisor

25  was in this particular investigation?

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024

Page 16

```
1       A.    The supervisor from this investigation or from this

2    incident was Corporal Oscar O'Con who is, again, he's that

3    two striper that subordinate supervisor.  The team sergeant

4    was not on duty when this incident occurred.

5            So the functional supervisor for the shift was Oscar

6    O'Con.

7       Q.    Do you happen to know how to spell the last name for

8    our court reporter?

9       A.    Yes.  Corporal O'Con's last name is O-c-o-n.

10      Q.    And then the lieutenant involved in this

11   investigation or review, do you know who that was?

12      A.    Lieutenant Lisa H-o-l-t-o-n, was the lieutenant

13   assigned to night shift when this incident occurred.

14      Q.    And then the commander or captain involved, who was

15   that?

16      A.    Captain Roy L-e-o-n is the patrol division

17   commander.  So he was the captain at the time of the incident

18   and remains the patrol captain.

19      Q.    If you remember, how did you first learn that this

20   incident had taken place?

21      A.    I first learned about this incident by means of

22   e-mail.  Lieutenant Holton had e-mailed her boss, Captain Roy

23   Leon, regarding an incident that took place at the Superior

24   Court in Marin County, and it centered on some community

25   members were in attendance, an arraignment or prelim, I
```

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024

Page 17

1    believe.  And there was concern about the use of force.

2          It was reported that the district attorney had not

3    reviewed the police body camera and that there was a use of

4    force associated with the incident.  I learned about this

5    being copied on an e-mail that Lieutenant Holton had sent to

6    Captain Leon.

7    Q.    And once you learned about this, did you want to get

8    more information?

9    A.    Absolutely.

10   Q.    And what did you do to try to acquire additional

11   inform about this?

12   A.    I provided Captain Leon with direction to gather

13   details and to meet with me or provide me an update on the

14   incident including the review of any use of force reporting

15   body camera video and the like.

16   Q.    And did Captain Leon do that for you?

17   A.    Yeah.  I don't specifically recall how he brought it

18   to me, but I distinctly remember reading that e-mail in the

19   very, very early morning hours of an August morning before

20   I had come to work.  And then I'm sure I started looking into

21   details when I got to the office later that morning.

22   Q.    And I don't expect you to recall, you know, day by

23   day what documents you got first, second, third, but

24   generally, what documents were eventually provided to you to

25   review?

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024

Page 18

1      A.   The police report from the incident, body camera

2  video, of course, and then e-mails.  It was later that I

3  learned that the use of force report was being processed

4  within the chain and had not been submitted to me at that

5  point.

6      Q.   At some point was the use of force report provided

7  to you?

8      A.   I don't remember receiving the use the force.

9           I believe that the use of force analysis stopped

10  before it made it to the office of the chief and was the

11  subject of the internal investigation.  As I previously

12  described, if the lieutenant or the captain or anybody in

13  that chain had concerns about the application of force, it

14  could trigger a potential investigation of somebody believed

15  it was outside of policy.

16           So I don't believe the use of force analysis ever

17  made it to my office.

18      Q.   And do you believe that was because before it got to

19  your office, something triggered an Internal Affairs

20  investigation?

21      A.   Yes.

22      Q.   And I know you mentioned one factor that could

23  trigger an Internal Affairs investigation as someone

24  believing that the actions may have been out of policy; is

25  that one way to trigger it?

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 19

1    A.    Yes.

2        Q.    And did you have an understanding in this matter

3    whether that is what caused the Internal Affairs

4    investigation to be triggered and/or something else?

5        A.    It was I think there were a number of factors.

6             The commands staff's review of the use of force,

7    command staff's review of the body-worn cameras, and

8    statements and allegations made in court.  And while the

9    lieutenant and the captain were processing the use of force

10   or reviewing the use of force, based on the e-mail that I had

11   received, I ended up reading the police report; I ended up

12   looking at body camera, and had made the determination that I

13   was going to investigate it, conduct an investigation as

14   well.

15           Q.    And why did you yourself want to conduct an

16   investigation based on your initial review of the materials

17   and the body camera footage?

18       A.    It was basically, you know, my observations, the

19   officer's actions, the application of force.  In this

20   particular case looking at the body camera video, you know,

21   there is observations or conclusions you can make, but it

22   takes time and diligence to really not necessarily

23   frame-by-frame, but there is a lot you can't see, and there's

24   some things that you can see.  And based on what I saw, it

25   warranted a deeper dive, hence the investigation.

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 20

1       Q.   And what did the further investigation entail?

2       A.   So that -- if use of force is determined or

3   suspected to be outside of policy, it requires an

4   investigation which can include interviews with officer,

5   subject officers, witness officers, and a more formal

6   application of the peace officer's bill of rights.

7            So the investigation would entail assigning

8   typically in this case a supervisor or a command officer to

9   review all the details of the incident, obtain statements,

10   and make a determination whether it was, in fact, in policy

11   or outside of policy with the advantage of more time,

12   potential, you know, better technologies to review the video

13   frame-by-frame, those types of things.

14            In the course of making the determination of

15   pursuing an investigation, I had actually wrestled with

16   whether it was going to be internally managed or whether we

17   would hire an outside investigator, and that was part of the

18   consideration for me.

19       Q.   And what factors were you considering in making that

20   decision?

21       A.   It was not long after we learned about the incident,

22   and I was looking into the incident, and the captain was

23   ensuring everything in patrol was documented properly, that

24   the community had reacted to this incident.  And the

25   organization received a significant -- I would describe it as

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 21

1   a significant amount of public dissatisfaction, communicated

2   disdain for the officers' behavior in this incident.

3           And to ensure objectivity in conversations that

4   I had with the City Attorney, I made the determination to use

5   an outside investigator.

6       Q.   And who did you use?

7       A.   A retired law enforcement individual's name is Paul

8   Henry who does these types of investigations for a living.

9       Q.   And do you have any general estimate as to when you

10  became aware of the public dissatisfaction?

11      A.   Well, the initial information that we had as it

12  related to public dissatisfaction occurred in the courtroom.

13  There were supporters of the subject who was arrested and the

14  force was used who were there in support of the defendant at

15  the time.  That was the first indication of dissatisfaction.

16  And then shortly after, there was a pretty high profile news

17  story that was run on the incident.

18          And in the wake of that I would describe the

19  environment around the police department was basically it had

20  exploded, and the community both locally, people throughout

21  the state, throughout the country reached out via social

22  media, via e-mail, phone calls, and there was a pretty

23  significant and sustained campaign of anti-San Rafael Police

24  Department sentiment.

25      Q.   And that was something as the chief you had to deal

**JULIO JIMENEZ LOPEZ, ET AL. vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 22

1    with and handle the best you could; is that a fair

2    statement?

3        A.   As the chief.  And I think all of the men and women

4    of the organization had to deal with it as best we could.

5        Q.   Prior to that publicity with the TV publicity, had

6    you already taken steps, though, with regards to the

7    investigation?

8        A.   Yes.  I would offer that I had taken the initial

9    steps after I reviewed the case and reviewed the body camera

10   video.

11       Q.   And to your knowledge, was the investigation that

12   you wanted to be done on this matter done in accordance with

13   your wishes?

14       A.   The investigation was, in fact, completed in

15   accordance with my wishes, yes.

16       Q.   And did you have a general understanding aside from

17   what you have already told me what the investigation

18   entailed?

19       A.   Yes.

20       Q.   Can you please tell me.

21       A.   So the investigation was centered on the incident

22   that occurred in July of 2022, and it focused on the entire

23   incident.  The initial contact by Officer Mazariegos with

24   three individuals who were suspected of violating a municipal

25   code or local ordinance.

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 23

1    Officer Nail who arrived as her cover officer, the

2    subsequent engagement of Officer Nail with Mr. Lopez, and

3    ensuing confrontation or struggle that occurred.  Officer

4    Nail bringing Lopez to the ground, and the investigation

5    covered all of that as well as the aftermath of Officer

6    O'Con's -- Corporal O'Con's review of the matter, his

7    investigation after the fact or after at application of

8    force, and then the documentation that was required as a

9    result of the incident.

10        Q.   And did you have an understanding as to what

11    eventually happened with respect to the criminal case against

12    Mr. Lopez?

13             Did you know if that was dismissed, or what was your

14    understanding?

15        A.   As I understood, the District Attorney summarily

16    dismissed it.  As I understand, the DA had not previously

17    reviewed the body camera video, and based on the optics or

18    the language or I'll just say jury appeal, they made a

19    determination not to pursue it, and there were likely other

20    factors including the officers' behavior.

21        Q.   And Paul Henry, had you worked with this individual

22    before, or how did you know of him?

23        A.   I haven't worked with him before.  This was the only

24    case that I've been affiliate with Mr. Henry.  I think he

25    does a lot of these investigations.  I don't -- I'm not even

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 24

```
 1   sure if he had done any work with San Rafael Police

 2   Department prior to my employment here.

 3        Q.   Did you understand Mr. Henry to be sort of police

 4   practice expert?

 5        A.   Yes.  By reputation I knew that.

 6        Q.   Would it be fair to say given your background,

 7   experience, and expertise in law enforcement, you had certain

 8   impressions yourself about the incident even before you

 9   reached out to Mr. Henry?

10        A.   Yes.

11        Q.   But you wanted just to make sure for transparency

12   purposes and objectivity, you wanted to have an independent

13   individual also look at it; is that what you were thinking?

14        A.   Yes.

15        Q.   And eventually, did Mr. Henry write some type of a

16   report with his findings and recommendations?

17        A.   Yes, he did.

18        Q.   And that was sent to you?

19        A.   It was, yes.

20        Q.   Did you essentially agree with his findings and

21   recommendations?

22        A.   Based on my review of his investigation, I found it

23   to be thorough and detailed, and I found it to be reflective

24   of the information and facts presented, and I concurred with

25   his findings -- or yeah, with his determinations of the
```

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 25

1    potential policy violations.

2        Q.    And I know you explained the normal chain of command

3    with it going from supervisor to lieutenant to commander and

4    then to chief.

5            Did that happen in this case, or was there some

6    interruption because of the Internal Affairs aspect or you

7    sending it to Mr. Henry?

8        A.    I believe if you're referring to the use of force

9    analysis document, I believe that stopped at the --

10       Q.    Yes --

11       A.    -- Captain Leon's level.  I don't think the use of

12   force analysis ever made it to me.  I've seen it subsequent

13   to the Internal Affairs investigation, but in terms of the

14   standard review, it stopped at the captain's level.

15       Q.    And were there recommendations made then to you

16   about what others viewed to have been out of policy with

17   regards to this incident?

18       A.    So Mr. Henry actually -- his investigation resulted

19   in three separate and distinct investigations.  One involving

20   Officer Nail and potential policy violations based on his

21   behavior, one for Officer Daisy Mazariegos, and potential

22   policy violations based on her actions and behavior at the

23   scene, and the third investigation centered on Corporal O'Con

24   and his responsibilities and potential policy violations

25   basic on his supervisory responsibility.

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 26

1      Q.   Would you be comfortable, Chief, if I took them one

2   at a time?  And you could explain to me what your

3   understanding of the violations are potential violations

4   there were for each?

5      A.   Yes.

6      Q.   Okay.  And if you need to look at anything, that's

7   fine.  I'm going to go to about 10:45 and then take that

8   break, and whatever we don't finish before, we'll come back

9   at around 11:00 an finish.

10           Is that okay with you?

11     A.   Yes.

12     Q.   Let's start with O'Con.  And you explained to me

13   that O'Con was the supervisor.

14           And what deficiencies or policy violations occurred

15   with respect to O'Ocon?

16     A.   I did not review the three investigations prior to

17   this morning's deposition.  So I'm acting from memory and I

18   don't remember specifically what each the potential policy

19   violations were.  But as a supervisor, Officer O'Ocon was

20   responsible with assessing the scene, making the

21   determination on the application of force and whether it was

22   within policy or not and then forwarding that information to

23   his lieutenant.

24           As a supervisor his responsibility is to ensure

25   officers are diligent and executing and performing their

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 27

```
 1   duties and the general representation of the San Rafael
 2   Police Department.  I believe the investigation centered on
 3   Officer O'Ocon included his reporting of the incident or
 4   delay in reporting, potential issues of body camera use, body
 5   camera activations, and I can't off the top of my I don't
 6   remember.  There might have been another issue or two that
 7   was centered on policy.
 8        Q.   Okay.  And is it your understanding that Officer
 9   O'Ocon issued his report about a month after the incident?
10        A.   Yes.  I learned that subsequent to the incident in
11   July of 2022.
12        Q.   And what is the normal protocol for the timing of
13   the supervisor's report in a force incident like this?
14        A.   Normal protocol is as soon as practical and as soon
15   as possible.  Typically, that's by the end of the assigned
16   shift.  However, supervisors are often multi-tasking with a
17   lot of responsibilities including report approval, you know,
18   review of arrests and bookings and those types of things.
19            So it's not unusual for a supervisor to complete a
20   use of force analysis the subsequent shift or at some point
21   during that work week.  It's very unusual for somebody not to
22   turn one in in 30 days.
23        Q.   Since you've been police chief there, are you aware
24   of any other cases where it took 30 days for the supervisor
25   to turn in their report?
```

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

1    A.    No.

2    Q.    In your work as a law enforcement officer over many

3    years, have you ever been aware of an incident that you

4    reviewed where the supervisor took 30 days to submit the

5    report?

6    A.    In extreme cases centered on, perhaps, an

7    officer-involved shooting or more protracted administrative

8    review of the use of force, it would not at all be unusual

9    for a report to come in with that kind of a delay.

10          But that's -- I would describe that as being

11    actively investigated.  In the case of a take-down, a control

12    hold, those types of things, it's very normal for that to be

13    more proximate to the date or shift of the incident.

14    Q.    Did you ever learn in the course of the

15    investigation what Officer O'Ocon's reason or reasons were

16    for not submitting his report till approximately 30 days

17    later?

18    A.    I don't recall if he articulated an excuse.

19          I just don't remember.

20    Q.    That's fine.  How about with Officer Mazariegos,

21    what was your general understanding of her violations?

22    A.    So Officer Mazariegos and Officer Nail were both

23    engaged with Mr. Lopez.  The misconduct allegations in her

24    specific case were centered on potential use of excessive

25    force, potential false reporting or information that's not

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 29

1   factual being included in the police report, probably conduct

2   and professionalism policies.

3        Q.   And then how about Officer Nail, what was the issues

4   with whether he violated any policies?

5        A.   Similar to Officer Mazariegos, the allegations were

6   centered on the use of excessive force, false information in

7   a police report, specifically I think his statements that

8   somebody was, you know, he felt somebody was trying to choke

9   him or the suspect was trying to choke him and the veracity

10  of that statement, lack of professionalism, use of profanity,

11  those were the issues, those were the main policy areas at

12  issue with his misconduct in this investigation.

13       Q.   And ultimately, was it your finding that Officer

14  Nail did, in fact, violate policies of your department?

15       A.   In the review of Mr. Henry's investigation, I

16  concurred with the findings that he asserted in that some of

17  the policies were, in fact, violated; others were not.

18       Q.   And how about Officer Mazariegos, was that similar?

19            There were some policy violations?

20       A.   Yes.

21       Q.   And the ones that Mr. Henry thought had been

22  violated, did you concur with those?

23       A.   Yes, I did.

24       Q.   And then Officer O'Ocon, were there also some

25  findings of violations?

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 30

1        A.    Yes, there were.

2        Q.    And you also concurred with those?

3        A.    Yes, I did.

4        Q.    Now, did you ultimately have to make a decision as

5   to whether there should be any discipline with respect to any

6   of these officers?

7        A.    Yes.  That falls under my responsibilities as the

8   police chief.

9        Q.    And what discipline, if any, did you decide was

10   appropriate?

11             We'll start with Officer Nail.

12        A.    I recommended termination.

13        Q.    And why did you recommend termination?

14        A.    The interaction, the conduct, and how his behavior

15   reflected on the organization was a significant impact to the

16   trust and relationship building that this police department

17   has been endeavoring to build within the community.

18             His actions and behavior undermined our mission and

19   our objectives as an organization and not reflective of our

20   values as an organization.

21        Q.    And do you know if your recommendation was followed?

22        A.    Yes.

23        Q.    How about Officer Mazariegos, what was your

24   recommendation with respect to discipline, if any, for her?

25        A.    Officer Mazariegos in the wake of this incident was

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 31

1    released as a probationary release.

2         Q.    What does that mean, generally?

3         A.    So she was on probation as a newer police officer.

4              Her probation was actually extended as a result of a

5    medical leave during her original probation period.  She was

6    still within that probationary evaluation period, and in the

7    wake of this incident, she was released and let go, released

8    from employment with the City.

9         Q.    How about Officer O'Ocon, was there any

10   recommendations with regards to that officer?

11        A.    Yes.  I recommended a suspension for Officer O'Ocon,

12   for Corporal O'Ocon -- excuse me.

13        Q.    Okay.  And we're going to take our break now.

14              But would it be a fair statement, Chief, that you as

15   the chief of police worked -- were working very hard to

16   establish, you know, trust between your department and the

17   community and were trying hard to build that?

18        A.    Yes.  I would describe that as a never-ending

19   responsibility of law enforcement organizations as, you know,

20   subordinate to our community, we have to build trust and

21   trusting relationships, and that task is never-ending, and we

22   continue to pursue a deeper trusting relationships with the

23   community that we serve.

24        Q.    And when you viewed the conduct of Officer Nail and

25   Officer Mazariegos with respect to Mr. Lopez, both in looking

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 32

1   at the reports, viewing the body-worn camera footage

2   including the additional investigation by Mr. Henry, is it

3   fair to say that you viewed their conduct as sub-standard?

4        A.   Yes.

5        Q.   And in violation of the policies of your

6   department?

7        A.   Some of them, yes.

8        Q.   Okay.

9             MR. GALIPO:  Is this a good time for us to take

10  about a 15-minute break so I can take care of my issue and

11  come back maybe at 11:00 or shortly thereafter?

12            MR. ALLEN:  Yes.

13            (Recess taken.)

14  BY MR. GALIPO:

15       Q.   So I'm going to try to put up a document and

16  share-screen, and I'm hoping we can look at it together as I

17  ask the chief some questions about it.

18            And I'll mark it as Exhibit 1.

19            (Exhibit 1 was marked for identification.)

20  BY MR. GALIPO:

21       Q.   I think it relates to Brandon Nail and notice of

22  intent to terminate.

23            MR. GALIPO:  So Ben, can you try to put the document

24  up and can you enlarge it a little bit for those of us whose

25  eyes are not what they used to be?

JULIO JIMENEZ LOPEZ, ET AL. vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024

Page 33

1    BY MR. GALIPO:

2        Q.    Chief, are you able to see this document on your

3    screen?

4        A.    Yes, I could see it.

5        Q.    And I realize we're just looking at a portion of the

6    first page, but do you generally recognize what this document

7    is?

8        A.    Yes, I do.

9        Q.    And it looks like it's to Brandon Nail and from

10   yourself; is that correct?

11       A.    Yes.

12       Q.    And dated May 11, 2023?

13       A.    Yes.

14       Q.    And the subject says notice of intent to terminate.

15            Do you see where I'm looking towards the top?

16       A.    Yes, I do.

17       Q.    And what is the purpose of this document as you

18   understand it?

19       A.    To notify the officer of -- well, in essence, my

20   review of the investigation, review of the findings, and my

21   proposed discipline in the wake of the investigation.

22       Q.    And then it has certain Roman Numeral numbers.

23            The first one says effective date of proposed

24   termination.

25            Do you see that?

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 34

1      A.   Yes.

2      Q.   And then Roman Numeral II starting at the bottom of

3   Page 1 indicates grounds/violations for proposed

4   termination.

5           Do you see that section?

6      A.   Yes.

7      Q.   Now, how generally, is this document generated?

8           Do you work on it with some of your other officers

9   in the chain of command to get this as a final document?

10     A.   I would typically work on this with either the City

11   Attorney or outside counsel.

12     Q.   Okay.  And do you believe you did so in this case?

13     A.   Yes.

14     Q.   And so going to Page 2, there is a bunch

15   bulletpoints, and we're not going to go through all of them.

16           But do you generally see the bulletpoints in this

17   page?

18     A.   Yes, I do.

19     Q.   And are these some of the rules and regulations of

20   your department that may have been violated or may come into

21   play in this investigation?

22     A.   Yes.  So these are in essence rules and/or sections

23   of a memorandum of understanding between the Police Officer's

24   Association and the City, City rules and regulations and the

25   Police Department policy.

JULIO JIMENEZ LOPEZ, ET AL. vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024

Page 35

1    Q.    And then going to the next page, there is a Roman

2    Numeral III that's entitled, "Factual basis in support of the

3    written reprimand."

4            And this would be the section where you put in the

5    facts to support the recommendations of discipline, and in

6    this case termination?

7    A.    Yes.  This might be the first time I noticed it, but

8    that Roman Numeral III should be termination, not reprimand.

9    I don't know -- so factual basis in support of the

10   discipline, I don't know if this was produced from -- I don't

11   know if we collaboratively produced this from another

12   document or not, but I see what you're making reference to,

13   but there is an inconsistency between a written reprimand and

14   the ultimate discipline that was being imposed on this

15   matter.

16   Q.    Okay.  So would it more accurately should say with

17   respect to Officer Nail is termination; is that fair?

18   A.    Yes.

19   Q.    And the written reprimand, that's another form, a

20   lesser form of discipline?

21   A.    Yes.

22   Q.    But that doesn't apply to Officer Nail; is that a

23   fair statement?

24   A.    Yes, absolutely.

25   Q.    Okay.  And it indicates here --

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024

Page 36

1          MR. GALIPO:  And I don't know if you can enlarge it

2  slightly for the chief, Ben.

3  BY MR. GALIPO:

4      Q.   Is that large enough for you to see, Chief?

5      A.   It is.  It's fine.

6      Q.   Okay.

7          MR. GALIPO:  Thank you, Ben.

8  BY MR. GALIPO:

9      Q.   So the first sentence talks about Officer Nail being

10  a police officer for five years.

11          Do you see that?

12      A.   Yes.

13      Q.   And the second paragraph reference the fact that he

14  was also a field training officer?

15      A.   That's correct.

16      Q.   I take it you generally would expect better from a

17  field training officer as well; is that a fair statement?

18      A.   Definitely a higher standard in terms of

19  role-modeling, being an example to others.  And oftentimes

20  probationary employees will look to a more senior officer, in

21  this case a field training officer, for direction or even,

22  you know, what is acceptable.

23          So I think the role of field training officer is,

24  indeed, a higher standard.

25      Q.   Then we have a Section A under Roman Numeral III on

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024

Page 37

1    Page 3, and it says, "On July 27, 2022, you violated multiple
2    City and SRPD policies resulting in the unnecessary
3    escalation at a scene you were dispatched to as a cover
4    officer."
5           Do you see that section?
6    A.   Yes.
7    Q.   And based on your review of the materials, the
8    body-worn camera footage, the investigation, did you find,
9    Chief, that there was an unnecessary escalation at the scene
10   of this incident with Mr. Lopez?
11   A.   Yes.
12   Q.   And what are some of the factors that at least from
13   your perspective as the chief, that you felt it was an
14   unnecessary escalation by Officer Nail?
15   A.   Our officers are trained and expected to de-escalate
16   potential scenarios that might result in, you know, hands-on
17   situation.  Time and distance often allows for that
18   de-escalation.  Based on my recollection of the incident,
19   Officer Nail appeared to be -- to engage very quickly; to
20   agitate or trigger the subject, Mr. Lopez, and from basically
21   getting out of his car and engaging with Mr. Lopez, his
22   behavior escalated the situation.
23   Q.   And part of it was his use of language; is that
24   fair?
25   A.   Part of it was, but it wasn't just the language.

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024

Page 38

```
 1              It was just his engagement and his, you know, his

 2    engagement, his behavior.  And I would describe it as

 3    aggressive nature.

 4         Q.   And I think you mentioned earlier that Officer

 5    Mazariegos was still on probation at the time?

 6         A.   Yes, she was.

 7         Q.   And it sounds like her probation may have been

 8    extended for some medical issue?

 9         A.   Yes.  It was a maternity leave.

10              So in order to not lose the valuable window of

11    observation for a new employee, we typically would extend an

12    employee's probation for such a reason.

13         Q.   So in this case was Officer Nail in essence the

14    training officer for Officer Mazariegos?

15         A.   No.

16         Q.   Just happened that she was on probation?

17         A.   Yes.

18         Q.   Okay.  Thank you.

19              And then in the last paragraph on that page there is

20    a sentence that says, "Mr. Lopez took offense to your

21    language and calmly told you that you did not have to talk to

22    him in that manner."

23              Do you see that sentence?

24         A.   I do.

25         Q.   And I'm assuming that you reviewed this document
```

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024

Page 39

```
1   carefully before you signed off on it and before it was
2   submitted?
3       A.   Yes.
4       Q.   And did you agree with what was in this document in
5   terms of its content?
6       A.   Yes.
7       Q.   And then there is a sentence at the bottom of that
8   page that starts, "There is no reason for you to respond to
9   Mr. Lopez at all, let alone in this confrontational and
10  challenging manner.  Mr. Lopez apparently attempting to
11  de-escalate the situation replied in an even softer voice,
12  yes, yes."
13           Do you see those sentences?
14      A.   Yes, I do.
15      Q.   And those were part of the findings in the
16  investigation?
17      A.   Yes.
18      Q.   And you agreed with those?
19      A.   I did.
20      Q.   And going to the next paragraph, it says, "To be
21  clear, Mr. Lopez gave no indication that he may try to flee
22  the area or assault you or Officer Mazariegos."
23           And that obviously was important to the analysis; is
24  that fair?
25      A.   Yes.
```

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024

Page 40

1      Q.   Because obviously, if you have someone who is trying

2   to flee or assaultive, that then changes the dynamic?

3      A.   Agreed.

4      Q.   And the next sentence says, "Although he was

5   standing up instead of sitting, he continuously tried to

6   explain why he needed to stand up."

7           That again, I take it was part of the investigation

8   based on the body-worn camera footage?

9      A.   It was, yes.

10     Q.   It goes on to say, "You did not provide Mr. Lopez

11   the same courtesy of an explanation instead of communicating

12   Mr. Lopez about why Officer Mazariegos wanted him to sit

13   down, you and Officer Mazariegos approached Mr. Lopez and

14   grabbed him in an attempt to put him into handcuffs."

15          Do you see that sentence?

16     A.   Yes.

17     Q.   And again, this was based on I think primarily the

18   body-worn camera footage; is that your understanding?

19     A.   Yes, it is.

20     Q.   Goes on to say, "At no point while you were

21   approaching Mr. Lopez or trying to place him in handcuffs,

22   did you notify Mr. Lopez that he was being placed under

23   arrest.  Instead, you tripped Mr. Lopez which caused him to

24   fall onto the pavement."

25          Do you see that section?

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 41

1      A.   I do.

2      Q.   And some of this relates to the concept of

3   escalation; is that fair, Chief?

4      A.   Yes.

5      Q.   Because -- and I think you've already said this, but

6   the training and the hope is that your officers would

7   de-escalate a situation when they can safely do so?

8      A.   Absolutely.  That's the training and that's -- as

9   you characterized, the hope.

10      Q.   And when a situation like this is unnecessarily

11   escalated, it sometimes leads to bad results for everyone?

12      A.   Yes.

13      Q.   And you reference as the paragraph goes on, the

14   punch in the nose.

15          You were aware that Officer Nail punched Mr. Lopez

16   in the nose?

17      A.   Yes.

18      Q.   And I think you probably saw it at some point in the

19   body-worn camera footage, the bleeding from Mr. Lopez?

20      A.   I did, yes.

21      Q.   I take it that punching someone in the face is

22   obviously a reportable use of force?

23      A.   Yes, absolutely.

24      Q.   And you want to make sure when your officers are

25   punching someone in the face, there is circumstances that

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 42

 1   justify that; is that fair?

 2       A.   Yes.

 3       Q.   **From your perspective did you feel it was**

 4   **appropriate for Officer Nail to punch Mr. Lopez in the**

 5   **face?**

 6       A.   Based on my review of the independent investigation,

 7   Mr. Henry's work, and my review of the video, it was

 8   determined that the punch or the strike or the distraction

 9   blow where Officer Nail struck Mr. Lopez in the nose was not

10   out of policy and was appropriate based on the circumstances

11   presented, including Officer Nail's frame of mind.

12       Q.   Do you know who paid the reviewer?

13            Did the City pay him for his work on the review, Mr.

14   Henry?

15       A.   Did the City pay Mr. Henry for his investigative

16   work?

17       Q.   Yes.

18       A.   Yes, the City did.

19       Q.   Do you have any recollection what that amount was,

20   approximately, that he was paid?

21       A.   I don't recall if I even was aware of how much it

22   was.  It was likely paid by the City Attorney's Office.

23       Q.   And do you know if Mr. Henry ever did a prior

24   investigation in use of force incident for your department

25   before you were chief?

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 43

1      A.   I don't believe so.  If that occurred it was years

2   before my tenure here.  I'm not aware of any work that he's

3   done for us.

4      Q.   Generally, just so I can understand the training and

5   policy of your department, when is it appropriate to punch

6   another person forcefully in the face based on your training

7   or policies?

8      A.   So as you describe it, it would be described or

9   included in department training as a distraction blow.  If an

10  officer is trying to gain control of a suspect who is

11  actively resisting or struggling to get a suspect or subject

12  into handcuffs, and they're grabbing at the officer, or, you

13  know, forcefully pulling their hands and wrists away, in

14  certain cases a distraction blow will result in an officer's

15  ability to gain control and compliance of the individual.

16          As an example, a suspect is grabbing at an officer's

17  belt or some piece of equipment, a distraction blow might

18  often take the suspect's hands or distract the suspect to

19  where they remove their hands or their intention to whatever

20  it was they were focused on.

21          So in a case like that, a distraction blow may be

22  successful in terms of an officer gaining compliance or gain

23  control of the suspect.

24      Q.   And in terms of distraction blows, are the officers

25  in your department trained to punch someone in the nose?

**JULIO JIMENEZ LOPEZ, ET AL. vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 44

1      A.    Strike to the nose could be effective, and yes -- I

2   review our defensive tactics staff, arrest and control staff.

3   I review their outlines and the content of their training

4   material, and that's in some cases acceptable and appropriate

5   based on the circumstances that an officer is confronted

6   with.

7      Q.    And it sounds like from your review of this

8   investigation, you believe that Officer Nail unnecessarily

9   escalated the situation; is that fair?

10     A.    Yes.

11     Q.    And that's what caused it to end up going how it

12   did?

13     A.    You know, in any given circumstance or any given set

14   of circumstances can change a lot of different intersections

15   throughout a contact or throughout an incident.  Officer

16   Nail's role in this case was as a cover officer.  He exited

17   his vehicle and immediately engaged the suspect that Officer

18   Mazariegos was responsible for facilitating.  So she was

19   gathering information, prepared -- likely preparing to issue

20   a citation.  And Officer Nail's role should have been to

21   cover Officer Mazariegos, not to intercede or escalate an

22   encounter.

23     Q.    And you indicated previously that Mr. Lopez

24   generally was responding in a calm manner; is that fair?

25     A.    Yeah.  He appeared to be fairly compliant early on

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 45

1    in the contact and was following Officer Mazariegos'

2    directions.

3        Q.   And was there any indication from your review that

4    Mr. Lopez verbally threatened to harm either one of the

5    officers?

6        A.   No.

7        Q.   Any indication from your review that he tried to

8    punch or kick either of the officers?

9        A.   Prior to the physical confrontation there was no

10   indication of that.

11       Q.   Any indication he tried to grab their weapons, for

12   example?

13       A.   Prior to, again, prior to Officer Nail going

14   hands-on, there was no indication that he was going to --

15   telegraphing or indicating he might make such a movement.

16       Q.   And it sounds like the citation we're talking about,

17   is that an infraction, or what is that?

18       A.   It's a municipal code violation; it's infraction.

19       Q.   So I take it the officers could write that

20   infraction; they don't need to necessarily handcuff the

21   person or take him into custody; is that fair?

22       A.   Yeah.  It's a temporary detention in the field, and

23   they would be released on their written promise to appear.

24            It would not be a custodial scenario.

25       Q.   Okay.  That's helpful.

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024

Page 46

1          And going to the paragraph at the bottom of the page
2    we're looking at about midway down -- oh, in addition to the
3    punch, do you see the last -- the second last sentence of
4    that mid paragraph, you noted that Officer Nail shoved Mr.
5    Lopez's face towards the pavement.
6        A.   Yes.
7        Q.   Do you see that?
8             MR. GALIPO:  Can you put the cursor there, Ben, to
9    help the Chief?
10            THE WITNESS:  Yeah, I see it.
11   BY MR. GALIPO:
12       Q.   Okay.  And that was something that was noted in the
13   investigation?
14       A.   Yes.
15       Q.   And then going to the next paragraph about midway
16   down, there is a sentence that starts, "at no point."
17            MR. GALIPO:  Maybe you can put the cursor there,
18   Ben.
19   BY MR. GALIPO:
20       Q.   "At no point during your involvement in this
21   incident did you attempt to develop a rapport with Mr. Lopez
22   or try to gain his voluntary compliance with the directives
23   that you and Officer Mazariegos were giving.  Throughout the
24   encounter with Mr. Lopez you approached him in a
25   confrontational and challenging manner which further

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024

Page 47

```
 1   escalated the situation and resulted in you using force

 2   against Mr. Lopez."

 3           Do you see that portion that I'm reading?

 4       A.   I do.

 5       Q.   Were those part of your findings and part of the

 6   reason for the termination?

 7       A.   Yes.

 8       Q.   It goes on to say, "Your conduct towards Mr. Lopez

 9   was discourteous and disrespectful.  Even more concerning is

10   that you defended your conduct during your interview in the

11   Internal Affairs investigation and asserted that if

12   confronted with the same situation, you would not do anything

13   differently."

14           So let me ask you two questions on that.

15           I guess you did review his interview from the

16   Internal Affairs investigation at some point?

17       A.   I did.

18       Q.   And was that troubling to you that he indicated in

19   the interview that he wouldn't do anything differently if

20   confronted with the same situation?

21       A.   It was very troubling to me, yes.

22       Q.   Can you explain why, Chief.

23       A.   So oftentimes officers are confronted with a set of

24   circumstances on the street without a lot of time or ability

25   to analyze, and they are forced to react.  With the benefit
```

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 48

1  of hindsight, this question focuses on knowing what you know

2  now, would you do anything differently.

3         And Mr. Officer Nail's response was, no, that he

4  would not do anything differently.  For me to consider

5  putting that officer back on the street with that attitude or

6  that propensity to, you know, fail to de-escalate or

7  unnecessarily escalate an encounter suggests that it could

8  happen again on his very next shift.

9         And given the significant amount of dissatisfaction,

10  displeasure, and frustration that the community had shared in

11  the wake of this encounter, I don't think I would have my job

12  very long if I allowed that to be his perspective and sent

13  him back out on the street.

14     Q.  I understand.  You might have been hoping for

15  something like, gosh, you know, I just overreacted, and upon

16  reflection, you know, I would have handled it differently.

17         That would have maybe made you consider what to do

18  with this particular officer; is that fair?

19     A.  That's fair to say, yes.

20     Q.  Now, do you know, by the way, and if you don't

21  recall, it's fine, that at the time of this strike to Julio's

22  face by Officer Nail, if Julio's hands were on the ground

23  behind him at the time of this strike?

24     A.  I don't specifically -- at the time of the strike, I

25  don't recall.  I don't know.

Page 49

1    Q.    Okay.  Going to the next page, please, there is a

2    section that says, "Your conduct on July 27, 2022, resulted

3    in widespread community outrage towards the city and SRPD."

4          And I think you've told us a little bit about that

5    already.

6          Why did you feel it was important, Chief, to include

7    this in this memorandum?

8    A.    This officer's behavior brought significant

9    discredit to the organization.  This officer's conduct

10   brought significant discredit to the San Rafael Police

11   Department.

12   Q.    And it sounds like news agencies were reaching out

13   both locally and nationally regarding the incident?

14   A.    Yes.

15   Q.    And I take it from your perspective where you had

16   worked so hard to, you know, build trust and do everything

17   the right way, this must have been a big disappointment for

18   you?

19   A.    Yes.

20   Q.    Going to the next page, so there is a bunch of

21   bulletpoints, and then that first paragraph it references

22   your department receiving at least 85 angry voice messages

23   regarding the incident.

24         There were that many calls that your department

25   received?

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024

Page 50

1      A.   Easily, yeah, if not more.

2      Q.   And it says, "The community was so offended by your

3   conduct that violent threats were made against various SRPD

4   employees who responded to the calls."

5           And you were accused of covering up your actions.

6           Was there a contention, if you know, by some of

7   these outraged community members that you were somehow trying

8   to cover for this officer?

9      A.   I think there was a suspicion that the police

10  department would just cover this up and wouldn't hold the

11  officer or the responsible supervisors accountable.

12          Those were comments made in public meetings and

13  community meetings on some of the phone calls that were

14  received.  So yeah, that was communicated to us.

15     Q.   And it sounds like that was not where you were

16  coming from; you were going to do what was right; and you

17  wanted to conduct a thorough investigation?

18     A.   Yes, absolutely.  At the onset of this when this

19  matter became public, I released an open letter to the

20  community indicating my intention to investigate the matter,

21  and, you know, if -- I don't remember specifically what words

22  I used, but that, you know, if the behavior or conduct is

23  outside of policy, then officers would be held accountable.

24          So I tried to communicate from the very onset that

25  we would be conducting a thorough, detailed investigation

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024

Page 51

1  into all of the facts related to the incident and would

2  handle the matter appropriately based on the results of the

3  investigation.

4      Q.   And you indicate here that this even affected

5  employee morale?

6      A.   Very, very much so.

7      Q.   Can you explain that just briefly.

8      A.   As a part of that earlier paragraph referenced, some

9  of our call takers and records clerks received angry

10  threatening highly, highly inappropriate phone calls

11  threatening them, suggesting the potential for violent

12  assaults against them, let's see how you like it, you know, a

13  pattern of calls like that was received that dramatically

14  impacted the personal morale of some of the professional

15  staff members.  Sworn staff members experienced community

16  resistance in the course of their managing calls for service

17  on the street, repeated city counsel meetings suggested that

18  the city counsel and staff and other attendees to angry

19  comments of the community who came to the meeting to speak

20  out.

21         It was just a really dark difficult time in the wake

22  of this incident based on the media coverage and the

23  community's reaction.

24      Q.   And obviously, that for you was concerning and

25  disappointing; is that a fair statement?

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 52

1      A.    Yes.

2      Q.    But just to be clear -- and we can take this down

3    just for a moment before I go to the next page -- just to be

4    clear, Chief, your decision to find policy violations and to

5    terminate Officer Nail was based on the objective

6    investigation, not on the fact that members of the community

7    were upset or calling; is that fair?

8      A.    Yeah.  The discipline was entirely based on the

9    investigation that was provided to me by Mr. Henry.  All of

10   the evidence, all of the information that was provided to Mr.

11   Henry for the purposes of completing that investigation

12   including interviews of department members, and his attempt

13   to interview those who were involved in the incident, it's

14   the body of that work, that investigation, that led to my

15   determination of discipline.

16     Q.    And would it be fair to say that you yourself felt

17   there were policy violations even before Paul Henry gave you

18   his review?

19     A.    I would say there were possibly policy violations.

20           I wouldn't -- this matter needed to be investigated.

21   I could watch the video and say there's a policy violation,

22   but the incident in its entirety needed to be investigated

23   and analyzed, and it's that review that I based the

24   discipline.

25     Q.    So if somebody contended, Chief, that you based your

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 53

1  decision of discipline or the finding of policy violations

2  simply because of the public outrage, you would respectfully

3  disagree with that?

4      A.   Absolutely.

5      Q.   And in this case whether there was public outrage or

6  not, your findings from your perspective would have been the

7  same?

8      A.   Yes.  There is just one element, and that's bringing

9  discredit to the organization.  So there is one allegation I

10  believe in terms of Officer Nail's behavior and the

11  community's reaction to that behavior is associated to the

12  community's reaction.  But it's not because people angrily

13  spoke to the city counsel.  It's not because of 85 phone

14  calls to our call takers that Officer Nail is no longer

15  employed here.  It's the totality of that body of work, that

16  investigation completed by Mr. Henry that allowed me to make

17  the determination regarding Officer Nail's discipline.

18      Q.   And at the time you made the decision to terminate,

19  did you feel it was well-supported by the investigation and

20  the evidence before you?

21      A.   Absolutely, yeah.  I think any human police chief

22  will share if they're to be honest, that it's always a

23  struggle.  We're dealing with people, and, you know, families

24  and the ability to support their families.  It's not easy,

25  but I believe the decision was appropriate and reflective of

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024

Page 54

1    the thorough investigation.

2        Q.   There is a sentence if we can go to that page, and

3    I'm almost down with this.

4            MR. GALIPO:  This would be that paragraph that

5    starts on September 6, 2022, if we can pull that back up,

6    Ben.

7    BY MR. GALIPO:

8        Q.   About midway down it says, "The community

9    overwhelmingly expressed their anger, shame, sadness, and

10   loss of trust in the SRPD as a result of your conduct."

11           Was that some of the feedback you were getting from

12   the communications from the community?

13       A.   Yes.

14       Q.   And then going to the next page, there is a Section

15   C, Conclusion.  The last sentence of the first paragraph

16   says, "Other relevant factors include the circumstances

17   surrounding the misconduct and the likelihood of its

18   recurrence."

19           I think we've spoken about the circumstances

20   already; correct?

21       A.   Yes.

22       Q.   And the likelihood of recurrance, was that based in

23   part on his response in the interview that he wouldn't do

24   anything differently?

25       A.   Yes.

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024

Page 55

1    Q.   And then the next paragraph says, "However, you

2   failed to appropriately provide her cover and escalated the

3   situation in a manner contrary to SRPD policy.

4         Do you see that?

5    A.   Yes, I do.

6    Q.   And I don't need the policy number, but generally,

7   what is the policy you're referring to?

8    A.   It's our -- it's how we train.  It's our policy in

9   terms of use of force and the essential pursuit of

10  de-escalation to avoid physical confrontation whenever

11  possible.

12   Q.   And later on you say three sentences up, "Your

13  actions escalated the situation which ultimately created a

14  dangerous situation."

15        Do you see that?

16   A.   Yes.

17   Q.   That was part of your findings as well?

18   A.   It was, yes.

19   Q.   And then the last paragraph summarizes the notice of

20  intent to terminate for various violations?

21   A.   Yes.

22   Q.   Okay.

23        MR. GALIPO:  Thank you.  You can take that down,

24  Ben.

25  BY MR. GALIPO:

**JULIO JIMENEZ LOPEZ, ET AL. vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 56

1    Q.   Now, are you aware that the officer is attempting to

2    get his job back?

3    A.   I'm aware.

4    Q.   And there is procedures put in place for an officer

5    to attempt to do that with counsel if they so choose?

6    A.   Yes.

7    Q.   Have you been asked to participate in those

8    proceedings in any way?

9    A.   I have.

10   Q.   And I don't want to violate any communications with

11   any attorney of yours, but in what manner are you

12   participating?

13   A.   I have been asked to provide testimony and that's --

14   backing up a step.  So we are Police Officers Associations

15   enjoys binding arbitration.  So as Officer Nail's final

16   appeal, he is attempting to get his job back through the

17   arbitration process.  The arbitration is in progress.  I have

18   been asked to provide testimony, and I have been sitting in

19   through the entire proceeding.

20   Q.   And are you still supportive of the decision you

21   made?

22   A.   Yes.

23   Q.   And I take it that I think you've already said this,

24   but you independently agreed with the findings in Henry's

25   report?

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 57

1      A.   Yes.

2      Q.   So you didn't look at one of his findings where he

3   felt there was a violation and come to a different opinion

4   where you called Henry and said, no, I disagree with you?

5      A.   I did not.

6      Q.   And you actually agreed with his findings based on

7   your training and experience and knowledge?

8      A.   That's correct.   I concurred with the findings of

9   his investigation.

10      Q.   Now, are officers generally trained that if they act

11   outside of policy or inappropriately, they're not only

12   potentially subject to discipline, but they also could be

13   accountable for their actions if they unnecessarily injure

14   individuals?

15      A.   Yes.

16      Q.   Okay.

17           MR. GALIPO:  Is it okay if we take our last break

18   now for about ten minutes, and then I'm going to kind of get

19   on the phone with my co-counsel so they can tell me all the

20   questions I forgot to ask the Chief.

21           I'm just kidding a little bit.  And then we'll come

22   back and finish up.

23           Does that work for everyone?

24           MR. ALLEN:  Thanks, Dale.

25           MS. WILKINSON:  Yes, it does.

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024

Page 58

1          Thank you.

2          (Recess taken.)

3   BY MR. GALIPO:

4      Q.   With respect to the arbitration proceeding, are you

5   aware there is a further proceeding on Monday?

6      A.   I'm aware.

7      Q.   And you're planning on attending?

8      A.   I'm not planning on attending on Monday.

9      Q.   You have attended a few of the proceedings?

10     A.   Yes.  There was one afternoon I was unavailable, and

11  I had a command staff member available to the attorneys and

12  the same will be true on Monday.  I'll be out of the state,

13  so a command staff officer will be available to the

14  attorneys.

15     Q.   Okay.  And you've already testified in the

16  arbitration proceeding?

17     A.   Yes.

18     Q.   With respect to Corporal O'Ocon, were you aware that

19  he had offered testimony at the preliminary hearing of Mr.

20  Lopez?

21     A.   I am aware of that, yes.

22     Q.   Were you ever provided with the content of his

23  testimony with respect to whether the actions were within

24  policy or not of your department?

25     A.   I don't recall if I was provided a transcript.

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 59

1          I certainly don't have any recollection of his

2    testimony.

3      Q.    I take it if his testimony was that all of the

4    actions of Officer Nail were within policy, you would

5    disagree with that?

6      A.    Yes.

7      Q.    And obviously, there is a difference between

8    de-escalation and escalation; in some ways they're the

9    opposite?

10     A.    Yes, I would agree.

11     Q.    Was it brought to your attention that one of the

12   reasonings of Officer Nail in his interview was he wanted to

13   escalate the situation so he could de-escalate it, or

14   something to that effect?

15     A.    I'm aware of that testimony.  I believe -- I thought

16   it was Officer Nail that made that assertion.

17     Q.    Does that kind of counter to your understanding of

18   the training?

19     A.    Yes.

20     Q.    And with respect so the punch to the face, you would

21   agree that whether it's appropriate or not would depend on

22   the facts and circumstances?

23     A.    Absolutely.

24     Q.    I mean in a situation where you just have passive

25   resistance, you don't necessarily train your officers to

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024

Page 60

1    punch someone in the face, do you?

2        A.   No, we do not.

3        Q.   And officers are trained, I'm assuming, that

4    punching someone in the face could cause serious injury to

5    that person?

6        A.   Yes.

7        Q.   With respect to Mazariegos, we talked about her

8    briefly in the beginning.  But I guess she was on probation.

9    So she was -- I mean what was it essentially?

10            Was it terminated from probation or probation

11   discontinued?  What would be the right verbiage?

12       A.   She was released from employment as a probationary

13   employee.

14       Q.   And were there certain findings with respect to her

15   as to whether she inappropriately handled the situation?

16       A.   There were findings in Mr. Henry's investigation

17   about her conduct, yes.

18       Q.   And did you agree essentially with those findings?

19       A.   I did.

20       Q.   And did that support your decision to terminate her

21   employment?

22       A.   Yes.

23       Q.   Okay.  And then lastly, we're going to try --

24   sometimes this works, sometimes this doesn't to briefly show

25   a portion of the video.  I think we'll label it Exhibit 2,

Page 61

1  and I think it's a side-by-side video that was prepared.

2          You may have seen this before, but let's see if can

3  play it briefly so I can get the Chief to his meeting.

4          MS. WILKINSON:  Does it have a Bates stamp number,

5  Mr. Galipo?

6          MR. GALIPO:  I have no idea, but I will let you

7  know.

8          MS. WILKINSON:  Great.  Thank you.

9          (Exhibit 2 was marked for identification.)

10         MR. GALIPO:  Ben, does this have a Bates stamp

11  number?

12         MR. LEVINE:  Not that I'm aware of, but I'll review

13  to see, and if it does I can e-mail everyone after the

14  deposition.

15         MS. WILKINSON:  Thank you.  That would be helpful

16  for me.

17         MR. GALIPO:  And please send this to everyone.

18         Am I correct, Ben, this is the two body-worn cameras

19  put side-by-side and the attempt was to sync them?

20         MR. LEVINE:  Yes.

21         MR. GALIPO:  Okay.  Go ahead and play if you will.

22         (Video playing.)

23         MR. GALIPO:  Hopefully it has volume.

24         MR. GALIPO:  Let's stop it for a moment.

25         (Video paused.)

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024

Page 62

1          MR. GALIPO:  It's a little choppy and I lost the

2    sound.

3    BY MR. GALIPO:

4        Q.   Did that -- everyone hearing it, the sound went off,

5    and it started getting choppy.

6             Is that what it looked like to you, Chief?

7        A.   Yes.

8        Q.   Okay.

9          MR. GALIPO:  Let's try a little bit more, and if we

10   can't make it happen, it's okay.

11            Let's play it a little bit more because I had a

12   question or two for the chief, but --

13          MR. EMISON:  And Dale, before Ben plays it, this is

14   Theo.  The sound goes out because the videos were slowed down

15   into slo-mo.  So if the sound is not present during the

16   portion of the videos that are in slo-mo.

17          MR. GALIPO:  Okay.  Understood.  Thank you for that,

18   Theo.  That explains it.

19            Continue to play it, please.

20            (Video playing.)

21          MR. GALIPO:  We can stop that.

22            (Video paused.)

23          MR. GALIPO:  We can take that down, Ben.

24   BY MR. GALIPO:

25       Q.   I don't know how helpful that was quite frankly.

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 63

1    But I think there was an attempt to put them

2    side-by-side to slow it down.

3    I take it, Chief, you carefully looked at the video

4    footage from the body-worn cameras in the investigation?

5    A.   Yes.

6    Q.   And that was part of the basis for your eventual

7    findings, concurrence with the reviewing expert, and your

8    ultimate decisions regarding these two officers?

9    A.   Yes, that's correct.

10    Q.   Okay.

11    MR. GALIPO:  I don't have any further questions of

12    the chief.  I would like to get to him to his meeting, but I

13    don't know if Alison or Dale have any follow-up.

14    MR. ALLEN:  No questions.

15    MS. WILKINSON:  Excuse me.  No questions.

16    MR. GALIPO:  Okay.  Let's go off the record.

17    (Deposition proceeding concluded at 12:12 p.m.)

18    *   *   *

19

20

21

22

23

24

25

**JULIO JIMENEZ LOPEZ, ET AL. vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 64

1          DECLARATION UNDER PENALTY OF PERJURY

2

3    Case Name:  Julio Jimenez Lopez, et al. vs. City of San

4    Rafael, et al.

5    Date of Deposition:  August 15, 2024

6    Job No.:  85934

7

8              I, _____, hereby certify

9    under penalty of perjury under the laws of the State of

10   California that the foregoing is true and correct.

11             Executed this _____ day of _____,

12   20_____, at _____, California.

13

14

15

16

17

18                        _____

19                                DAVID SPILLER

20

21

22

23

24

25

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

1                          CERTIFICATE

2                              OF

3            CERTIFIED STENOGRAPHIC SHORTHAND REPORTER

4

5            I, JINNA GRACE KIM, CSR No. 14151, a Certified

6   Stenographic Shorthand Reporter of the State of California,

7   do hereby certify:

8            That the foregoing proceedings were taken before me

9   at the time and place herein set forth;

10           That any witnesses in the foregoing proceedings,

11  prior to testifying, were placed under oath;

12           That a verbatim record of the proceedings was made

13  by me, using machine shorthand, which was thereafter

14  transcribed under my direction;

15           Further, that the foregoing is an accurate

16  transcription thereof.

17           I further certify that I am neither financially

18  interested in the action, nor a relative or employee of any

19  attorney of any of the parties.

20

21           IN WITNESS WHEREOF, I have subscribed my name, this

22  date:  August 15, 2024.

23

24  _____

        Jinna Grace Kim, CSR No. 14151

25

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
David Spiller - Morning depo on 08/15/2024

Page 66

```
 1   DEPOSITION ERRATA SHEET

 2   Case Name:  Julio Jimenez Lopez, et al. vs. City of San

 3   Rafael, et al.

 4   Witness:  David Spiller

 5   Date of Deposition:  August 15, 2024

 6   Job No.:  85934

 7   Reason Codes:  1. To clarify the record.

 8                  2. To conform to the facts.

 9                  3. To correct transcription errors.

10

11   Page _____ Line _____ Reason _____

12   From _____ To _____

13   Page _____ Line _____ Reason _____

14   From _____ To _____

15   Page _____ Line _____ Reason _____

16   From _____ To _____

17   Page _____ Line _____ Reason _____

18   From _____ To _____

19   Page _____ Line _____ Reason _____

20   From _____ To _____

21   Page _____ Line _____ Reason _____

22   From _____ To _____

23   Page _____ Line _____ Reason _____

24   From _____ To _____

25   Page _____ Line _____ Reason _____
```

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**

Page 67

```
 1   DEPOSITION ERRATA SHEET

 2   From _____  To _____

 3   Page _____ Line _____ Reason _____

 4   From _____  To _____

 5   Page _____ Line _____ Reason _____

 6   From _____  To _____

 7   Page _____ Line _____ Reason _____

 8   From _____  To _____

 9   Page _____ Line _____ Reason _____

10   From _____  To _____

11   Page _____ Line _____ Reason _____

12   From _____  To _____

13   Page _____ Line _____ Reason _____

14   From _____  To _____

15   Page _____ Line _____ Reason _____

16   From _____  To _____

17

18   _____ Subject to the above changes, I certify that the

19   transcript is true and correct.

20   _____ No changes have been made.  I certify that the

21   transcript is true and correct.

22

23            _____

24                     DAVID SPILLER

25
```

**Exhibits**

**SpillerD 1**
  4:8 32:18,
  19

**SpillerD 2**
  4:9 60:25
  61:9

---

**1**

**1** 32:18,19
  34:3

**10:45** 26:7

**11** 33:12

**11:00** 26:9
  32:11

**12:12** 63:17

**15** 5:2

**15-minute**
  32:10

**1988** 7:8

**1991** 7:20,
  22

---

**2**

**2** 34:14
  60:25 61:9

**2002** 7:23

**2011** 8:18

**2019** 8:20

**2021** 7:12

**8:25**

**2022** 8:8
  22:22
  27:11 37:1
  49:2 54:5

**2023** 33:12

**2024** 5:2

**27** 37:1
  49:2

---

**3**

**3** 37:1

**30** 27:22,24
  28:4,16

---

**6**

**6** 54:5

---

**8**

**85** 49:22
  53:13

---

**9**

**90's** 9:23

**9:59** 5:3

---

**A**

**A.M.** 5:3

**ability**
  43:15
  47:24

**53:24**

**absence** 10:1

**absolutely**
  6:22 12:24
  17:9 35:24
  41:8,23
  50:18
  53:4,21
  59:23

**academy** 7:7,
  8,17

**acceptable**
  36:22 44:4

**accordance**
  22:12,15

**accountable**
  50:11,23
  57:13

**accurately**
  35:16

**accused** 50:5

**acquire**
  17:10

**act** 57:10

**acting** 11:9
  26:17

**actions**
  18:24
  19:19
  25:22
  30:18 50:5
  55:13
  57:13
  58:23 59:4

**activations**
  27:5

**actively**
  28:11
  43:11

**addition** 7:2
  46:2

**additional**
  13:22
  17:10 32:2

**administrative**
  28:7

**advantage**
  20:11

**Affairs**
  14:23
  18:19,23
  19:3 25:6,
  13 47:11,
  16

**affected**
  51:4

**affiliate**
  23:24

**affiliated**
  7:4

**aftermath**
  23:5

**afternoon**
  58:10

**agencies**
  49:12

**agency** 11:9

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024    Index: agent..Association

agent  7:24
  9:24

aggressive
  38:3

agitate
  37:20

agree  24:20
  39:4
  59:10,21
  60:18

agreed  11:18
  39:18 40:3
  56:24 57:6

agrees  10:24

ahead  61:21

Alison  63:13

allegation
  53:9

allegations
  19:8 28:23
  29:5

ALLEN  32:12
  57:24
  63:14

allowed
  48:12
  53:16

amount  21:1
  42:19 48:9

analysis
  13:17
  18:9,16
  25:9,12

27:20
  39:23

analyze
  47:25

analyzed
  52:23

and/or  19:4
  34:22

anger  54:9

angrily
  53:12

angry  49:22
  51:9,18

answering
  15:14

anti-san
  21:23

Anza  6:23

apparently
  39:10

appeal  23:18
  56:16

appeared
  37:19
  44:25

application
  13:4,10,16
  18:13
  19:19 20:6
  23:7 26:21

applications
  10:2

apply  35:22

appointed
  8:19

appraisal
  13:11

approached
  40:13
  46:24

approaching
  40:21

appropriately
  13:25 51:2
  55:2

approval
  27:17

approximately
  8:16 28:16
  42:20

arbitration
  56:15,17
  58:4,16

area  39:22

areas  29:11

arraignment
  16:25

arrest  40:23
  44:2

arrested
  21:13

arrests
  27:18

arrived  23:1

Art  6:24

articulated
  28:18

aspect  25:6

assault
  39:22

assaultive
  40:2

assaults
  51:12

asserted
  29:16
  47:11

assertion
  59:16

assessing
  26:20

assigned
  10:7 13:11
  16:13
  27:15

assigning
  20:7

assignment
  8:23

assignments
  7:23

Associates's
  6:22

Association
  8:6,8
  34:24

Associations
  56:14

assume   8:24

assuming
  38:25 60:3

attempt
  40:14
  46:21
  52:12 56:5
  61:19 63:1

attempting
  39:10
  56:1,16

attendance
  16:25

attended
  58:9

attendees
  51:18

attending
  58:7,8

attention
  59:11

attitude
  48:5

attorney
  17:2 21:4
  23:15
  34:11
  56:11

Attorney's
  42:22

attorneys

58:11,14

August   5:2
  17:19

avoid   55:10

aware   21:10
  27:23 28:3
  41:15
  42:21 43:2
  56:1,3
  58:5,6,18,
  21 59:15
  61:12

———————————

B

———————————

Bachelor's
  6:24

back   8:17
  26:8 32:11
  48:5,13
  54:5 56:2,
  16 57:22

background
  6:19,20
  24:6

backing
  56:14

bad   41:11

based   13:22
  14:22
  19:10,16,
  24 23:17
  24:22
  25:20,22
  37:7,18

40:8,17
  42:6,10
  43:6 44:5
  51:2,22
  52:5,8,23,
  25 54:22
  57:6

basic   15:4
  25:25

basically
  15:5 19:18
  21:19
  37:20

basis   35:2,9
  63:6

Bates   61:4,
  10

beginning
  15:8 60:8

behalf   5:5

behavior
  6:25 21:2
  23:20
  25:21,22
  30:14,18
  37:22 38:2
  49:8 50:22
  53:10,11

believed
  18:14

believing
  18:24

belt   43:17

Ben   32:23

36:2,7
  46:8,18
  54:6 55:24
  61:10,18
  62:13,23

benefit
  47:25

big   49:17

bill   20:6

binding
  56:15

bit   6:17,21
  7:14 32:24
  49:4 57:21
  62:9,11

bleeding
  41:19

blow   42:9
  43:9,14,
  17,21

blows   43:24

Board   8:5

body   12:23
  13:23
  17:3,15
  18:1
  19:12,17,
  20 22:9
  23:17 27:4
  52:14
  53:15

body-worn
  19:7 32:1
  37:8 40:8,

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024     Index: bookings..chief

18 41:19
61:18 63:4

**bookings**
27:18

**boss** 16:22

**Boston** 7:5

**bottom** 34:2
39:7 46:1

**bounced** 8:17

**Brandon**
12:14
32:21 33:9

**break** 6:1,2
8:21 26:8
31:13
32:10
57:17

**breaks** 6:1

**briefly** 51:7
60:8,24
61:3

**bringing**
23:4 53:8

**brought**
17:17
49:8,10
59:11

**build** 30:17
31:17,20
49:16

**building**
30:16

**bulletpoints**

34:15,16
49:21

**bunch** 34:14
49:20

---
**C**
---

**California**
5:1 7:3

**call** 51:9
53:14

**called** 5:5
9:17 57:4

**calling** 52:7

**calls** 21:22
49:24
50:4,13
51:10,13,
16 53:14

**calm** 44:24

**calmly** 38:21

**camera** 13:23
17:3,15
18:1
19:12,17,
20 22:9
23:17
27:4,5
32:1 37:8
40:8,18
41:19

**cameras** 19:7
61:18 63:4

**campaign**
21:23

**captain**
8:12,18
10:20
14:5,6,9
16:14,16,
17,18,22
17:6,12,16
18:12 19:9
20:22
25:11

**captain's**
25:14

**captains**
8:14,15

**car** 37:21

**care** 32:10

**career** 9:6,
16,21

**carefully**
39:1 63:3

**case** 14:18
19:20 20:8
22:9
23:11,24
25:5
28:11,24
34:12 35:6
36:21
38:13
43:21
44:16 53:5

**cases** 13:6
27:24 28:6
43:14 44:4

**categories**

12:16

**caused** 19:3
40:23
44:11

**centered**
16:24
22:21
25:23
27:2,7
28:6,24
29:6

**cetera** 13:3

**chain** 11:11
12:3,10
18:4,13
25:2 34:9

**challenging**
39:10
46:25

**change** 44:14

**characterized**
41:9

**chief** 7:9,
10,16
8:15,19,22
9:2,17
10:22,23
11:9,25
12:9 14:10
18:10
21:25 22:3
25:4 26:1
27:23 30:8
31:14,15
32:17 33:2

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024    Index: choke..conduct

36:2,4
37:9,13
41:3 42:25
46:9 47:22
49:6 52:4,
25 53:21
57:20 61:3
62:6,12
63:3,12

choke 29:8,9

choose 56:5

choppy 62:1,
5

circumstance
44:13

circumstances
15:2 41:25
42:10
44:5,14
47:24
54:16,19
59:22

citation
44:20
45:16

city 7:10,
19 8:10,
19,20,22
10:5,6
21:4 31:8
34:10,24
37:2
42:13,15,
18,22 49:3
51:17,18

53:13

clear 39:21
52:2,4

clerks 51:9

co-counsel
57:19

code 22:25
45:18

collaborativel
y 35:11

college 6:23
7:1,3

comfortable
26:1

command 7:3
8:24 10:2
11:13
12:10 19:7
20:8 25:2
34:9
58:11,13

commander
10:6
11:12,13,
16 14:5
16:14,17
25:3

commander's
14:13

commanders
8:16

commands
19:6

comments
50:12
51:19

common 6:10

communicate
50:24

communicated
21:1 50:14

communicating
40:11

communications
54:12
56:10

community
6:23 16:24
20:24
21:20
30:17
31:17,20,
23 48:10
49:3 50:2,
7,13,20
51:15,19
52:6 54:8,
12

community's
51:23
53:11,12

complete
27:19

completed
13:18
22:14
53:16

completing
52:11

compliance
43:15,22
46:22

compliant
44:25

concept 41:2

concern
14:14 17:1

concerns
18:13

concluded
63:17

Conclusion
54:15

conclusions
19:21

concur 14:4,
9 29:22

concurred
24:24
29:16 30:2
57:8

concurrence
63:7

concurs 14:9

conduct
19:13,15
29:1 30:14
31:24 32:3
47:8,10
49:2,9

50:3,17,22
54:10
60:17

conducting
50:25

confrontation
23:3 45:9
55:10

confrontationa
l   39:9
46:25

confronted
44:5
47:12,20,
23

consideration
20:18

considered
12:20

contact
22:23
44:15 45:1

contended
52:25

content
13:21 39:5
44:3 58:22

contention
50:6

continue
31:22
62:19

continuously
40:5

contrary
55:3

control
28:11
43:10,15,
23 44:2

conversations
21:3

copied   17:5

corporal
7:25 16:2,
9 23:6
25:23
31:12
58:18

correct   11:4
12:12
33:10
36:15
54:20 57:8
61:18 63:9

counsel
34:11
51:17,18
53:13 56:5

counter
59:17

country
21:21

County   16:24

couples   15:6

court   6:6,8,
12 16:8,24
19:8

courtesy
40:11

courtroom
21:12

cover   23:1
37:3
44:16,21
50:8,10
55:2

coverage
51:22

covered   23:5

covering
50:5

created
55:13

criminal
23:11

Cupertino
6:23

current   7:15
9:2,17
12:8

cursor   46:8,
17

custodial
45:24

custody
45:21

_____
_____
                 D
_____
_____

DA   23:16

Daisy   25:21

Dale   57:24
62:13
63:13

dangerous
55:14

dark   51:21

date   28:13
33:23

dated   33:12

Dave   5:12

DAVID   5:4

day   17:22,
23

days   27:22,
24 28:4,16

De   6:23

de-escalate
37:15
39:11 41:7
48:6 59:13

de-escalation
37:18
55:10 59:8

deal   21:25
22:4

dealing
53:23

decide   30:9

decision
10:24
11:22

20:20 30:4
52:4 53:1,
18,25
56:20
60:20

decisions
  63:8

deeper  12:5
  19:25
  31:22

defendant
  21:14

defended
  47:10

defensive
  9:14 44:2

deficiencies
  26:14

degree  6:22,
  24 7:1

delay  27:4
  28:9

department
  7:20,21
  8:24 9:14
  12:17
  21:19,24
  24:2 27:2
  29:14
  30:16
  31:16 32:6
  34:20,25
  42:24
  43:5,9,25
  49:11,22,

24 50:10
52:12
58:24

depend  10:16
  59:21

deposition
  15:10,18
  26:17
  61:14
  63:17

describe
  20:25
  21:18
  28:10
  31:18 38:2
  43:8

detailed
  24:23
  50:25

details
  13:18,25
  14:7,8,22
  17:13,21
  20:9

detectives
  14:25

detention
  45:22

determination
  13:22,24
  19:12
  20:10,14
  21:4 23:19
  26:21
  52:15

53:17

determinations
  10:10
  24:25

determined
  20:2 42:8

develop
  46:21

devices  9:15

Diego  7:18,
  19

difference
  59:7

differently
  47:13,19
  48:2,4,16
  54:24

difficult
  6:8,12
  51:21

diligence
  19:22

diligent
  26:25

direct  8:14

directed
  13:5

direction
  17:12
  36:21

directions
  45:2

directives
  46:22

directly
  8:15

disagree
  53:3 57:4
  59:5

disagreed
  11:18

disappointing
  51:25

disappointment
  49:17

discipline
  11:20 12:7
  30:5,9,24
  33:21
  35:5,10,
  14,20
  52:8,15,24
  53:1,17
  57:12

discontinued
  60:11

discourteous
  47:9

discredit
  49:9,10
  53:9

disdain  21:2

dismissed
  23:13,16

dispatched
  37:3

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024 Index: displeasure..entirety

displeasure
  48:10

disrespectful
  47:9

dissatisfactio
n  21:1,10,
  12,15 48:9

distance
  37:17

distinct
  25:19

distinctly
  17:18

distract
  43:18

distraction
  42:8 43:9,
  14,17,21,
  24

district
  17:2 23:15

dive  19:25

division
  8:16,17,18
  10:6,8,20
  11:12
  14:5,13
  16:16

document
  13:16 25:9
  32:15,23
  33:2,6,17
  34:7,9
  35:12

38:25 39:4

documentation
  13:2 23:8

documented
  14:1 20:23

documents
  15:9,12,
  15,19
  17:23,24

dramatically
  51:13

duly  5:6

duties  27:1

duty  16:4

dynamic  40:2

―――――――
        E
―――――――

e-mail  16:22
  17:5,18
  19:10
  21:22
  61:13

e-mailed
  16:22

e-mails  18:2

earlier  38:4
  51:8

early  17:19
  44:25

Easily  50:1

easy  53:24

education
  7:2

educational
  6:20

effect  59:14

effective
  33:23 44:1

eight-month
  8:23

element  53:8

EMISON  62:13

employed
  53:15

employee
  38:11 51:5
  60:13

employee's
  38:12

employees
  36:20 50:4

employment
  24:2 31:8
  60:12,21

encounter
  14:20
  44:22
  46:24
  48:7,11

end  27:15
  44:11

endeavoring
  30:17

ended  19:11

enforcement
  9:16 21:7
  24:7 28:2
  31:19

engage  37:19

engaged
  28:23
  44:17

engagement
  23:2 38:1,
  2

engaging
  37:21

enjoys  56:15

enlarge
  32:24 36:1

ensuing  23:3

ensure  11:11
  12:3 21:3
  26:24

ensuring
  20:23

entail  20:1,
  7

entailed
  22:18

entire  11:10
  14:7 22:22
  56:19

entirety
  52:22

entitled
35:2

environment
21:19

equipment
43:17

escalate
44:21 48:7
59:13

escalated
37:22
41:11 44:9
47:1 55:2,
13

escalation
37:3,9,14
41:3 59:8

essence
33:19
34:22
38:13

essential
55:9

essentially
14:6 24:20
60:9,18

establish
31:16

estimate
21:9

evaluation
31:6

events  8:2

eventual
63:6

eventually
17:24
23:11
24:15

evidence
13:23
52:10
53:20

exact  14:6

EXAMINATION
5:8

examined  5:6

excessive
28:24 29:6

excuse  28:18
31:12
63:15

executing
26:25

exhibit
32:18,19
60:25 61:9

exited  44:16

expect  17:22
36:16

expected
37:15

experience
24:7 57:7

experienced
51:15

expert  24:4
63:7

expertise
24:7

explain  26:2
40:6 47:22
51:7

explained
25:2 26:12

explains
62:18

explanation
40:11

exploded
21:20

expressed
54:9

extend  38:11

extended
31:4 38:8

extreme  28:6

eyes  32:25

_____

**F**

_____

face  12:22
41:21,25
42:5 43:6
46:5 48:22
59:20
60:1,4

facilitating
44:18

fact  20:10
22:14 23:7
29:14,17
36:13 52:6

factor  18:22

factors  19:5
20:19
23:20
37:12
54:16

facts  24:24
35:5 51:1
59:22

factual  29:1
35:2,9

fail  48:6

failed  55:2

fair  22:1
24:6 31:14
32:3
35:17,23
36:17
37:24
39:24 41:3
42:1 44:9,
24 45:21
48:18,19
51:25
52:7,16

fairly  44:25

fall  40:24

falls  30:7

false  28:25
29:6

**families**
53:23,24

**fast** 7:14

**faster** 6:7

**feedback**
54:11

**feel** 42:3
49:6 53:19

**felt** 29:8
37:13
52:16 57:3

**field** 9:25
36:14,17,
21,23
45:22

**final** 12:1
34:9 56:15

**find** 37:8
52:4

**finding**
10:18
29:13 53:1

**findings**
10:14,25
11:17 12:4
24:16,20,
25 29:16,
25 33:20
39:15 47:5
53:6 55:17
56:24
57:2,6,8
60:14,16,
18 63:7

**fine** 6:4
15:21 26:7
28:20 36:5
48:21

**finish** 26:8,
9 57:22

**finished**
12:6

**flee** 39:21
40:2

**focused**
22:22
43:20

**focuses** 48:1

**follow-up**
63:13

**footage**
19:17 32:1
37:8 40:8,
18 41:19
63:4

**force** 9:12,
13,18,22
10:1,7,10,
12 11:6,10
12:2,10,
17,20,23,
25 13:4,
10,14,16,
17 14:1
15:13
17:1,4,14
18:3,6,8,
9,13,16
19:6,9,10,

**19** 20:2
21:14 23:8
25:8,12
26:21
27:13,20
28:8,25
29:6 41:22
42:24 47:1
55:9

**forced** 47:25

**forcefully**
43:6,13

**forgot** 15:8
57:20

**form** 35:19,
20

**formal** 7:2
20:5

**forwarded**
13:19
14:10

**forwarding**
26:22

**found** 24:22,
23

**frame** 15:5
42:11

**frame-by-frame**
19:23
20:13

**Francisco**
6:24

**frankly**
62:25

**frequency**
13:7

**FRIDAY** 5:2

**frustration**
48:10

**full** 5:10

**functional**
16:5

---

G

**gain** 43:10,
15,22
46:22

**gaining**
43:22

**Galipo** 5:9
32:9,14,
20,23 33:1
36:1,3,7,8
46:8,11,
17,19
54:4,7
55:23,25
57:17 58:3
61:5,6,10,
17,21,23,
24 62:1,3,
9,17,21,
23,24
63:11,16

**gather** 17:12

**gathering**
44:19

**gave** 39:21

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024   Index: general..imposition

52:17

general 13:1
21:9 22:16
27:1 28:21

generally
17:24 31:2
33:6 34:7,
16 36:16
43:4 44:24
55:6 57:10

generated
34:7

give 9:18
13:1

giving 46:23

good 6:3
32:9

gosh 48:15

grab 45:11

grabbed
40:14

grabbing
43:12,16

graduate
6:25 7:2

graduating
7:17

great 5:19
6:5,14
61:8

ground 23:4
48:22

grounds/
violations
34:3

guess 47:15
60:8

_____

H

H-O-L-T-O-N
16:12

half 7:12

handcuff
45:20

handcuffs
40:14,21
43:12

handle 22:1
51:2

handled
48:16
60:15

hands 43:13,
18,19
48:22

hands-on
37:16
45:14

handy 15:15

happen 13:2
16:7 25:5
48:8 62:10

happened
23:11
38:16

hard 31:15,
17 49:16

harm 45:4

head 11:10

hear 5:13

hearing 5:15
58:19 62:4

held 7:11
50:23

helpful
14:17
45:25
61:15
62:25

Henry 21:8
23:21,24
24:3,9,15
25:7,18
29:21 32:2
42:14,15,
23 52:9,
11,17
53:16 57:4

Henry's
29:15 42:7
56:24
60:16

high 21:16

higher
36:18,24

highly 51:10

hindsight
48:1

hire 20:17

hold 28:12
50:10

Holton 16:22
17:5

honest 53:22

hope 41:6,9

hoping 32:16
48:14

hours 17:19

human 53:21

_____

I

idea 61:6

identification
32:19 61:9

II 34:2

III 35:2,8
36:25

immediately
44:17

impact 9:15
30:15

impacted
51:14

important
39:23 49:6

imposed
35:14

imposition
12:7

Case 3:23-cv-03652-VC    Document 75-3    Filed 11/29/24    Page 80 of 94

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024: impressions..investigation

impressions
  24:8

inappropriate
  51:10

inappropriatel
y  57:11
  60:15

incident
  6:18  11:10
  12:2,13
  14:22
  16:2,4,13,
  17,20,21,
  23  17:4,14
  18:1  20:9,
  21,22,24
  21:2,17
  22:21,23
  23:9  24:8
  25:17
  27:3,9,10,
  13  28:3,13
  30:25  31:7
  37:10,18
  42:24
  44:15
  46:21
  49:13,23
  51:1,22
  52:13,22

incidents
  9:18,22
  10:5  11:6,
  21  12:11

include  9:9
  20:4  49:6

54:16

included
  27:3  29:1
  43:9

including
  17:14
  23:20
  27:17  32:2
  42:11
  52:12

inconsistency
  35:13

independent
  24:12  42:6

independently
  56:24

indicating
  45:15
  50:20

indication
  21:15
  39:21
  45:3,7,10,
  11,14

individual
  13:13
  23:21
  24:13
  43:15

individual's
  21:7

individuals
  22:24
  57:14

inform  17:11

information
  15:4  17:8
  21:11
  24:24
  26:22
  28:25  29:6
  44:19
  52:10

infraction
  45:17,18,
  20

initial
  14:12
  19:16
  21:11
  22:8,23

initiate
  14:15

injure  57:13

injury  60:4

input  9:18

Institute
  7:4

instructor
  9:14,15

intent  32:22
  33:14
  55:20

intention
  43:19
  50:20

interaction
  30:14

intercede
  44:21

interim  8:22
  11:3,9,24

internal
  14:15,23
  18:11,19,
  23  19:3
  25:6,13
  47:11,16

internally
  20:16

interrupt
  6:11

interruption
  25:6

intersections
  44:14

interview
  14:25
  47:10,15,
  19  52:13
  54:23
  59:12

interviews
  20:4  52:12

investigate
  19:13
  50:20

investigated
  28:11
  52:20,22

investigation
  12:5,6

**JULIO JIMENEZ LOPEZ, ET AL. vs CITY OF SAN RAFAEL, ET AL.**
David Spiller - Morning depo on 08/15/2024      Index: investigations..lieutenant

14:12,16,
23 15:7,25
16:1,11
18:11,14,
20,23
19:4,13,
16,25
20:1,4,7,
15 22:7,
11,14,17,
21 23:4,7
24:22
25:13,18,
23 27:2
28:15
29:12,15
32:2
33:20,21
34:21 37:8
39:16 40:7
42:6,24
44:8 46:13
47:11,16
50:17,25
51:3 52:6,
9,11,14
53:16,19
54:1 57:9
60:16 63:4

**investigations**
21:8 23:25
25:19
26:16

**investigative**
42:15

**investigator**
20:17 21:5

**investigators**
14:25

**involved**
9:3,6
11:5,21,24
12:9 14:25
16:10,14
52:13

**involvement**
11:8 46:20

**involving**
12:14
25:19

**issue**  27:6
29:12
32:10 38:8
44:19

**issued**  27:9

**issues**  27:4
29:3,11

---
J
---

**job**  8:10
48:11
56:2,16

**journey**  7:14

**Julio's**
48:21,22

**July**  22:22
27:11 37:1
49:2

**jury**  23:18

**justify**  42:1

---
K
---

**Kennedy**  7:4

**kick**  45:8

**kidding**
57:21

**kind**  28:9
57:18
59:17

**knew**  24:5

**knowing**  48:1

**knowledge**
22:11 57:7

---
L
---

**L-E-O-N**
16:16

**label**  60:25

**lack**  29:10

**language**
23:18
37:23,25
38:21

**large**  36:4

**lastly**  60:23

**lateraled**
7:20

**law**  9:16
21:7 24:7
28:2 31:19

**Leadership**
7:1

**leads**  41:11

**learn**  6:19
16:19
28:14

**learned**
16:21
17:4,7
18:3 20:21
27:10

**leave**  31:5
38:9

**led**  52:14

**left**  7:19
8:7,9,23

**Leon**  16:23
17:6,12,16

**Leon's**  25:11

**less-lethal**
9:15

**lesser**  35:20

**let alone**
39:9

**letter**  50:19

**level**  25:11,
14

**LEVINE**
61:12,20

**lieutenant**
8:11 10:4,
19 13:19,
20 14:3,7
16:10,12,
22 17:5

Case 3:23-cv-03652-VC    Document 75-3    Filed 11/29/24    Page 82 of 94

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024    Index: lieutenant's..men

18:12 19:9
25:3 26:23

lieutenant's
8:10 14:13

likelihood
54:17,22

Lisa  16:12

living  21:8

local  22:25

locally
21:20
49:13

long  7:11
20:21
48:12

longer  53:14

looked  62:6
63:3

Lopez  14:18,
20 23:2,4,
12 28:23
31:25
37:10,20,
21 38:20
39:9,10,21
40:10,12,
13,21,22,
23 41:15,
19 42:4,9
44:23 45:4
46:21,24
47:2,8
58:20

Lopez's  46:5

lose  38:10

loss  54:10

lost  62:1

lot  19:23
23:25
27:17
44:14
47:24

louder  5:16

_____

M

made  12:3
18:10,17
19:8,12
21:4 23:18
25:12,15
48:17
50:3,12
53:18
56:21
59:16

main  29:11

make  10:23
11:17
13:21,24
19:21
20:10
24:11 30:4
41:24
45:15
53:16
62:10

making
20:14,19
26:20

35:12

managed  8:2
20:16

Management
7:4

managing
51:16

manner  38:22
39:10
44:24
46:25 55:3
56:11

March  7:12
8:25

Marin  16:24

mark  32:18

marked  32:19
61:9

Mary's  7:1

material
44:4

materials
19:16 37:7

maternity
38:9

matter  15:9
19:2 22:12
23:6 35:15
50:19,20
51:2 52:20

Mazariegos
22:23
25:21

28:20,22
29:5,18
30:23,25
31:25
38:5,14
39:22
40:12,13
44:18,21
46:23 60:7

Mazariegos'
45:1

means  16:21

media  21:22
51:22

medical  31:5
38:8

meet  17:13

meeting
51:19 61:3
63:12

meetings
50:12,13
51:17

member  58:11

members
16:25 50:7
51:15
52:6,12

memorandum
34:23 49:7

memory  15:20
26:17

men  22:3

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
David Spiller - Morning depo on 08/15/2024    Index: Menlow..objective

Menlow  8:22,
  23 11:3,8

mentioned
  18:22 38:4

messages
  49:22

mid  9:23
  46:4

mid-sentence
  6:12

midway  46:2,
  15 54:8

mind  15:6
  42:11

minutes
  57:18

misconduct
  28:23
  29:12
  54:17

mission
  30:18

moment  52:3
  61:24

Monday  58:5,
  8,12

monitoring
  13:6

month  27:9

months  8:21

morale  51:5,
  14

morning
  17:19,21

morning's
  26:17

Mountain
  7:20,22
  8:4,8,9

movement
  45:15

multi-tasking
  27:16

multiple
  37:1

municipal
  22:24
  45:18

───────────

N

Nail  12:14
  14:18
  23:1,2,4
  25:20
  28:22
  29:3,14
  30:11
  31:24
  32:21 33:9
  35:17,22
  36:9
  37:14,19
  38:13
  41:15
  42:4,9
  44:8 45:13
  46:4 48:22

52:5 53:14
  59:4,12,16

Nail's  42:11
  44:16,20
  48:3
  53:10,17
  56:15

narrative
  14:8

nationally
  49:13

nature  38:3

necessarily
  19:22
  45:20
  59:25

needed  40:6
  52:20,22

never-ending
  31:18,21

newer  31:3

news  21:16
  49:12

night  16:13

normal  25:2
  27:12,14
  28:12

nose  41:14,
  16 42:9
  43:25 44:1

noted  46:4,
  12

notice  32:21

33:14
  55:19

noticed  35:7

notify  33:19
  40:22

November
  8:20

number  8:12
  19:5 55:6
  61:4,11

numbers
  33:22

Numeral
  33:22 34:2
  35:2,8
  36:25

───────────

O

O'CON  16:2,6
  25:23
  26:12,13

O'Con's  16:9
  23:6

O'OCON
  26:15,19
  27:3,9
  29:24
  31:9,11,12
  58:18

O'Ocon's
  28:15

O-C-O-N  16:9

objective

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024    Index: objectives..overreacted

52:5

objectives
  30:19

objectivity
  21:3 24:12

observation
  38:11

observations
  15:7
  19:18,21

obtain
  13:12,13
  15:4 20:9

occasions
  14:24

occurred
  15:4,6
  16:4,13
  21:12
  22:22 23:3
  26:14 43:1

offended
  50:2

offense
  38:20

offer   22:8

offered
  58:19

office   14:10
  17:21
  18:10,17,
  19 42:22

officer

7:15,19,22
8:6,8 9:16
12:14 13:4
14:18,25
20:4,8
22:23
23:1,2,3,5
25:20,21
26:19
27:3,8
28:2,15,
20,22
29:3,5,13,
18,24
30:11,23,
25 31:3,9,
10,11,24,
25 33:19
35:17,22
36:9,10,
14,17,20,
21,23
37:4,14,19
38:4,13,14
39:22
40:12,13
41:15
42:4,9,11
43:10,12,
22 44:5,8,
15,16,17,
20,21
45:1,13
46:4,23
48:3,5,18,
22 50:8,11
52:5
53:10,14,

17 56:1,4,
15 58:13
59:4,12,16

officer's
  15:5 19:19
  20:6 34:23
  43:14,16
  49:8,9

officer-
involved
  28:7

officers
  9:4,7
  13:13
  14:19,21
  20:5 26:25
  30:6 34:8
  37:15
  41:6,24
  43:24
  45:5,8,19
  47:23
  50:23
  56:14
  57:10
  59:25 60:3
  63:8

officers'
  21:2 23:20

oftentimes
  36:19
  47:23

on-scene
  15:3

onset   50:18,
  24

open   50:19

opinion   57:3

opposite
  59:9

optics   23:17

order   38:10

ordinance
  22:25

organization
  8:3,13
  13:16
  20:25 22:4
  30:15,19,
  20 49:9
  53:9

Organizational
  6:25

organizations
  31:19

original
  31:5

Oscar   16:2,5

outline   13:1

outlines
  44:3

outrage   49:3
  53:2,5

outraged
  50:7

overlap   6:10

overreacted
  48:15

Case 3:23-cv-03652-VC    Document 75-3    Filed 11/29/24    Page 85 of 94

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024    Index: overwhelmingly..policy

overwhelmingly
  54:9

---

P

---

p.m.  63:17

paid  42:12,
  20,22

paragraph
  36:13
  38:19
  39:20
  41:13
  46:1,4,15
  49:21 51:8
  54:4,15
  55:1,19

Park  8:23,
  24 11:3,8

part  20:17
  37:23,25
  39:15 40:7
  47:5 51:8
  54:23
  55:17 63:6

participate
  56:7

participating
  56:12

parts  12:22

passive
  59:24

patrol  8:1,
  17 9:25
  10:7,20

16:16,18
  20:23

pattern
  51:13

Paul  21:7
  23:21
  52:17

pause  6:13,
  14

paused  61:25
  62:22

pavement
  40:24 46:5

pay  42:13,
  15

peace  20:6

people  6:7
  11:16
  21:20
  53:12,23

performed
  13:24

performing
  26:25

period  31:5,
  6

person  43:6
  45:21 60:5

personal
  51:14

perspective
  37:13 42:3
  48:12

49:15 53:6

phone  21:22
  50:13
  51:10
  53:13
  57:19

physical
  45:9 55:10

piece  43:17

place  10:3
  12:6 15:2
  16:20,23
  40:21 56:4

Plaintiffs
  5:5

planning
  58:7,8

play  34:21
  61:3,21
  62:11,19

playing
  61:22
  62:20

plays  62:13

Pleasanton
  8:10,11,
  19,21
  10:5,6
  11:2

point  12:1,
  13 18:5,6
  27:20
  40:20
  41:18

46:16,20
  47:16

police  7:7,
  8,9,10,15,
  16,17,18,
  19,21,22,
  25 8:1,6,
  8,12,14,
  19,24 9:2,
  3,7,17,24
  10:3,22,23
  11:9,24
  12:9,14
  14:10,22
  15:12 17:3
  18:1 19:11
  21:19,23
  24:1,3
  27:2,23
  29:1,7
  30:8,16
  31:3,15
  34:23,25
  36:10
  49:10 50:9
  53:21
  56:14

policies
  29:2,4,14,
  17 32:5
  37:2 43:7

Policing  7:4

policy  9:19
  10:12
  12:4,5
  14:1,2,14
  18:15,24

20:3,10,11
25:1,16,
20,22,24
26:14,18,
22 27:7
29:11,19
34:25
42:10 43:5
50:23
52:4,17,
19,21 53:1
55:3,6,7,8
57:11
58:24 59:4

portion 33:5
47:3 60:25
62:16

position
7:11,16,24
8:11,12
9:2,24
10:9 11:3,
15 12:8

possibly
52:19

POST 7:3

potential
11:20
18:14
20:12
25:1,20,
21,24
26:3,18
27:4
28:24,25
37:16

51:11

potentially
57:12

practical
27:14

practice
24:4

prelim 16:25

preliminary
58:19

preparation
15:10

prepared
44:19 61:1

preparing
10:2 44:19

present
62:15

presented
24:24
42:11

president
8:5,7

pretty 5:20
21:16,22

previously
18:11
23:16
44:23

primarily
40:17

prior 22:5
24:2 26:16

42:23
45:9,13

probation
31:3,4,5
38:5,7,12,
16 60:8,10

probationary
31:1,6
36:20
60:12

procedures
56:4

proceeding
56:19
58:4,5,16
63:17

proceedings
56:8 58:9

process
56:17

processed
18:3

processing
19:9

produce
13:15

produced
35:10,11

profanity
29:10

professional
51:14

professionalis
m 29:2,10

profile
21:16

progress
56:17

promise
45:23

promoted
7:24,25
8:11 9:23

propensity
48:6

properly
20:23

proposed
33:21,23
34:3

protocol
13:1
27:12,14

protracted
28:7

provide
10:17,19,
21 14:3,5
17:13
40:10 55:2
56:13,18

provided
17:12,24
18:6 52:9,
10 58:22,
25

proximate
  28:13

public  7:1
  21:1,10,12
  50:12,19
  53:2,5

publicity
  22:5

pull  54:5

pulling
  43:13

punch  41:14
  42:4,8
  43:5,25
  45:8 46:3
  59:20 60:1

punched
  41:15

punches
  12:22

punching
  41:21,25
  60:4

purpose
  33:17

purposes
  24:12
  52:11

pursue  23:19
  31:22

pursuing
  20:15

pursuit  55:9

put  15:19
  32:15,23
  35:4 40:14
  46:8,17
  56:4 61:19
  63:1

putting  48:5

_____

Q

_____

question
  5:21 48:1
  62:12

questions
  5:20 15:1,
  14 32:17
  47:14
  57:20
  63:11,14,
  15

quickly
  37:19

_____

R

_____

radio  13:6

Rafael  7:10
  8:24 21:23
  24:1 27:1
  49:10

rapport
  46:21

reached
  21:21 24:9

reaching
  49:12

react  47:25

reacted
  20:24

reaction
  51:23
  53:11,12

reading
  17:18
  19:11 47:3

realize  6:7
  33:5

reason  5:21
  28:15
  38:12 39:8
  47:6

reasonings
  59:12

reasons
  28:15

recall  15:24
  17:17,22
  28:18
  42:21
  48:21,25
  58:25

received
  6:22,23,25
  19:11
  20:25
  49:25
  50:14
  51:9,13

receiving
  18:8 49:22

recess  32:13
  58:2

recognize
  33:6

recollection
  15:11,16
  37:18
  42:19 59:1

recommend
  30:13

recommendation
  10:25
  30:21,24

recommendation
s  10:11,15
  11:17,22
  24:16,21
  25:15
  31:10 35:5

recommended
  30:12
  31:11

record  5:11,
  25 6:14
  63:16

records  51:9

recurrance
  54:22

recurrence
  54:18

reference
  35:12
  36:13
  41:13

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024  Index: referenced..resulted

referenced
  51:8

references
  49:21

referring
  25:8  55:7

reflected
  30:15

reflection
  48:16

reflective
  24:23
  30:19
  53:25

refresh
  15:10,15

regulations
  34:19,24

related
  21:12  51:1

relates
  32:21  41:2

relationship
  30:16

relationships
  31:21,22

release   31:1

released
  31:1,7
  45:23
  50:19
  60:12

relevant

13:12,18
54:16

remains
  16:18

remember
  16:19
  17:18  18:8
  26:18  27:6
  28:19
  50:21

remotely   5:6

remove   43:19

repeated
  51:17

replied
  39:11

report   8:15
  13:17,21,
  22  14:8,22
  15:12,13
  18:1,3,6
  19:11
  24:16
  27:9,13,
  17,25
  28:5,9,16
  29:1,7
  56:25

reportable
  12:17,20,
  23,25
  41:22

reported
  17:2

reporter
  6:6,8,12
  16:8

reporting
  13:2  17:14
  27:3,4
  28:25

reports
  14:20  32:1

representation
  27:1

reprimand
  35:3,8,13,
  19

reputation
  24:5

request   6:2

required
  14:19,21
  23:8

requires
  20:3

resistance
  51:16
  59:25

resisting
  43:11

respect
  23:11
  26:15
  30:5,24
  31:25
  35:17
  58:4,18,23

59:20
60:7,14

respectfully
  53:2

respond
  13:5,8
  39:8

responded
  50:4

responding
  44:24

response
  48:3  54:23

responsibiliti
es  13:25
  25:24
  27:17  30:7

responsibility
  25:25
  26:24
  31:19

responsible
  10:1  13:11
  26:20
  44:18
  50:11

rest   15:7

result   23:9
  31:4  37:16
  43:14
  54:10

resulted
  25:18  47:1
  49:2

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024    Index: resulting..short

resulting
  37:2

results
  41:11  51:2

retired  8:20
  21:7

retirement
  8:22

review  6:18
  9:17  10:9,
  17,19,21
  11:10,14,
  17  12:2,13
  13:15,20,
  21,22
  14:4,7,12,
  13  15:9,12
  16:11
  17:14,25
  19:6,7,16
  20:9,12
  23:6  24:22
  25:14
  26:16
  27:18  28:8
  29:15
  33:20  37:7
  42:6,7,13
  44:2,3,7
  45:3,7
  47:15
  52:18,23
  61:12

reviewed
  10:6
  11:11,14

12:3  17:3
22:9  23:17
28:4  38:25

reviewer
  10:4  42:12

reviewing
  9:21  10:1
  11:6  12:10
  19:10  63:7

reviews
  14:11

rights  20:6

role  10:3,
  16  36:23
  44:16,20

role-modeling
  36:19

Roman  33:22
  34:2  35:1,
  8  36:25

Roy  16:16,
  22

rules  34:19,
  22,24

run  21:17

———————————

         S

———————————

S-P-I-L-L-E-R
  5:12

sadness  54:9

safely  41:7

Saint  7:1

San  6:24
  7:10,18,19
  8:24  24:1
  27:1  49:10

scenario
  45:24

scenarios
  37:16

scene  13:5,
  8,11  25:23
  26:20
  37:3,9

School  7:5

screen  15:19
  33:3

section  34:5
  35:4  36:25
  37:5  40:25
  49:2  54:14

sections
  34:22

Sector  7:1

send  61:17

sending  25:7

senior  7:3
  36:20

sense  13:7

sentence
  36:9
  38:20,23
  39:7  40:4,
  15  46:3,16
  54:2,15

sentences
  39:13
  55:12

sentiment
  21:24

separate
  25:19

September
  54:5

sergeant
  8:1,9  10:4
  16:3

sergeant's
  10:1

serve  31:23

service
  51:16

set  44:13
  47:23

shame  54:9

share  15:19
  53:22

share-screen
  32:16

shared  48:10

shift  13:11
  16:5,13
  27:16,20
  28:13  48:8

shooting
  28:7

short  6:13
  8:21  14:23

Case 3:23-cv-03652-VC    Document 75-3    Filed 11/29/24    Page 90 of 94

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024Index: shortly..sub-standard

shortly  7:25
  21:16
  32:11
shoved  46:4
show  60:24
side-by-side
  61:1,19
  63:2
signed  39:1
significant
  20:25
  21:1,23
  30:15 48:9
  49:8,10
similar  7:24
  29:5,18
simply  53:2
sit  40:12
sitting  8:7
  40:5 56:18
situation
  37:17,22
  39:11
  41:7,10
  44:9 47:1,
  12,20
  55:3,13,14
  59:13,24
  60:15
slightly
  36:2
slo-mo
  62:15,16

slow  63:2
slowed  62:14
slowly  6:9
small  8:1
social  21:21
softer  39:11
sort  24:3
sound  62:2,
  4,14,15
sounds  38:7
  44:7 45:16
  49:12
  50:15
speak  5:16
  6:5,7,9
  51:19
special  7:23
  8:2
specific
  28:24
specifically
  17:17
  26:18 29:7
  48:24
  50:21
spell  5:10
  16:7
Spiller  5:4,
  12
spoke  53:13
spoken  54:19
SRPD  37:2

49:3 50:3
  54:10 55:3
staff  10:2
  44:2
  51:15,18
  58:11,13
staff's
  19:6,7
stamp  61:4,
  10
stand  40:6
standard
  25:14
  36:18,24
standing
  40:5
start  8:25
  9:21 26:12
  30:11
started  12:8
  17:20 62:5
starting
  6:19 34:2
starts  39:8
  46:16 54:5
state  5:10
  21:21
  58:12
stated  5:25
statement
  13:12,13
  15:5 22:2
  29:10

31:14
  35:23
  36:17
  51:25
statements
  19:8 20:9
  29:7
step  56:14
steps  22:6,9
stop  14:15
  61:24
  62:21
stopped  18:9
  25:9,14
story  21:17
street  47:24
  48:5,13
  51:17
streets  7:18
strike  42:8
  44:1
  48:21,23,
  24
striper  16:3
struck  42:9
structure
  11:13
struggle
  23:3 53:23
struggling
  43:11
sub-standard
  32:3

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024 Index: subject..termination

subject
 18:11 20:5
 21:13
 33:14
 37:20
 43:11
 57:12

submit 10:14
 28:4

submitted
 18:4 39:2

submitting
 28:16

subordinate
 9:24 16:3
 31:20

subsequent
 23:2 25:12
 27:10,20

successful
 43:22

suggested
 51:17

suggesting
 51:11

suggests
 48:7

summaries
 10:2

summarily
 23:15

summarizes
 55:19

summary
 10:21

Superior
 16:23

supervising
 9:3

supervision
 11:16

supervisor
 8:2 9:24,
 25 10:17,
 18 11:12
 13:5,6,10,
 18,24
 15:3,6,24
 16:1,3,5
 20:8 25:3
 26:13,19,
 24 27:19,
 24 28:4

supervisor's
 13:19,21
 14:4,12
 27:13

supervisors
 27:16
 50:11

supervisory
 25:25

support 8:18
 21:14
 35:2,5,9
 53:24
 60:20

supporters

 21:13

supportive
 56:20

surrounding
 54:17

suspect 29:9
 43:10,11,
 16,18,23
 44:17

suspect's
 43:18

suspected
 20:3 22:24

suspension
 31:11

suspicion
 50:9

sustained
 21:23

sworn 5:6
 51:15

sync 61:19

————————————
         T
————————————

tactics
 9:10,14
 44:2

take-down
 12:19
 28:11

takers 51:9
 53:14

takes 19:22

taking 8:9

talk 13:12
 15:20
 38:21

talked 60:7

talking 7:13
 45:16

talks 36:9

task 31:21

team 9:25
 16:3

technologies
 20:12

telegraphing
 45:15

temporary
 45:22

ten 57:18

tenure 9:1
 11:5 43:2

terminate
 32:22
 33:14 52:5
 53:18
 55:20
 60:20

terminated
 60:10

termination
 30:12,13
 33:24 34:4
 35:6,8,17

47:6

**terms** 13:2
  25:13
  36:18 39:5
  43:22,24
  53:10 55:9

**test** 15:20

**testified**
  5:7 58:15

**testimony**
  56:13,18
  58:19,23
  59:2,3,15

**Theo** 62:14,
  18

**thing** 6:5
  14:6

**things** 19:24
  20:13
  27:18
  28:12

**thinking**
  24:13

**thought**
  10:11
  29:21
  59:15

**threatened**
  45:4

**threatening**
  51:10,11

**threats** 50:3

**till** 28:16

**time** 5:16
  6:1 7:23
  8:4,7
  10:20,23
  14:11
  16:17
  19:22
  20:11
  21:15 26:2
  32:9 35:7
  37:17 38:5
  47:24
  48:21,23,
  24 51:21
  53:18

**times** 9:3,6

**timing** 27:12

**told** 22:17
  38:21 49:4

**top** 27:5
  33:15

**totality**
  53:15

**train** 55:8
  59:25

**trained**
  37:15
  43:25
  57:10 60:3

**training**
  9:7,9
  36:14,17,
  21,23
  38:14
  41:6,8

43:4,6,9
  44:3 57:7
  59:18

**transcript**
  58:25

**transparency**
  24:11

**trigger**
  18:14,23,
  25 37:20

**triggered**
  18:19 19:4

**tripped**
  40:23

**trouble** 5:15

**troubling**
  47:18,21

**true** 58:12

**trust** 30:16
  31:16,20
  49:16
  54:10

**trusting**
  31:21,22

**turn** 27:22,
  25

**TV** 22:5

**type** 24:15

**types** 20:13
  21:8 27:18
  28:12

**typical** 11:1

**typically**
  20:8 27:15
  34:10
  38:11

———————

U

**ultimate**
  10:24
  35:14 63:8

**ultimately**
  29:13 30:4
  55:13

**unanswered**
  15:1

**unavailable**
  58:10

**undermined**
  30:18

**understand**
  5:21 23:16
  24:3 33:18
  43:4 48:14

**understandable**
  5:20

**understanding**
  19:2 22:16
  23:10,14
  26:3 27:8
  28:21
  34:23
  40:18
  59:17

**understood**
  6:15 23:15

JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.
David Spiller - Morning depo on 08/15/2024        Index: unit..written

62:17

unit  8:1
  10:17
  11:11

University
  6:24

unnecessarily
  41:10  44:8
  48:7  57:13

unnecessary
  37:2,9,14

unusual
  27:19,21
  28:8

update  17:13

upset  52:7

――――――――――
            V
――――――――――

valuable
  38:10

values  30:20

vehicle
  44:17

veracity
  29:9

verbally
  45:4

verbiage
  60:11

video  13:23
  17:15  18:2
  19:20

20:12
22:10
23:17  42:7
52:21
60:25
61:1,22,25
62:20,22
63:3

videoconferenc
e  5:6

videos
  62:14,16

View  7:20,
  22  8:4,8,9

viewed  25:16
  31:24  32:3

viewing  32:1

violate
  29:14
  56:10

violated
  29:4,17,22
  34:20  37:1

violating
  22:24

violation
  32:5  45:18
  52:21  57:3

violations
  25:1,20,
  22,24
  26:3,14,19
  28:21
  29:19,25
  52:4,17,19

53:1  55:20

violent  50:3
  51:11

voice  39:11
  49:22

volume  61:23

voluntary
  46:22

――――――――――
            W
――――――――――

wake  21:18
  30:25  31:7
  33:21
  48:11
  51:21

wanted  22:12
  24:11,12
  40:12
  50:17
  59:12

warranted
  19:25

watch  52:21

ways  59:8

weapons
  45:11

week  27:21

well-supported
  53:19

widespread
  49:3

WILKINSON

57:25
61:4,8,15
63:15

window  38:10

wishes
  22:13,15

witnesses
  13:12

women  22:3

words  50:21

work  13:21
  17:20  24:1
  27:21  28:2
  34:8,10
  42:7,13,16
  43:2  52:14
  53:15
  57:23

worked  7:18,
  23  23:21,
  23  31:15
  49:16

working
  31:15

works  60:24

wrestled
  20:15

wrists  43:13

write  14:19,
  21  24:15
  45:19

written
  35:3,13,19

**JULIO JIMENEZ LOPEZ, ET AL.vs CITY OF SAN RAFAEL, ET AL.**
**David Spiller - Morning depo on 08/15/2024**          Index: year..years

45:23

_____

**Y**
_____

**year**  8:10

**years**  7:12
 8:6,16
 28:3 36:10
 43:1