UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIO JIMENEZ LOPEZ, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>CITY OF SAN RAFAEL, et al.,<br><br>  Defendants. | Case No. 23-cv-03652-VC<br><br>**ORDER GRANTING IN PART, DENYING IN PART, MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 67 |

  Plaintiff Julio Jimenez Lopez and two friends were drinking in a park one evening when San Rafael Police Officers Brandon Nail and Daisy Mazariegos approached the group. After Mazariegos asked Jimenez Lopez for his ID, he stood up. When Mazariegos told him to sit down, Jimenez Lopez sat down again, but told her he needed to get his ID from his pants pockets. He stood up again, at which time Nail told him to "sit the fuck down." After some more verbal exchange, Nail grabbed Jimenez Lopez, punched him in the face, and detained him. Jimenez Lopez has sued Nail and Mazariegos, alleging they used excessive force in violation of the Fourth Amendment. He also seeks to hold the City liable for the officers' conduct pursuant to *Monell*.

  Jimenez Lopez separates out his claim for municipal liability against the City into three causes of action. It's not clear that's the right way to do it, but in any event, one is based on the contention that the constitutional violation was based on a municipal custom or practice, another is based on the contention that the violation was caused by a failure to train and supervise officers properly, and another is based on the alleged ratification of the conduct by the Police Chief. The parties agree that, because nobody has moved for summary judgment on the claims

against the individual officers, the Court should assume that there is a genuine dispute of material fact on whether the officers violated Jimenez Lopez's Fourth Amendment rights. The City seeks to dismiss all three causes of action. Each cause of action is addressed below, starting with the strongest one for Jimenez Lopez and ending with the weakest.

    1. Jimenez Lopez has provided sufficient evidence to create a genuine issue of material fact as to ratification. After the incident, the San Rafael City Attorney retained an outside investigator, former police officer Paul Henry, who investigated the incident and wrote a report on his findings. In that report, Henry found that the allegation that Nail used excessive force was unfounded and that his use of force did not violate the Department's policy on force. Dkt. No. 70-15, Exh. P to Defendant's Notice of Errata, Administrative Internal Affairs Investigative Report ("Henry Report") at 50–53. Police Chief David Spiller reviewed the Henry Report and adopted those findings in full.

    Jimenez Lopez argues that Chief Spiller's review and adoption of the Henry report constituted ratification of Nail's conduct. "Lower courts in the Ninth Circuit appear to be divided on whether an internal police investigation that concludes a shooting by its officers was lawful and within the municipality's policies is alone sufficient to support a theory of ratification for the purposes of *Monell* liability." *Peck v. County of Orange*, 501 F.Supp.3d 852, 871 (C.D. Cal. 2020) (quoting *German v. Roberts*, No. C15-5237 BHS-DWC, 2017 WL 3407052, at *3 (W.D. Wash. Aug. 9, 2017)) (internal quotation marks removed). Some have concluded that these circumstances create a triable question of fact as to ratification, while others have required "something more" for ratification, such as "conduct so outrageous that a reasonable administrator should have known that he or she should do something about it." *Id.* Even applying the stricter standard (which this Court is inclined to agree with, although the final decision will be made at the pretrial conference), a reasonable jury could find that Chief Spiller ratified the conduct, because a reasonable jury could easily find that Chief Spiller should have understood how outrageous it was (and understood that he never should have adopted Paul Henry's report).

    2. Jimenez Lopez has stipulated that he is not contending that any written or formal

policy was the cause of the violation. But he asserts that the Police Department has two customs or practices that led to the violation: (1) a custom of using profanity when dealing with members of the public, and (2) a custom of using excessive force. Only the first can survive summary judgment.

"In order to avoid summary judgment, a plaintiff need only show that there is a question of fact regarding whether there is a city custom or policy that caused a constitutional deprivation." *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000). The alleged custom must be the "moving force behind" the constitutional violation. *Id.* at 1143. And liability cannot be imposed based solely on "an isolated or sporadic incident." *Saved Magazine v. Spokane Police Department*, 19 F.4th 1193, 1201 (9th Cir. 2021).

As to the Jimenez Lopez's first theory, a reasonable jury could find (1) that the Department had a custom of using profanity on members of the public, and (2) that this custom was the "moving force" behind the force used by Nail on Jimenez Lopez. First, although the Department has a written policy prohibiting the use of profanity by officers towards members of the public, the witness designated to speak for the City on this issue testified that he had seen officers use profanity towards members of the public in violation of that policy. Dkt. No. 73-9, Exh. H to Levine Decl., Deposition of Scott Eberly at 65:1-17. And he said that he had seen officers' use of profanity "result[] in subjects becoming compliant" and that it had "str[uck] the point into subjects and [led] them . . . to calm down." *Id.* at 65:8–13. He also testified that, even though the use of profanity in those circumstances was against policy, he was unaware of any discipline or additional training imposed on the offending officers and had never reported those policy violations to a supervisor. *Id.* at 65:17–66:24. He was unsure how many times he had witnessed it, but guessed it to be around five times. *Id.* at 66:13–15. And Nail told Henry that Nail spoke to Jimenez Lopez in the manner that he did to jar Jimenez Lopez into compliance and encourage Jimenez Lopez to listen to the officers' directions. Henry Report at 61. Although it's admittedly a close question, all this evidence inches over the line to support a jury conclusion that the Department had a custom of using profanity on members of the public.

Second, the body camera video shows that, prior to Nail's use of profanity, the situation with Jimenez Lopez was relatively calm; after, the situation seems to escalate fairly quickly. A reasonable jury could conclude that Nail telling Jimenez Lopez to "sit the fuck down" was the moving force behind Nail's attack on Jimenez Lopez. (Although an at least equally reasonable conclusion, based on a review of the video, might be that Nail intended to attack Jimenez Lopez regardless.)

In contrast, Jimenez Lopez has failed to present a genuine issue of material fact on the question of whether the Department has a custom or practice of using excessive force. To support his argument, Jimenez Lopez relies on the Henry report, which stated that Nail's use of force was within policy, and Chief Spiller's adoption of that report, which, as noted above, Jimenez Lopez asserts constitutes ratification of the use of unconstitutional excessive force by Nail. Jimenez Lopez is correct that ratification can be evidence of a preexisting policy. *See Silva v. San Pablo Police Department*, 805 F. App'x 482, 485 (9th Cir. 2020). But in this case, Chief Spiller ratified Henry's finding that Nail's use of force did not violate the Department's *written* policy on force. And Jimenez Lopez already stipulated that he is not challenging a written policy. Thus, Jimenez Lopez is left to rely on his expert's testimony that officers' joking around after the incident is demonstrative of an ease with using excessive force that is evidence of a custom. Dkt. No. 73-15, Decl. of Roger A. Clark ¶ 12. But that evidence, which is based on an isolated incident, is insufficient to support *Monell* liability based on custom. "When one must resort to inference, conjecture and speculation to explain events, the challenged practice is not of sufficient duration, frequency and consistency to constitute an actionable policy or custom." *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996).

3. Summary judgment must be granted on Jimenez Lopez's failure-to-train cause of action because no reasonable jury could find that the Department had an inadequate training policy that led to Jimenez Lopez's injury. While Officers Nail and Corporal O'Con, Nail's supervisor, said that they believed it was appropriate to intentionally escalate the confrontation to achieve compliance, Jimenez Lopez provides no evidence that this belief was because of their

training or due to the Department's training policies or practices. Indeed, Henry, Chief Spiller, and the City's witness all stated that this approach was against policy. Jimenez Lopez's argument that Nail's and O'Con's belief demonstrates a practice of failing to train employees is insufficient. A "showing that a single employee was inadequately trained" cannot sustain *Monell* liability; there must be a "widespread practice." *Marsh v. County of San Diego*, 680 F.3d 1148, 1159 (9th Cir. 2012).

**IT IS SO ORDERED.**

Dated: February 5, 2025

VINCE CHHABRIA
United States District Judge